UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| HARRY L. SMITH, ET AL., | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 302CV212-GLG |
| CHAMPION INTERNATIONAL CORPORATION, ET AL., | ) October 21, 2003 |
| Defendants. | ) |

## MOTION OF CORE, INC. TO QUASH DEPOSITION SUBPOENAS AND/OR FOR A PROTECTIVE ORDER

CORE, INC. ("CORE") moves to quash subpoenas served on CORE and three of its employees concerning deposition testimony and the production of documents and/or for a protective order to prohibit the taking of any depositions and the production of any documents.

### INTRODUCTION

The plaintiffs have served CORE with a subpoena duces tecum issued from the United States District Court for the District of Maine. The subpoena commands CORE to provide deposition testimony in this action pursuant to Fed. R. Civ. P. 30(b)(6) and to bring certain documents to the deposition. The plaintiffs have also served three employees of CORE (the "CORE Employees") with deposition subpoenas issued by the United States District Court for the District of Massachusetts.

{N0707354}

Pursuant to Fed. R. Civ. P. 26(c) and 45(c)(3), CORE moves to quash the subpoenas and/or for a protective order prohibiting the taking of the depositions.[1] This Motion should be granted because any deposition testimony by CORE or the CORE Employees is not relevant to the subject matter of this action. This motion is filed with this Court because CORE and the plaintiffs have agreed to submit their dispute to this Court. CORE and the CORE Employees are also submitting themselves to the Court's personal jurisdiction and will abide by whatever order the Court issues with respect to this motion.

## PROCEDURAL HISTORY

The plaintiffs are former employees of Champion International Corporation ("Champion"). In February 2002, they commenced this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against Champion, Champion's two long-term disability ("LTD") benefits plans, International Paper Company, and CORE. The plaintiffs allege that they received LTD benefits and that those benefits were improperly terminated. They have asserted four claims. The first two claims are against the Champion LTD Plans under 29 U.S.C. 1132(a)(1)(B) for recovery of benefits. Claims three and four allege that all of the defendants, including CORE, violated their duties to the plaintiffs under 29 U.S.C. § 1133 and 29 U.S.C. § 1104.

---

[1] Pursuant to Rule 45(c)(2)(B), CORE's counsel served the plaintiffs' counsel with a written objection to the production of the documents sought by the plaintiffs. Under Rule 45, when such an objection has been made, "the party serving the subpoena shall not be entitled to inspect or copy the materials . . . except pursuant to an order of the court by which the subpoena was issued." Rule 45 further states that "the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel production." Accordingly, the onus is on the plaintiffs to move to compel the production of the requested documents. In anticipation of such a

{N0707354}

In May 2002, CORE moved for summary judgment on the claims against it and in September 2002, the Court granted that motion. In November 2002, the remaining parties entered into a discovery stipulation, which the Court entered as an order (the "Stipulated Discovery Order"). The Stipulated Discovery Order provides in relevant part that:

1. Discovery shall be permitted on issues raised by the Plaintiffs' First and Second Claims for Relief only to the following extent: to determine the administrative record and all materials necessary to explain the record which was available to the plan administrators; to determine any conflict of interest in the review process and the potential impact of said conflicts upon the review process; and to determine the appropriate standards of review. ...

2. Discovery shall be permitted on issues raised by the Plaintiffs' Third and Fourth Claims for Relief.

## FACTUAL BACKGROUND

CORE is a Massachusetts corporation with a principal place of business in Portland, Maine. CORE provides employee absence management services to employers, third party administrators and insurance carriers. (Affidavit of Andrew Bernstein ("Bernstein Aff."), ¶¶ 1-2.)[2]

Champion sponsored two LTD Plans, one for hourly employees and one for salaried employees.[3] Champion's Pension and Employee Benefits Committee was the named fiduciary

---

motion, CORE requests that the Court quash the subpoena for the production of documents and/or issue a protective order prohibiting the production of documents for the reasons set forth herein.

[2] Bernstein's Affidavit was submitted to the Court in connection with CORE's motion for summary judgment and is part of the record in this action.

[3] Copies of the LTD Plans were attached to the Memorandum in Support of Defendants' Motion to Limit Discovery to the Administrative Record or for Other Relief and are also part of the record.

{N0707354}  3

and administrator of the LTD Plans. Pursuant to the LTD Plans, the Plan Administrator "ha[s] the power and authority in its sole, absolute and uncontrolled discretion to control and manage the operation and administration of the Plan[s], and shall have all powers necessary to accomplish these purposes." (LTD Plan #506, § 10.2, and LTD Plan #703, § 9.2.) The "responsibility and authority" of the Plan Administrator extends to "determining the amount and kind of benefits payable to any Employee," and "the processing and determination of all appeals" pursuant to the LTD Plans' claims procedures." (*Id.*)

Effective January 1, 1996, CORE and Champion entered into a Services Agreement. (The "Initial Services Agreement") (Bernstein Aff., ¶ 3.) The Initial Services Agreement provides, *inter alia*, (1) that Champion will retain full and sole authority and responsibility for determining who was eligible to receive benefits and the amount of benefits to be paid under any plan sponsored by Champion; (2) that CORE will make written recommendations to Champion concerning employees' eligibility for benefit payments; (3) that CORE will have no responsibility for any benefit or medical care decisions; and (4) that CORE will not be deemed to be the "appropriate named fiduciary" as defined by ERISA or have any other fiduciary duties under ERISA as a result of the Services Agreement. (*See* Initial Services Agreement, attached as Exhibit A to Bernstein Aff.; *see also* Court's Memorandum Decision on CORE's Motion for Summary Judgment ("Memorandum Decision"), pp. 4-5.)

The Initial Services Agreement includes a schedule of fees to be paid to CORE by Champion. (Services Agreement, ¶¶ 3.1 and Exhibit B.) Some of CORE's services were to be

{N0707354}    4

billed on a flat fee basis while other services were to be billed on a time and materials basis with a "not to exceed" limit. (Initial Services Agreement, Exhibit B.) For instance, to implement a dedicated "800" number call transfer system, the charge was $2,400. (*Id.*) For LTD Disability Management, the charge for a registered nurse was $94 per hour, the charge for a physician was $250 per hour, and the charge for a CORE services representative was $48 per hour. (*Id.*) CORE's hourly fee billings for LTD Disability Management services were subject to "not to exceed" limits of $1,500 per case in the first twelve months following the opening of a file, and $700 per case in subsequent twelve month periods. (*Id.*)

The Initial Services Agreement also includes certain "Performance Incentive and Forfeiture Provisions." (Initial Services Agreement, ¶ 3.2 and Exhibits C and D.) The Performance Standards, upon which increased or decreased compensation to CORE were to be based, are set forth in Exhibit C to the Initial Services Agreement. There are six Performance Standards: (1) satisfaction of Champion employees, supervisors, and human resources staff, as established by surveys; (2) 95% of all initial reviews to be initiated within one business day of program notification; (3) completion of initial review and assignment of the length of disability within one business day of obtaining all clinical information; (4) nurse reviewers to initiate extension reviews within one business day of the last approved day of disability 95% of the time; (5) nurse reviewers to make three calls within five days 95% of the time to complete extensions or requests pended for incomplete clinical information; and (6) timely reporting. None of the Performance Standards are connected in any way to CORE's recommendations to deny or

approve claims for disability benefits. In other words, the Performance Standards are not outcome-oriented.

CORE, Champion, and Sedgwick Claims Management Services, Inc. ("Sedgwick") entered into a Services Agreement, effective January 1, 1999, through which CORE and Sedgwick (under the tradename "SCORE") provided managed disability and health care benefits management services to Champion ("SCORE Services Agreement"). (*See* "SCORE Services Agreement, attached as Exhibit B to Bernstein Aff.; *see also* Memorandum Decision, p. 5.) The SCORE Services Agreement expressly provides that CORE does not have authority to make benefit eligibility determinations. (*Id.*)

The SCORE Services Agreement specifies the fees to be paid by Champion, which consist of flat rate charges for certain services, and hourly rate charges for other services. (SCORE Services Agreement, ¶ 3.1 and Exhibit B.) The SCORE Services Agreement also sets forth certain Performance Measures. (*Id.*, ¶ 3.4 and Exhibit C.) Unlike the Initial Services Agreement, the SCORE Services Agreement provides that there "will be no financial ramifications" with respect to the Performance Measures. (*Id.*, Exhibit C.) Instead, "SCORE will be evaluated at least every 6 months during the contract (or less at Champion discretion) and the grading will be used as a continuous improvement mechanism between Champion and SCORE." (*Id.*) Also, Champion was to view "the SCORE graded performance as a basis for continuing contractual arrangement." (*Id.*)

There are four categories of Performance Measures set forth in the SCORE Services Agreement: (1) product and process information; (2) service; (3) quality; and (4) cost. (Id.) None of the Performance Measures are dependent on CORE's recommendations to approve or deny claims for disability benefits. There are no quotas or goals for the numbers of recommendations to approve or deny claims. As with the Initial Services Agreement, the Performance Measures are not outcome-oriented.

The plaintiffs formerly worked for Champion as either hourly or salaried employees.[4] (Complaint, ¶¶ 31, 47, 63, 79, 95, 111, 127, 144, 160, 175, 191, 206, 222, 238.) Beginning in the late 1980s and prior to January 1, 1996, the plaintiffs were approved for and received LTD benefits under the Champion LTD Plans. (Id., ¶¶ 33-34, 49-50, 65-66, 81-82, 97-98, 113-114, 129-130, 146-147, 162-163, 177-178, 193-194, 208-209, 224-225, 240-241.) Each of the plaintiffs alleges that sometime in 1996 or thereafter, Champion, through CORE, notified him or her that CORE was evaluating whether he or she still qualified for LTD benefits. (Id., ¶¶ 37, 53, 69, 85, 101, 117, 134, 150, 166, 181, 197, 212, 228, 244), that each received a letter stating that a determination had been made that they were no longer completely disabled and that Champion advised them by letter that their LTD benefits would terminate as of a certain date. (Id., ¶¶ 39, 55, 71, 87, 103, 119, 136, 152, 167, 183, 198, 214, 230, 246.) Each of the plaintiffs claim that they appealed that decision under the administrative process established by the LTD Plans and

---

[4] The facts concerning the plaintiffs' receipt of LTD benefits, the notices sent by CORE and/or Champion to the plaintiffs regarding the evaluation of their continuing eligibility for LTD benefits and the termination of such benefits and the appeals pursued by the plaintiffs under the procedures set forth in the LTD Plans are taken from the Complaint and are assumed by CORE and the CORE Employees to be true for the purposes of this motion only.

that Champion notified them that their appeal had been denied. (*Id.*, 40, 56, 72, 88, 104, 120, 137, 153, 168, 184, 199, 215, 231, 247.) The plaintiffs maintain that they have exhausted their administrative remedies (*id.*, ¶¶ 42, 58, 74, 90, 106, 122, 139, 155, 170, 186, 201, 217, 233, 249) and have brought this action to recover LTD benefits that they allege were improperly terminated.

## THE SUBPOENAS

A copy of the notice of deposition, and attached schedules served by the plaintiffs on CORE, is attached hereto as Exhibit 1. Attachment A to the notice of deposition sets forth "matters on which examination [of CORE] is requested." Attachment B describes "documents to be produced" by CORE.    A copy of the notice of depositions served by the plaintiffs on the CORE Employees is attached hereto as Exhibit 2. The CORE Employees have not been requested to bring documents with them to their depositions.

The CORE Employees who have been subpoenaed are Carole Bishop, R.N., Carole Lazazzera, R.N and Dr. Jerry Beavers, M.D. Each works at CORE's office in Burlington, Massachusetts. The plaintiffs' notice of depositions also names two former CORE employees, Roger Libby and Christine Gude. CORE does not know whether these former employees have been served with subpoenas.

## SUMMARY OF THE ARGUMENT

This is a typical recovery of benefits action. As such, the information that is relevant to the subject matter involved in this case is limited to: (1) the administrative record; and (2) any facts that indicate that Champion's decisions to terminate the plaintiffs' LTD benefits were motivated by Champion's financial interests. The Stipulated Discovery Order reflects these limitations.

Champion's Pension and Employee Benefits Committee was the named fiduciary and administrator of the LTD Plans at issue. Champion, not CORE, compiled and evaluated the administrative record. CORE's role was strictly limited to making benefit eligibility recommendations to Champion. Accordingly, only Champion can explain what constituted the administrative record and the reasons for terminating the plaintiffs' LTD benefits.

The Initial Services Agreement and the SCORE Services Agreement set forth all of the terms and conditions of the relationship between Champion and CORE. There is no provision in either of these Agreements that remotely suggests that Champion's benefit decisions were related to its relationship with CORE. Therefore, any discovery directed to CORE aimed at establishing Champion's conflict of interest is a classic fishing expedition and should not be permitted.

## ARGUMENT

### I. Neither CORE Nor Its Employees Have Any Knowledge About The Composition Of The Administrative Record

The LTD Plans establish that Champion through its Pension and Employee Benefits Committee had the sole and complete authority to determine who was eligible to receive benefits,

and for the processing and determination of all appeals. As set forth in the Initial Services Agreement and the SCORE Services Agreement, CORE's function was limited to making benefit eligibility recommendations and did not include any role in compiling the administrative record. As this Court ruled in *Piscottano v. Metropolitan Life Ins. Co.*, 118 F.Supp.2d 200, 210 (D. Conn. 2000), "in reviewing a denial of benefits under ERISA, a district court is bound to consider only the record before the administrator when it made its decision." The Stipulated Discovery Order reflects this ruling. Thus, any deposition testimony by a CORE representative or the CORE Employees is not admissible and cannot lead to the discovery of admissible evidence. Hence, the plaintiffs should not be allowed to depose a CORE representative or the CORE Employees with respect to the administrative record.[5]

## II. There Are No Facts That Suggest That Champion's Benefit Decisions Were The Result Of A Conflict of Interest Due To Champion's Relationship With CORE

The terms and conditions of CORE's relationship with Champion are set forth in the Initial Services Agreement and the SCORE Services Agreement. The fees paid by Champion to CORE under these Agreements were completely independent of the recommendations CORE

---

[5] The plaintiffs' notice to take the deposition of CORE, pursuant to Fed. R. Civ. P. 30(b)(6), attaches a list of eight "matters on which examination is requested." Although the Court previously has ruled that discovery shall be limited to the composition of the administrative record, and to facts that indicate a conflict of interest, some of the listed matters go well beyond these categories. For instance, the plaintiffs request that CORE designate one or more persons to testify to "CORE's evaluation of the long term disability claim of each plaintiff," and the "procedures, policies, regulations, and guidelines governing the consideration of long term disability claims by CORE, Inc. from January 1, 1995 through May, 2000, including claims by employees of Champion." (Notice to Take Deposition of CORE, Attachment A, ¶¶ 1, 2.) Discovery of such matters, as this Court already has decided, should be disallowed because they are not relevant to the plaintiffs' claims, which arise solely from Champion's discretionary decision to terminate their LTD benefits based on Champion's review of the documents that constitute the administrative record.

made with respect to claims for disability benefits. Likewise, none of the performance standards set forth in the Agreements were tied to CORE's recommendations. In short, CORE's compensation was not outcome-dependent.

In order to establish that Champion's benefit decisions were somehow tainted by a conflict of interest, plaintiffs must demonstrate that Champion had a financial interest in the outcome of those decisions. It is inconceivable that Champion's relationship with CORE could have influenced Champion's decisions to terminate the plaintiffs' LTD benefits for financial reasons. The Second Circuit has taken a strict approach to demonstrating a conflict of interest in ERISA cases. For example, it has held that that a conflict of interest does not exist simply because the administrator of a plan happens to be a company employee. *Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1274 (2d Cir. 1995). The Agreements between CORE and Champion unequivocally establish that CORE's compensation was not in any way connected to Champion's benefit decisions. Hence, there is no logical or factual nexus between Champion's benefit decisions and CORE and no basis for the considerable inconvenience and expense that CORE and the CORE Employees would be subjected to by such useless discovery.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides for discovery of matters that are "relevant" to the claim of defense of any party. Since the Initial Services Agreement and the SCORE Services Agreement establish that there was no connection between CORE's compensation and Champion' benefit eligibility determinations, there is no information on this

---

The other matters listed by the plaintiffs appear to be aimed at identifying a conflict of interest on the part of CORE, for which there is no factual basis. As explained below, any such discovery should be disallowed.

subject to be discovered. In any event, Fed.R.Civ.P. 26(b)(2) provides that, by order, the Court may alter the limits on discovery if it determines that the discovery sought is "unreasonably cumulative or duplicative," or that the "burden or expense of the proposed discovery outweighs its likely benefit." Moreover, Fed.R.Civ.P. 45(c)(3) states that the Court "shall quash or modify the subpoena if it . . . subjects a person to undue burden." Where the two Agreements between CORE and Champion have been provided to the plaintiffs, any further discovery on the relationship between the two companies in an effort to ferret out evidence about Champion's alleged conflict of interest surely should be disallowed on the ground that it would subject CORE and the CORE Employees to an undue burden. The plaintiffs named CORE as a defendant originally despite having no legal or factual basis and then frivolously opposed CORE's motion for summary judgment. This Court should not tolerate the plaintiffs' continued frivolous harassment of CORE. At the very least, any discovery of CORE and the CORE Employees should be suspended until the plaintiffs have completed their discovery with respect to the

defendants. If at that point the plaintiffs have good cause to take discovery of CORE, then the Court can revisit this matter.

## CONCLUSION

As this Court stated in *Rapkin v. Rocque*, 228 F.Supp.2d 142, 156 (D. Conn. 2002), it "will not tolerate discovery requests that are mere fishing expeditions." The plaintiffs' requests to depose CORE and the CORE Employees are no more than fishing expeditions. For the reasons set forth above, this Court should quash the subpoenas served upon CORE and the CORE Employees, and/or issue a protective order that the depositions of CORE and the CORE Employees are prohibited.

CORE, INC.

By its attorneys,

_____
Howard Levine
Federal Bar No. ct 10555
CARMODY & TORRANCE, LLP
195 Church Street
Post Office Box 1950
New Haven, CT 06509-1950
(203) 777-5501

Of Counsel:
James T. Finnigan
Federal Bar No. ct18757
RICH MAY, a Professional Corporation
176 Federal Street
Boston, MA 02110
(617) 556-3800

### Certification Pursuant to Fed. R. Civ. P. 26(c)

I, James T. Finnigan, counsel to CORE, INC., hereby certify that I have conferred with the counsel for the plaintiffs to this action in an effort to resolve the dispute without court action.

_____
James T. Finnigan

13

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed, postage prepaid, on this 21st day of October, 2003 to:

William B. Barnes, Esq.
Rosenstein & Barnes
1100 Kings Highway East
Suite 1C
PO Box 687
Fairfield, CT 06430

Robert M. Elliot, Esq.
J. Griffin Morgan, Esq.
Elliot, Pishko, Gelbin & Morgan, P.A.
426 Old Salem Road
Winston-Salem, NC 27101

Richard B. Harper, Esq.
Law Offices of Richard B. Harper
PO Box 395
Sylva, NC 28779-0395

Barry J. Waters, Esq.
Murtha Cullina LLP
Two Whitney Avenue
PO Box 0704-A
New Haven, CT 06503-0704

Bruce M. Steen
McGuireWoods LLP
3700 Bank of America Plaza
101 South Tryon Street
Charlotte, NC 28280-0001

_____
Howard K. Levine

{N0707354}