UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2003 NOV 24  P 4: 47

DISTRICT C...
NEW HAVEN, CO...

HARRY L. SMITH, ET AL.,           )
                                  )
        Plaintiffs,               )
                                  )
v.                                )
                                  )   Civil Action No. 302CV212-GLG
CHAMPION INTERNATIONAL            )
CORPORATION, ET AL.,              )
                                  )   November 24, 2003
        Defendants.               )
                                  )

**OPPOSITION OF CORE, INC. TO PLAINTIFFS' MOTION TO
COMPEL PRODUCTION OF DOCUMENTS**

Pursuant to Local Rule 9(a), CORE, INC. ("CORE") submits this opposition to the plaintiffs' Motion to Compel Production of Documents ("Motion to Compel").

**INTRODUCTION**

The plaintiffs' Motion to Compel arises from a subpoena duces tecum that the plaintiffs served on CORE pursuant to Fed. R. Civ. P. 30(b)(6). Before the plaintiffs filed their Motion to Compel, CORE filed a motion to quash this subpoena insofar as it commands CORE to provide deposition testimony. The plaintiffs opposed CORE's motion to quash, and CORE submitted a reply to the plaintiffs' opposition. Although the Motion to Compel concerns documents, rather than deposition testimony, the same reasons that CORE has advanced in support of its motion to quash apply here.

Like the requested deposition testimony, the documents sought by the plaintiffs simply are not relevant to the subject matter of this action, where it is Champion's evaluation of the plaintiffs' cases and Champions' decisions to deny benefits that are at issue. Even if there were

{N0708404}

some remote relevance to certain information possessed by CORE, the immense burden that CORE would face in responding to the plaintiffs' broad discovery requests far outweighs any possible benefit that such information might have for the plaintiffs. Fed. R. Civ. P. 26(b)(2) provides that the Court may alter the limits on discovery if it determines that the discovery sought is "unreasonably cumulative or duplicative," or that the "burden and expense of the proposed discovery outweighs its likely benefit." While CORE maintains that the discovery sought by the plaintiffs is not relevant at all, and that all of the pertinent facts may be obtained from Champion, any scant benefit the plaintiffs theoretically might enjoy from interrogating CORE, and from reviewing CORE's documents, would not justify the attendant burden on CORE.

## **ARGUMENT**

The plaintiffs have requested that CORE produce 38 separate categories of documents. Many of these 38 wide-ranging requests call for information about Champion employees other than the plaintiffs and even extend to the confidential medical records of such employees. Some requests even go beyond CORE's relationship with Champion. In the appendix to their memorandum in support of their Motion to Compel, the plaintiffs separate the requests into groups and, for each group, state their arguments for the relevance of the requested documents. Tracking the plaintiffs' format, CORE responds to the specific requests in the appendix attached hereto.

The plaintiffs do not cite and CORE is not aware of any case in which a federal court has allowed a plaintiff in an action brought to recover ERISA disability benefits to seek discovery from a non-party. Moreover, the plaintiffs' document request is breath-takingly overbroad and

would entail an enormous burden on CORE. The plaintiffs want a license from this Court that would require CORE to produce every document concerning its relationship with Champion since its inception in January 1996 and even extends to confidential medical records of other Champion employees. The plaintiffs have not provided this Court with any evidence that such discovery is likely to lead to the discovery of admissible evidence. Thus, the plaintiffs want to subject CORE to an enormous discovery burden even though they are proceeding on the mere hope that they might find some useful information. It is self-evident that the plaintiffs are on a classic fishing expedition and this Court should not countenance such abusive discovery.

The plaintiffs make one or more of the following three arguments in support of each of their requests. First, they claim they need certain documents to determine and explain the administrative record. (Plaintiffs' Memorandum in Support of Motion to Compel Production of Documents Against CORE, Inc., and Response to CORE, Inc.'s Motion to Quash ("Pl. Mem."), p. 10). Second, they assert that they need certain documents to determine whether "any conflict of interest which might have influenced Champion to terminate the LTD benefits for the plaintiffs ...." (Pl. Mem., p. 12). The third reason the plaintiffs state for needing certain documents is to determine whether "CORE was assisting Champion in its overall strategy to reduce its costs by terminating benefits of disabled claimants ...." (Pl. Mem., p. 16.)

None of the reasons given by the plaintiffs warrant production of the requested documents. In the Second Circuit, in ERISA recovery of benefits actions, "the district court's review under the arbitrary and capricious standard is limited to the administrative record." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995). In *Nagele v. Electronic Data Systems Corp.*, 193 F.R.D. 94, 103 (W.D.N.Y. 2000), the court ruled that "this deferential

{N0708404}            3

standard does not displace using pretrial discovery to determine *the actual parameters* of the administrative record and whether the *fiduciary* acted arbitrarily and capriciously with respect to a claim for benefits ..." (emphasis added). Champion, as the administrator and fiduciary of the LTD Plans at issue, had sole responsibility for compiling and evaluating the administrative record. Hence, only Champion can provide the plaintiffs with documents within the "actual parameters" of the administrative record. Also, whether Champion as the "fiduciary" acted arbitrarily and capriciously depends on the records that Champion considered in making its determinations. Only Champion can provide the plaintiffs with the records that it considered. The documents in CORE's possession are either irrelevant or duplicative of the documents maintained by Champion. In either case, the plaintiffs have not shown that they have any legitimate need for them and should be required to exhaust their discovery of Champion before harassing CORE with baseless and burdensome document requests.

Furthermore, none of the documents requested by the plaintiffs would aid them in their effort to demonstrate that Champion's decisions were tainted by Champion's alleged conflict of interest. In *Sullivan v. LTV Aerospace & Defense Co.*, 82 F.3d 1251, 1255-56 (2d Cir. 1996), the Second Circuit held that:

> [I]n cases where the plan administrator is shown to have a conflict of interest, the test for determining whether the administrator's interpretation of the plan is arbitrary and capricious is as follows: Two inquiries are pertinent. First, whether the determination made by the administrator is reasonable, in light of possible competing interpretations of the plan; second, whether the evidence shows that the administrator was in fact influenced by such conflict. If the court finds that the administrator was in fact influenced by the conflict of interest, the deference otherwise accorded the administrator's decision drops away and the court interprets the plan *de novo*.

CORE has no information that would aid the Court in its analysis under this test.

It is immaterial that CORE was concerned with saving money for Champion. The only evidence relevant to the conflict of interest issue is whether Champion's decisions to terminate the plaintiffs' LTD benefits were motivated by Champion's financial considerations. Only Champion can provide information relevant to this inquiry. There is no indication that the plaintiffs have any basis for believing that Champion's decisions were motivated by financial considerations.

Third, the plaintiffs argue in cursory fashion that they need documents from CORE to determine whether Champion employed a strategy to reduce costs and whether Champion's decisions were influenced by this alleged strategy. This argument is effectively the same as the plaintiffs' argument concerning the alleged conflict of interest. It should be rejected for the same reasons.

In sum, the plaintiffs are engaged in a wild goose chase. They want CORE to produce an enormous number of documents at its expense on the remote possibility that they might discover something. This Court, however, should not allow the plaintiffs to obtain any discovery from CORE involving the administrative record and the conflict of interest issue until they complete their discovery of Champion and can provide this Court with evidence that shows that there is a reasonable probability that CORE has information relevant to either or both of those issues.

## CONCLUSION

For the reasons set forth above, and in the appendix to this memorandum, this Court should deny the plaintiffs' Motion to Compel Documents Production of Documents from CORE.

CORE, INC.

By: /s/ Howard Levine
Howard Levine
(Federal Bar No. ct10555)
CARMODY & TORRANCE, LLP
195 Church Street
Post Office Box 1950
New Haven, CT 06509-1950
(203) 777-5501

*Its Attorney*

Of Counsel:
James T. Finnigan
Federal Bar No. ct18757
RICH MAY, a Professional Corporation
176 Federal Street
Boston, MA 02110
(617) 556-3800

{N0708404}                                    6

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing was mailed, postage prepaid, on this 24th day of November, 2003 to:

William B. Barnes, Esq.
Rosenstein & Barnes
1100 Kings Highway East
Suite 1C
PO Box 687
Fairfield, CT 06430

Robert M. Elliot, Esq.
J. Griffin Morgan, Esq.
Elliot, Pishko, Gelbin & Morgan, P.A.
426 Old Salem Road
Winston-Salem, NC 27101

Richard B. Harper, Esq.
Law Offices of Richard B. Harper
PO Box 395
Sylva, NC 28779-0395

Barry J. Waters, Esq.
Murtha Cullina LLP
Two Whitney Avenue
PO Box 704-A
New Haven, CT 06503-0704

Bruce M. Steen
McGuireWoods LLP
Bank of America Corporate Center
100 North Tryon Street, Suite 2900
Charlotte, NC 28280-4022

_____
Howard K. Levine

# APPENDIX TO CORE'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

1. All documents regarding CORE's evaluation of the long term disability claim of each plaintiff (as identified in the caption);

2. All correspondence, e-mail transmissions, notes, summaries, or any other documents concerning communications by and between CORE and Champion International concerning each plaintiff's long term disability (LTD) claim;

3. All records, reports, or any other documents or information considered by any employee, staff person or manager of CORE or any independent contractor performing services requested by CORE in evaluating each plaintiff's LTD claim;

**CLAIMED RELEVANCE:** The documents described in ¶¶ 1-3 bear on the administrative record or an explanation of the record. Given the importance of CORE's investigation and recommendation of denial of each plaintiff's disability, the ultimate acts of Champion in terminating benefits can only be understood with reference to the documents underlying CORE's investigation.

**CORE'S RESPONSE:** All of the documents necessary to determine whether Champion properly denied the plaintiffs' disability benefits claims are in the possession of Champion. Because Champion's decisions, not CORE's recommendations, are at issue in this case, the only relevant documents are those that were made available to Champion. In addition, Requests 1, 2 and 3 seek documents that may not have been provided to Champion and therefore is irrelevant *per se*. The information sought by the Requests, therefore, is either irrelevant or duplicative of information that may be obtained directly from Champion.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

4. All documents regarding the procedures, policies, regulations, and guidelines governing the consideration of long term disability claims by CORE from January 1, 1995 through May, 2000;

**CLAIMED RELEVANCE:** Given the importance of CORE's recommendations of denial, any procedures, policies or rules followed by CORE in determining each plaintiff's disability are critical to an understanding of the ultimate denials, and thus relevant to plaintiffs' claims.

**CORE'S RESPONSE:** This overly broad and unduly burdensome request seeks documents that have nothing to do with this central issue in this case: whether Champion's denials of the plaintiffs' claims were proper. The documents sought by Request 4 do not describe, discuss, or make any reference at all to the particular facts of any plaintiffs' claim. Thus, they are not reasonably calculated to lead to the discovery of admissible evidence.

{N0708406}

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

5. All documents regarding the cost savings analyses prepared by CORE and/or any entity on its behalf in regard to long term disability claims of each of the plaintiffs and disabled employees of Champion, generally;

6. All documents regarding CORE's pay and compensation policies, including any incentives, bonuses, commissions, or other benefits provided to managers, employees or other agents of CORE who evaluated long term disability claims from January 1, 1995 through May, 2000;

7. All documents regarding financial analyses performed by CORE and/or any entity on its behalf of Champion's LTD plans, including analyses of amounts received and expenditures or disbursements;

**CLAIMED RELEVANCE:** The documents described in ¶¶ 5-7 bear on the economic incentives for CORE and Champion in terminating benefits of a large number of claimants who had been receiving benefits for an extended period of time-thus, establishing the conflict of interest of CORE, initially, and Champion, ultimately, between their Plan responsibility of factually determining disability and their desire to save money.

**CORE'S RESPONSE:** These document requests are not reasonably calculated to lead to the discovery of admissible evidence because they are directed at establishing an alleged "conflict of interest" on the part of CORE. CORE, however, was not the plaintiffs' employer, and it was neither the fiduciary nor administrator of the LTD plans. It could not, therefore, have had any conflict of interest. Requests 5-7 reflect the plaintiffs' fundamental misunderstanding of, or refusal to acknowledge, CORE's role.

Request No. 6 seeks records of other "disabled employees" of Champion. Such records have nothing to do with the merits of the plaintiffs' claim and would entail a considerable, if not enormous, burden on CORE.

Finally, these requests – especially Request 6, which calls for private records of payment to CORE employees who may have not have participated at all in evaluating the plaintiffs' cases – not only seek irrelevant documents, but smack of harassment.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

8. All documents regarding the CORE Services Agreement and any other contracts or agreements between CORE and Champion, and any communications between CORE and Champion concerning the negotiation, administration, interpretation and execution of said contracts and agreements;

**CLAIMED RELEVANCE:** These documents go to the heart of the relationship between CORE and Champion-a relationship which bears directly on the establishment of the administrative records and the potential conflicts of interest of Champion and CORE.

**CORE'S RESPONSE:** CORE owed no duty to any of the plaintiffs (as employer,

{N0708406}2

fiduciary, or plan administrator) and, therefore, could not have had any conflict of interest. Furthermore, there is no issue in this case concerning "the negotiation, administration, interpretation and execution of" the Services Agreement or any other contracts and agreements that might exist. Thus, this Request is not reasonably calculated to lead to the discovery of admissible evidence.

*******************************************

9. All documents generated by the CORE Denial Committee referenced in the CORE Confidential Service Reports regarding the plaintiffs;

10. All documents regarding the customized, dedicated unit workflow developed by CORE to service Champion disability management as referenced in the CORE Services Agreement dated January 1, 1996;

11. All documents, including minutes, exhibits, and reports generated at or related to the quarterly meetings conducted for the purpose of reviewing services and performances as referenced in the CORE Services Agreement dated January 1, 1996;

12. CORE-generated quarterly management reports provided to Champion as referenced in the CORE Services Agreement dated January 1, 1996;

13. All documents identifying the key service personnel identified as the Account Executive, Team Leader and Lead Case Manager as referenced in the CORE Services Agreement dated January 1, 1996;

14. All documents regarding the regular process review to evaluate ways to enable the program to be delivered more efficiently and at a lower cost as referenced in the CORE Services Agreement dated January 1, 1996;

**CLAIMED RELEVANCE:** The documents described in ¶¶ 9-14 are relevant to the procedures used by CORE, and its adherence to the procedures outlined in the contracts between CORE and Champion-all of which are directly or indirectly relevant to CORE's review of the claims and any potential conflicts of interest.

**CORE'S RESPONSE:** If the documents described in Request 9 were part of the record available to Champion when it made its benefits determinations, then these documents may be obtained directly from Champion. Requests 10-14 do not describe, discuss, or make any reference at all to the particular facts of any plaintiffs' claim. Instead, the plaintiffs want a license to review every document generated by CORE as a result of its relationship with Champion. Thus, they are not reasonably calculated to lead to the discovery of admissible evidence and would entail an enormous burden on CORE.

*******************************************

{N0708406}3

15. CORE monthly billing statements to Champion for services to be rendered using data from Champion's employee eligibility tape;

**CLAIMED RELEVANCE:** The documents described in ¶ 15 bear on the financial relationship between CORE and Champion, which may lead to evidence concerning a conflict of interest.

**CORE'S RESPONSE:** CORE owed no duty to any of the plaintiffs (as employer, fiduciary, or plan administrator) and, therefore, could not have had any conflict of interest. Any document request that seeks documents for the purported purpose of establishing a conflict of interest on CORE's part is not reasonably calculated to lead to the discovery of admissible evidence and would impose an undue burden on CORE.

*******************************************

16. All documents, tapes, or other forms of data regarding employee eligibility provided to CORE from Champion as referenced in the CORE Services Agreement dated January 1, 1996;

**CLAIMED RELEVANCE:** The documents described in ¶ 16 may be relevant to show any claimants who were targeted by Champion in their initial instructions to CORE, providing some indication as to how Champion perceived the claims and attempted to lower its costs.

**CORE'S RESPONSE:** This request calls for documents that are irrelevant to the issue at hand: whether Champion's decisions, based on the facts presented to Champion about each plaintiff's alleged disability, were proper. This Request also seeks documents that would extend to the confidential medical records or other information of Champion employees other than the plaintiffs and would involve an enormous burden on CORE.

*******************************************

17. All adjustments to the monthly billing statements provided to CORE by Champion on a quarterly basis as referenced in the CORE Services Agreement dated January 1, 1996;

**CLAIMED RELEVANCE:** The documents described in ¶ 17 bear on the financial relationship between CORE and Champion, which may lead to evidence concerning a conflict of interest.

**CORE'S RESPONSE:** CORE owed no duty to any of the plaintiffs (as employer, fiduciary, or plan administrator) and, therefore, could not have had any conflict of interest. Any document request that seeks documents for the purported purpose of establishing a conflict of interest on CORE's part is not reasonably calculated to lead to the discovery of admissible evidence. It may also entail an undue burden on CORE.

*******************************************

18. A copy of the CORE-maintained comprehensive liability insurance

{N0708406}4

policies naming Champion as an additional insured as referenced in the CORE and SCORE Services Agreements with Champion;

**CLAIMED RELEVANCE:** The documents described in ¶ 18 bear on the financial relationship between CORE and Champion, which may lead to evidence concerning a conflict of interest.

**CORE'S RESPONSE:** This Request is absurd as evidenced by the plaintiffs' inability to explain how an insurance policy could lead to information about a conflict of interest. CORE owed no duty to any of the plaintiffs (as employer, fiduciary, or plan administrator) and, therefore, could not have had any conflict of interest. Any document request that seeks documents for the purported purpose of establishing a conflict of interest on CORE's part is not reasonably calculated to lead to the discovery of admissible evidence.

*******************************

19. CORE-retained copies of all records related to the provision of services in Exhibit A as referenced in Section 9.1 of the CORE Services Agreement dated January 1, 1996;

20. All documents concerning meetings or actions of the CORE Denial Committee from January 1, 1996 to December 31, 2000, and identifying the members of the CORE Denial Committee, as referenced in the CORE Confidential Service Agreements regarding the plaintiffs;

21. Copies of all monthly Confidential Service Reports as referenced in the CORE Services Agreement dated January 1, 1996;

22. All case history reports referred to in Exhibit A regarding Workflow Champion Disability Management Program integration with Social Security Disability Consultants as referenced in the CORE Services Agreement dated January 1, 1996;

23. SSDC quarterly reports furnished to CORE regarding the status of open cases concerning each disabled employee as referenced in Exhibit A of the CORE Services Agreement dated January 1, 1996;

**CLAIMED RELEVANCE:** The documents described in ¶¶ 19-23 are documents referenced in the contract between CORE and Champion, which may reveal information concerning CORE's financial relationship with Champion, and its efforts to satisfy Champion in reducing benefits-thereby supporting plaintiffs' claims of a conflict of interest with an adverse impact on the decisions made concerning the plaintiffs' claims.

**CORE'S RESPONSE:** CORE owed no duty to any of the plaintiffs (as employer, fiduciary, or plan administrator) and, therefore, could not have had any conflict of interest. Any document request that seeks documents for the purported purpose of establishing a conflict of interest on CORE's part is not reasonably calculated to lead to the discovery of admissible evidence. Requests 19-23 are overly broad, extend to all Champion employees and such employees' confidential medical information and would impose an enormous burden on CORE. These Requests amount to a classic fishing expedition, which this Court has said it will not tolerate.

{N0708406} 5

*******************************************

24. CORE monthly billing for fees to Champion on time and materials basis upon the opening of the LTD file as referenced under Service Fees in the CORE Services Agreement;

**CLAIMED RELEVANCE:** The documents described in ¶ 24 relate to the financial relationship between CORE and Champion, which may reveal information relevant to CORE's conflict of interest in developing the administrative files, and Champion's ultimate conflict of interest in terminating benefits of LTD claimants, including the plaintiffs.

**CORE'S RESPONSE:** CORE owed no duty to any of the plaintiffs (as employer, fiduciary, or plan administrator) and, therefore, could not have had any conflict of interest. Any document request that seeks documents for the purported purpose of establishing a conflict of interest on CORE's part is not reasonably calculated to lead to the discovery of admissible evidence.

*******************************************

25. CORE monthly, quarterly and annual Champion customized and associated ad hoc reports as referenced under Custom Analytic Reporting in the CORE Services Agreement dated January 1, 1996;

26. Surveys of employees with closed cases regarding the performance of CORE as referenced in Exhibit C to the CORE Services Agreement dated January 1, 1996;

27. Supervisors, Human Resources staff and Medical Department staff surveys as referenced in Exhibit C to the CORE Services Agreement dated January 1, 1996;

28. CORE-generated Medical Substantiation forms and call logs regarding any denial to a Champion employee as referenced in Exhibit C to the CORE Services Agreement dated January 1, 1996;

**CLAIMED RELEVANCE:** The documents described in ¶¶ 25-28 are referenced in the service contract between CORE and Champion, and may reveal CORE's intent, upon positive financial incentives or negative pressure, to lower the costs of Champion's disability claims by developing administrative records conducive to terminating the benefits of LTD claimants, including plaintiffs.

**CORE'S RESPONSE:** CORE owed no duty to any of the plaintiffs (as employer, fiduciary, or plan administrator) and, therefore, could not have had any conflict of interest. Any document request that seeks documents for the purported purpose of establishing a conflict of interest on CORE's part is not reasonably calculated to lead to the discovery of admissible evidence. Requests 25-28 are so overly broad and would impose such a considerable burden on CORE as to amount to a classic fishing expedition, which this Court has said it will not tolerate.

*******************************************

29.  All reports and records regarding incentive compensation paid to CORE by Champion as referenced in Exhibit D to the CORE Services Agreement dated January 1, 1996;

30.  SCORE itemized invoices for capitated services and services rendered on a fee for service basis as referenced in the SCORE Services Agreement dated January 1, 1999;

31.  All documents regarding Champion's written notification of invoice discrepancies as referenced in the SCORE Services Agreement dated January 1, 1999;

32.  Any written requests submitted for arbitration between the parties to the SCORE Services Agreement dated January 1, 1999;

**CLAIMED RELEVANCE:**  The documents described in ¶¶ 29-32, as referenced in the service agreement between SCORE and Champion (dated January 1, 1999), are directly relevant to the financial relationship between CORE (through SCORE) and Champion.

**CORE'S RESPONSE:**  CORE owed no duty to any of the plaintiffs (as employer, fiduciary, or plan administrator) and, therefore, could not have had any conflict of interest. Any document request that seeks documents for the purported purpose of establishing a conflict of interest on CORE's part is not reasonably calculated to lead to the discovery of admissible evidence. Requests 29-32 involve employees of Champion other than the plaintiffs, are overly broad and would impose a considerable burden on CORE. These Requests are a classic fishing expedition, which this Court has said it will not tolerate.

*******************************************

33.  All documents or computer-generated reports by CORE provided to Champion regarding the status of claims, including on-line access and minutes or other documents generated regarding the quarterly claim status meetings as referenced in the SCORE Services Agreement dated January 1, 1999;

34.  All documents or other materials outlining information-driven protocols and guidelines used as referenced in the SCORE Services Agreement dated January 1, 1999;

35.  Data generated by Sedgwick's data management system (JURIS) and furnished to Champion and CORE, including, but not limited to, Claim and Expense Report (monthly); Transaction Register (monthly); Loss Analysis Report (quarterly) and State Reports (as needed), as referenced in the SCORE Services Agreement dated January 1, 1999;

36.  All data from Data Repository construed to perform transactional and Financial

{N0708406} 7

Reports such as Budget Status Reports and Disability Performance Reports as referenced in the SCORE Services Agreement dated January 1, 1999;

37.    Financial ("Monthly") and Program Performance ("Quarterly") Reports, as referenced in the SCORE Services Agreement dated January 1, 1999; and

38.    Evaluations of SCORE as referenced in Exhibit C to the SCORE Services Agreement dated January 1, 1999;

**CLAIMED RELEVANCE:** The documents described in ¶¶ 33-38 are directly referenced in the services contract between SCORE and Champion, and are directly relevant to the financial relationship between CORE (through SCORE) and Champion which may have created a conflict of interest and tainted the ultimate decisionmaking process.

**CORE'S RESPONSE:** CORE owed no duty to any of the plaintiffs (as employer, fiduciary, or plan administrator) and, therefore, could not have had any conflict of interest. Any document request that seeks documents for the purported purpose of establishing a conflict of interest on CORE's part is not reasonably calculated to lead to the discovery of admissible evidence. Requests 33-38 involve Champion employees other than the plaintiffs, are overly broad and would impose an enormous burden on CORE. These Requests amount to a classic fishing expedition, which this Court has said it will not tolerate.

K:trl\fng\core\appopp112403

{N0708406} 8