# FILED

2003 NOV -7 A 9: 31

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT DISTRICT COURT
BRIDGEPORT CT

| | | |
|---|---|---|
| HARRY L. SMITH, LOIS L. LYNN, DARRELL KEITH HILL, ELIZABETH CASE BOONE, WILEY H. HAYNES, ROSA LEE BROOKSHIRE, HARRISON YOUNG CLARK, FRANZISKA FINNEY, JUDITH CASE KIRKPATRICK, WILSON DANIEL McCLURE, CELIA DARLENE METCALF, CHARLES R. REECE, DOLPHUS LUTHER TREADWAY, JR., and MARTHA BURNETTE WHITLEY, | ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION NUMBER 302CV212 (GLG) |
| Plaintiffs, | ) ) | |
| v. | ) | PLAINTIFFS' MEMORANDUM IN |
| CHAMPION INTERNATIONAL CORPORATION; LONG TERM DISABILITY BENEFITS PLAN FOR SALARIED EMPLOYEES OF CHAMPION INTERNATIONAL CORPORATION #506; LONG TERM DISABILITY BENEFITS PLAN FOR CERTAIN HOURLY EMPLOYEES OF CHAMPION INTERNATIONAL CORPORATION #703; and INTERNATIONAL PAPER COMPANY, | ) ) ) ) ) ) ) ) ) ) ) | SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AGAINST CORE, INC., AND RESPONSE TO CORE, INC.'S MOTION TO QUASH |
| Defendants. | ) ) ) ) ) ) ) ) | NOVEMBER 4, 2003 |

## THE DISCOVERY AT ISSUE

On August 11, 2003, this Court signed and approved the Stipulation & Order providing discovery deadlines for this action. Pursuant to the order, the discovery deadline is

presently December 31, 2003.

The order also provides the following:

> The parties are
> encouraged to conduct
> discovery regarding, and
> then file motions seeking
> a ruling upon the
> standard of review
> applicable to plaintiffs'
> claims or benefits.  In
> that regard, **plaintiffs
> are encouraged to conduct
> discovery of former
> defendant CORE, Inc.,
> pursuant to  Fed.R.Civ.P.
> 30(b)(6)**.  Nothing herein
> shall prejudice or be
> deemed to limit
> plaintiffs' ability to
> conduct, where
> appropriate, a second
> Rule 30(b)(6) deposition
> of CORE, Inc.

*Stipulation & Order, ¶ 3* (emphasis provided).

In addition to their other discovery, plaintiffs have attempted to conduct discovery of CORE.  On September 12, 2003, plaintiffs served notices that they would take the depositions of CORE and CORE employees on October 20-22, 2003.  Given the diverse locations of the deponents, the depositions were to take place in Portland, Maine and Burlington, Massachusetts. Plaintiffs also issued subpoenas on the same dates which were

2

presently December 31, 2003.

The order also provides the following:

> The parties are
> encouraged to conduct
> discovery regarding, and
> then file motions seeking
> a ruling upon the
> standard of review
> applicable to plaintiffs'
> claims or benefits.  In
> that regard, **plaintiffs
> are encouraged to conduct
> discovery of former
> defendant CORE, Inc.,
> pursuant to  Fed.R.Civ.P.
> 30(b)(6)**.  Nothing herein
> shall prejudice or be
> deemed to limit
> plaintiffs' ability to
> conduct, where
> appropriate, a second
> Rule 30(b)(6) deposition
> of CORE, Inc.

*Stipulation & Order,* ¶ *3* (emphasis provided).

In addition to their other discovery, plaintiffs have attempted to conduct discovery of CORE.  On September 12, 2003, plaintiffs served notices that they would take the depositions of CORE and CORE employees on October 20-22, 2003.  Given the diverse locations of the deponents, the depositions were to take place in Portland, Maine and Burlington, Massachusetts. Plaintiffs also issued subpoenas on the same dates which were

2

ultimately served on CORE and three of the five individual deponents.[1]   *See Plaintiffs' Motion to Compel Production of Documents Against CORE, Inc.* (hereafter "Pl. Mot."), *Exh. 3-4.*

CORE, through counsel, objected to the depositions and document production on grounds of relevancy. *Pl. Mot., Exh 5.*

## THE ATTEMPTS TO REACH AGREEMENT

Following receipt of CORE's objections, counsel discussed the parties' respective positions in a telephone conversation on October 10, 2003. Through their discussion, it became clear that the parties would need guidance from the courts in order to resolve their issues.[2]   *See Pl. Mot, Exh. 6.*   For that reason, the parties agreed to postpone the depositions pending resolution of the discovery issues by the court.[3]

---

[1] Two of the five deponents were not served because they are no longer employed by CORE, and have apparently relocated.

[2] It was initially agreed that motions would have to be filed in the federal courts in Maine and Massachusetts. Subsequently, the parties agreed to submit to the jurisdiction of this Court on all issues regarding discovery of CORE.

[3] In the Stipulation & Order, the Court provided that the "parties are encouraged to contact Magistrate Judge Garfinkel's chambers at any time during the discovery period should they require a discovery conference or additional guidance regarding the course of discovery." *Stipulation & Order, ¶ 4.* Plaintiffs have requested a hearing to resolve the discovery issues between plaintiffs and CORE on an expedited basis.

CORE has filed its motion pursuant to Rule 45(c)(3) to quash the subpoenas concerning the testimonial depositions to be taken by plaintiffs.    Plaintiffs have filed their motion to compel production of documents pursuant to Rule 45(c)(2)(B), and their response to CORE's motion, along with this memorandum.

## THE FACTS AT ISSUE IN THIS SUIT

### The Plaintiffs

This action involves 14 disabled former employees of Champion.  The plaintiffs were all employed at Champion's facilities in North Carolina.  They range in age from 46[4] to 67[5]. They range in years of service from 8 years[6] to 42 years[7].  The plaintiffs held various positions with Champion, from general laborer[8] to supervisor[9] to work control analyst[10].

Each of the plaintiffs is totally disabled from work.  *See Cmplt., Facts Concerning Individual Plaintiffs, ¶¶ 29-251.*  Each

---

[4]  See Cmplnt. ¶ 236 regarding plaintiff Whitley.

[5]  See Cmplt. ¶ 45 regarding plaintiff Lynn.

[6]  See Cmplt. ¶ 237 regarding plaintiff Whitley.

[7]  See Cmplt. ¶ 94 regarding plaintiff Haynes.

[8]  See Cmplt. ¶ 126 regarding plaintiff Clark.

[9]  See Cmplt. ¶ 31 regarding plaintiff Smith.

[10]  See Cmplt. ¶ 175 regarding plaintiff McClure.

of the plaintiffs was initially approved for LTD benefits by one
of the Champion Plans. *Id.* The time of disability of the
plaintiffs ranges from 5 years[11] to 14 years[12]. Generally, until
the reexamination instituted by Champion and CORE, plaintiffs'
rights to continuing LTD benefits were never questioned. *Id.*

Between 1996 and 2000, all of the plaintiffs were terminated
from benefits by Champion. With respect to all of the
plaintiffs, CORE was responsible for the underlying investigation
and initial recommendations. *Id.*

### Champion and CORE

From approximately 1997 to 1999, Champion officials explored
methods of reducing their costs throughout the company. In order
to reduce its costs, Champion instituted a reexamination of all
disabled participants who were receiving LTD benefits for the
purpose of denying and terminating their rights to benefits.
*Cmplt. ¶ 19.*

To carry out this effort, Champion contracted with CORE on
January 1, 1996. In an agreement entitled "Services Agreement"
CORE agreed to provide services to Champion in connection with

---

[11] See Cmplt. ¶ 192 regarding plaintiff Metcalf.

[12] See Cmplt. ¶ 80 regarding plaintiff Boone.

5

Champion employees' LTD claims.  *See Pl. Mot., Exh. 1.*  On

January 1, 1998, Champion and SCORE[13] entered into a similar

agreement.  *See Pl. Mot., Exh. 2.*

Plaintiffs have alleged that Champion terminated their (and

other employees') LTD benefits, largely based on the actions of

CORE, which were driven by an incentive to cut Champion's

disability costs.  *Cmplt. ¶ 24.*

### ARGUMENT

**A.    The Broad General Scope of Discovery**

Rule 26 of the Federal Rules of Civil Procedures provides

> that "[p]arties may obtain discovery
> regarding any matter, not privileged, which
> is relevant to the subject matter involved in
> the pending action, where it relates to the
> claim or defense of the party seeking
> discovery or to the claim or defense of any
> other party....The information sought need
> not be admissible at the trial if the
> information sought appears reasonable
> calculated to lead to the discovery of
> admissible evidence.

Rule 26(b)(1); *Hickman v. Taylor*, 329 U.S. 495 (1947).

Since the rules of discovery were established years ago, the

courts have stated time and again that the rules of discovery are

---

[13] SCORE was a joint venture between CORE and another
insurance company to provide continuing services to Champion.
Most of the plaintiffs were covered under the initial agreement
with CORE.

6

"broad and liberal", and that "either party may compel the other to disgorge whatever facts he has in his possession." *Hickman*, 329 U.S. at 392; *National Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980 (4th Cir. 1992).

Rule 26 clearly applies to the facts at issue in an ERISA case. *Zuckerbroad v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46 (2d Cir. 1996); *Sullivan v. LTV Aerospace & Defense Co., 82 F.3d 1251 (2d Cir. 1996)*; *Whitney* v. Blue Cross, 106 F.3d 475 (2d Cir. 1997).

### B.   CORE May Not Unilaterally Limit its Discovery Obligations

CORE has a heavy burden under the above standards to demonstrate why its records and other information are "off limits" to discovery in this action.  CORE attempts to justify its position with reference to its contracts with Champion and an affidavit of its officer interpreting the contracts.  *See Pl. Mot, Exh. 1-2; Affidavit of Andrew Bernstein*, filed in support of CORE's previous motion for summary judgment.  CORE's efforts to limit the evidence based on its own conclusory and self-serving statements as to its relationship with Champion and its incentives under the contracts, are inconsistent with the objectives of discovery, as expressed in Rule 26, and should be

7

rejected. *See Tangorre v. Salvatorie*, 01 Civ. 4430 (BSJ)(DF),

2002 U.S. Dist. LEXIS 2084 (S.D.N.Y. 2002) (motion to compel

granted; defendant "has substituted its own narrow view of the

merits of this action for the liberal rules that govern

discovery"); *Bowman v. General Motors Corp.*, 64 F.R.D. 62, 68

(E.D. Pa. 1974) (defendant cannot determine what information is

relevant to plaintiff's case).

### C.    The Facts Discoverable by Plaintiffs And the Issues They Bear Upon

Plaintiffs' first and second claims allege a wrongful denial

of benefits by Champion under ERISA. *29 U.S.C. § 1132(a)(1)(B)*.

Discovery is generally permitted in ERISA actions on the issues

raised by the pleadings. In *Nagele v. Electronic Data Systems

Corp.*, 193 F.R.D. 94, 104 (W.D.N.Y. 2000), the court discussed at

length the rationale for discovery under ERISA and said the

following:

> [A]s the arbitrary and capricious standard
> requires courts to scrutinize, although
> deferentially, decisions by plan fiduciaries
> for lack of reasonableness, including the
> absence of substantial evidence, such
> deficiencies in the administrative review
> function  can be significantly eliminated
> through the reasonable exercise of  standard
> discovery devices available in federal civil
> practice.  As the facts developed in *Miller
> [v. United Welfare Fund*, 72 F.3d 1066 (2d Cir
> 1995)] through discovery revealed basic

8

> deficiencies in the quality in the
> information before the trustees and a
> concomitant lack of meaningful consideration,
> the mandate of ERISA that denials of claims
> by plan fiduciaries be reviewed by federal
> courts could not have been carried out
> effectively without benefit of such
> discovery.

Pending any determination of the proper standard of review
in this action, the Court and the parties herein have agreed that
discovery with respect to denial of the plaintiffs' benefit
claims may be conducted to determine:

- "the administrative record and all materials necessary
  to explain the record which was available to the plan
  administrator;"

- "any conflict of interest in the review process and the
  potential impact of said conflicts upon the review
  process;" and

- "the appropriate standards of review."

*Stipulation & Order of Reference, November 6, 2002, ¶ 1.*

The order also provided that discovery "shall be permitted
on issues raised by Plaintiffs' Third and Fourth Claims for
Relief." *Id., ¶ 2.* Plaintiffs' third and fourth claims allege
violations of defendants' fiduciary and other duties under ERISA,
29 U.S.C. § 1132(c).

### 1.   The Administrative Record

The determination of the administrative record is not, as

9

CORE would contend, limited to a review of the "paper" record provided by Champion. To the contrary, under Rule 26, plaintiffs are entitled to conduct appropriate discovery to:

- determine whether they have received the entire administrative record from Champion;

- obtain explanation from individuals involved in the establishment of the record as to what information was actually available, and a part of the record; and

- obtain clarification, confirmation or explanation as to any unexplained documentation or information in the record, and the basis of the determination of the disability of each plaintiff.

See Nagele; Sheehan v. Metropolitan Life Ins. Co., 01 Civ. 9182 (CSH), 2002 11789, 11-13 (S.D.N.Y. June 28, 2002) (court recognizes the need for discovery in ERISA under any standard of review).

CORE has considerable information concerning plaintiff's claims since CORE was largely responsible for investigating the claims and establishing the record. A few examples of issues concerning the administrative record will illustrate plaintiffs' points.

At the conclusion of its investigation of each plaintiff's claim, CORE provided a letter informing the plaintiff that it had determined that he/she was no longer disabled. See e.g.,

*Appendix ("App")1.*[14]  Champion followed up on CORE's letter

within a short period of time stating that benefits would

terminate.  *See App. 3.*  With respect to all of the claims of

which plaintiffs are aware, Champion adopted CORE's initial

determination that the claimant was no longer disabled.  And, in

large part, Champion's administrative record *is*, in fact, CORE's

administrative record.[15]

Thus, information and documentation concerning CORE's

investigation — whether the information made it into Champion's

record, or whether it was conveyed orally to Champion officials—

is at issue in this action.  And any necessary explanation of the

---

[14] For purposes of plaintiffs' motion and response, sample
documents will be provided in the appendix to this memorandum.
The purpose of the documents is to show the foundation for
plaintiffs' claim that there is significant discoverable
information of CORE relating to the issues which have been deemed
discoverable at this point.  It would be neither necessary nor
expeditious for plaintiffs to provide *all* of the facts or
documents which require some explanation since that will be done
through the discovery process.  Plaintiffs have made no effort to
do so.

[15] There is acknowledgment of this fact in CORE's contract
in which CORE agreed to provide its records to Champion, and
maintain a copy; to assist Champion in explaining its
recommendation; and to assist Champion in the event of
litigation.  *Pl. Mot., Exh. 2, ¶ 9.3.* Plaintiffs are entitled to
discover whether Champion has produced *all* documents provided to
Champion which formed the administrative record established by
CORE.

facts in the administrative record may require the testimony and documentation of CORE employees who were involved in the investigation, and preparation of the documentation which forms the record with respect to each plaintiff's claim.

As stated in *Nagele*, a case involving the deferential standard of review:

> [R]eview under this deferential standard does not displace using pretrial discovery to determine the actual parameters of the administrative record and whether or not the fiduciary acted arbitrarily and capriciously with respect to a claim for benefits under a plan . . . .

*Nagele*.  There are other examples as well.  In some — though not all — of the claims, CORE provided "savings projections" to Champion.  *See, e.g., App. 4,6.*[16]  In these records, CORE projected the amount of money Champion would save by following CORE's determination or recommendation.[17]  While CORE has taken a strident position as to the limitation of its services and the irrelevance of its recommendations to its performance criteria, CORE makes no effort to explain why this information was included

---

[16]  *See* n. 14 above.

[17]It is unclear why some of the claims do not include such documents, and plaintiffs would inquire as to that inconsistency in the depositions.

12

in some of the plaintiffs' records.  Clearly, plaintiffs should
be entitled to inquire into these areas.

Finally, in illustration, there are references in some of
the documents which raise questions which need clarification.
*See, e.g., App.* 7.  Presumably, only CORE officials could clarify
and explain the administrative record in this regard.

Plaintiffs' proposed depositions and document requests of
CORE and its employees will be focused, in large part, on
determining the *actual* administrative record of each plaintiff—
whether by confirmation of that which plaintiffs have received
from Champion, or by discovering other information on which CORE
and Champion based their findings, which has not been revealed—
and an explanation of the record, which this Court has approved
as legitimate areas of inquiry.

     2.    **Conflict of Interest and
the Standard of Review**

On a related note, plaintiffs are entitled to conduct
discovery concerning any conflict of interest which might have
influenced Champion to terminate LTD benefits for the plaintiffs,
many of whom had been deemed disabled by Champion for years.
CORE apparently takes the position that there is no conflict
since CORE did not make the final decision.  This argument is

overly simplistic.

This Court and other courts have provided the principles considered in determining whether a conflict exists, and whether it impacted on the claims process. Fundamental ERISA law holds that the fact that the final decision concerning the denial of benefits is made by the entity which is financially responsible for payment of the benefits creates a conflict of interest. *See, e.g., Whitney v. Blue Cross*, 106 F.3d 475 (2d Cir. 1997); *Sullivan v. LTV Aerospace & Defense Co.*, 82 F.3d 1251 (2d Cir. 1996); *Zuckerbroad v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46 (2d Cir. 1996). There are other factors, as well, which may indicate the extent and influence of the conflict. For example, the "savings" analysis referred to above, clearly shows that money was *on the mind* of CORE.[18] Presumably, the reason money was such a consideration is because Champion was trying to cut its costs, as alleged by plaintiffs in their complaint. *Cmplt., ¶ 24.* Clearly, then, plaintiffs should be permitted to discover information from the primary CORE witnesses, and review their

---

[18] As indicated above, these documents, also, in themselves, raise issues of fact and credibility concerning CORE's statements that they had no financial incentive to recommend the denial of benefits of the plaintiffs and others, and that the financial consequences of their decisions were not related to performance. *See App. 4-6.*

14

documentation, which might bear on the emphasis in their
investigation on reducing Champion's costs.

The potential "impact" of the conflict raises other
questions.  In illustration, if plaintiffs were to show that
Champion had hired CORE to reduce its costs; that it had
conveyed, directly or indirectly, to CORE that it conduct an
investigation which would result in savings of costs; and that,
based on these objectives, CORE disregarded evidence favorable to
the claimants or placed greater emphasis on evidence negative to
the plaintiffs, than the impact of the conflict on the ultimate
decision by Champion would be clear.  And the fact that in every
known instance Champion ultimately accepted the recommendation of
CORE demonstrates that any conflict which influenced CORE, also
influenced Champion in its final decisions affecting
plaintiffs.[19]

In a similar sense, most of plaintiffs' document requests
address specific facts, documents, and issues which are
implicated, in one way or another, by the service contracts.
While CORE denies, in simplistic fashion, that there were any

---

[19] This is true regardless of whether the source of the
conflict was Champion in its communications to CORE, or CORE in
its self-imposed pressure to perform according to Champion's
expectations.

15

financial considerations in the manner in which it conducted its investigation, neither plaintiffs nor this Court are required to accept at face value CORE's representations, either through the service contracts or through arguments of counsel. See *Tangorre*; *Bowman*. The stated purpose of discovery is to permit the parties to test, challenge and determine the underlying facts concerning any issues raised in the pleadings.

Plaintiffs' discovery of CORE is, to a large extent, directed to conflicts of CORE and Champion which may have had an impact on the ultimate termination of plaintiffs' benefits by Champion.

### 3.    Breach of Duty

While CORE has been dismissed from this action, plaintiffs are entitled to conduct discovery, without limitation, on Champion's alleged breach of fiduciary duty under ERISA. To the extent there is information or documents that show, as alleged, that CORE was assisting Champion in its overall strategy to reduce its costs by terminating benefits of disabled claimants, such evidence would be relevant to these claims. Plaintiffs' discovery of CORE is relevant to these issues.

C. **Plaintiffs' Motion to Compel
Production from CORE Under
Rule 45(c)(2)(B) Should be Granted**

Pursuant to Rule 26 and the order of this Court, plaintiffs have sought three forms of discovery against CORE:

1. A Rule 30(b)(6) deposition of CORE concerning facts and issues designated in the notice;

2. Depositions of CORE witnesses who had contact with plaintiffs, who were involved in the investigation of plaintiffs' claims, or who had responsibilities in regard to the administration of the contracts with Champion; and

3. A subpoena to CORE, in conjunction with the Rule 30(b)(6) subpoena, to produce documents for inspection, as specifically identified in the notice pursuant to Rules 34 and 45.

*See Pl. Mot., Exh. 3-4.*

The documents subpoenaed from CORE are specifically described in Attachment B to Plaintiffs' Rule 30(b)(6) notice and subpoena.  *See Pl. Mot., Exh. 3.*  In short, the documents requested fall within the categories of discovery set forth by the Court in its previous orders.[20]

Plaintiffs find it hard to establish the relevance of

_____

[20] CORE has not attempted to articulate, in specific terms, why the documents may not be discoverable.  Instead, CORE has relied on its general conclusory arguments that the only documents relevant to this action are those in the "administrative record" of Champion.  As noted above, CORE's contention does not seriously address the issues raised in this action.

17

documents of which they have not seen.  Nevertheless, in the

appendix to this memorandum, plaintiffs have provided a

convincing rationale for requesting the documents in each

category.  *See App. 8-13.*  Plaintiffs have shown that the

categories of documents requested are relevant or calculated to

lead to evidence relevant to the determination of the

administrative record or an explanation of the documents in the

record; a potential conflict of interest in CORE's

"recommendations" which may have infected Champion's ultimate

decisions denying benefits to the plaintiffs; or documents

related to other factors which could bear on the standard of

review in this action.[21]

Plaintiffs should be permitted to inspect the documents

requested in conjunction with their Rule 30(b)(6) deposition

notice and subpoena.  Plaintiffs' motion to compel production of

the documents should therefore be granted.

---

[21]While, as a general matter, the documents requested should
be held discoverable, plaintiffs do not question that there may
be a need to protect the privacy interests of other individuals
and CORE.  Accordingly, plaintiffs would agree to reasonable
measures to protect the interests of others while permitting
plaintiffs to conduct discovery to support their claims, as they
are entitled to do under Rule 26.

D.    **CORE's Motion to Quash Plaintiffs'
      Subpoenas Should Be Denied**

Plaintiffs have noticed the depositions of CORE, pursuant to Rule 30(b)(6), and its employees.[22]

CORE has not specifically addressed the areas of discovery to be conducted through the depositions of CORE and its employees in their motion to quash the subpoenas.  Instead, they rest on their contention that CORE's investigation of each plaintiffs' claim and its preparation of documents (including those which ultimately went into Champion's administrative files) are not subject to discovery since it is *Champion's* administrative record that is relevant, not *CORE's*.  As stated above, CORE also contends, in conclusory fashion, that plaintiffs are not entitled to explore beneath the surface of the written contract and statements of its officials to determine any financial incentives which may have influenced the establishment of the record or the final recommendations of CORE.  As stated above, these arguments ignore the rules and standards of discovery, and the fundamental role which discovery plays in civil actions.

In the appendix to this memorandum, plaintiffs have provided their contentions as to the potential relevance and

_____

[22] Two of the employees had moved and could not be served.

19

discoverability of the substance areas described with respect to their Rule 30(b)(6) notice and subpoena. *See App. 14-15*. These contentions apply equally to plaintiffs' efforts to take depositions of the CORE employees. These employees were centrally involved in the investigation of the plaintiffs' claims, and in the establishment of the administrative records of many of the plaintiffs, and should have information to explain the facts and documentation which lead to the denial of disability benefits, and should be aware of the financial incentives which may have guided their recommendations.[23] CORE's motion to quash these depositions should be denied.[24]

### CONCLUSION

Plaintiffs contend that the information and documents sought from CORE is directly related to the issues to be decided in this action. Plaintiffs are willing to enter into a protective order

---

[23] CORE has not disputed that these individuals were involved in the establishment of the administrative record concerning many, if not all, of the plaintiffs. Dr. Beavers, for example, was the medical director of CORE who personally conducted the investigation of some of the plaintiffs' claims and signed many of CORE's recommendations. *See App. 1*.

[24] As stated, in regard to the document production, plaintiffs are willing to cooperate in any reasonable efforts to guard the privacy or confidentiality of any information which may be elicited from these witnesses. *See n. 21*, above.

20

to protect the confidentiality of any information or documents where privacy interests may be implicated.

Accordingly, plaintiffs request that they be permitted to proceed with their discovery of CORE.

THE PLAINTIFFS
HARRY L. SMITH, ET AL

BY: _____
WILLIAM B. BARNES, ESQ.
       (CT0268)
Rosenstein & Barnes
1100 Kings Hwy. East
P.O. Box 687
Fairfield, CT 06432
Tel (203) 367-7922
Fax (203) 367-8110
E-mail wbarnes@rosenbar.com

ROBERT M. ELLIOT, ESQ.
Elliot Pishko Morgan, P.A.
426 Old Salem Road
Winston-Salem, NC 27101
Tel (336) 724-2828
Fax (336) 724-3335
E-mail rmelliot@epmlaw.com

RICHARD B. HARPER, ESQ.
Harper Law Office
Post Office Box 395
Sylva, NC 28779
Tel (828) 586-3305
Fax (828) 586-4795
E-mail rbharper@dnet.net

21

## CERTIFICATE OF SERVICE BY FIRST CLASS MAIL

A copy of the foregoing Motion to Compel Production of Documents Against CORE, Inc., and Response to CORE, Inc.'s Motion to Quash Deposition Subpoenas was mailed this date, postage prepaid, to the following counsel of record to the addresses provided below on Nov. 4, 2003.

Bruce M. Steen, Esq.
McGuire Woods
3700 Bank of America Plaza
101 South Tryon St., Suite 3700
Charlotte, NC 28280-0008
Facsimile: 704-353-6244

Barry J. Waters, Esq.
Murtha Cullina, LLP
Whitney Grove Sq.,
Two Whitney Ave.,
P.O. Box 704
New Haven, CT 06503-0704
Facsimile: 203-772-7723

James T. Finnigan, Esq.
Rich May
176 Federal Street
Boston, MA 02110-2223
Facsimile: 617-556-3889

WILLIAM B. BARNES, ESQ.

22