dard and said that the decision to implement it had been made at a higher level; "You would have to talk to CORE." [134]

CORE maintained the administrative record. Champion sent CORE copies of all its LTD files,[135] but CORE did not send Champion copies of the items in CORE's files.[136]

> Q. So there are documents with respect to each of these claimants in CORE's file that are not in Champion's files?
> A. Yes.
> Q. And are not under Champion's control as far as you know?
> A. Yes.
> Q. Okay. And that could include documents, which are relevant to the determination of disability or the lack of disability of a particular claimant?
> A. Yes.[137]

The record maintained by Champion during the appeal process was not complete. There were many items which CORE had that Champion did not have.[138]

> Q. ... And at that time that you would make that decision based on CORE's recommendation at the second level, what you would have in your file were any of the original records for that person's claims file that

---

[134] Dixon Dep. Tr. at 168.
[135] Dixon Dep. Tr. at 81.
[136] Dixon Dep. Tr. at 81.
[137] Dixon Dep. Tr. at 81-82.
[138] Dixon Dep. Tr. at 107.

24

>had originally been sent to CORE, and any additional notes or letters of appeal that had been sent to you with the letter of appeal by the claimant when it came to you, and that would be all you would have in your file?
>A.   Yes.[139]

Ms. Dixon could not say how or where Champion kept records of benefit claim denials and the financial effect of those denials on the plan.[140]  CORE had that information:

>Q.   Where would I find those numbers?  I mean, if I wanted to, who would have that information, what kind of reports recorded that information of the number of claims per month, the number of claims that were denied, the number of claims that were approved, the number of people who were under disability who were terminated, there were reports like that, weren't there?
>A.   CORE probably has those reports.
>Q.   You've seen those reports?
>A.   I have seen some of their reports, yes.[141]

Ms. Dixon had no responsibility to follow up on any applications for benefits which happened to be approved.[142]  That was CORE's

---

[139] Dixon Dep. Tr. at 119 ("Q. [F]or that 2-year period of time [when CORE was responsible] you would have nothing in your file because it would have all gone to CORE?  A. That is correct, yes.").

[140] Dixon Dep. Tr. at 91.

[141] Dixon Dep. Tr. at 91-92.

[142] Dixon Dep. Tr. at 54.

job.[143] Ms. Dixon did not know why or how CORE decided to follow up - CORE made that decision.[144] A beneficiary could stay on disability for years without any follow up by Ms. Dixon.[145] She acted only if CORE told her that something had changed.[146] Ms. Dixon didn't have any system to manage LTD claims on her computer and didn't keep notes on particular cases.[147] CORE sent her information if it was questioning something about a case.[148] CORE notified Ms. Dixon when someone came on or off LTD status. She did not keep track of that event. Her responsibility was only to input the date into Champion's computer for payroll purposes.[149]

Either CORE or Travelers re-evaluated the claims of the plaintiffs in this action. Ms. Dixon did not.[150] Ms. Dixon did not know how Travelers or CORE decided which claims to re-evalu-

---

[143] Dixon Dep. Tr. at 54.
[144] Dixon Dep. Tr. at 54-55.
[145] Dixon Dep. Tr. at 102.
[146] Dixon Dep. Tr. at 102.
[147] Dixon Dep. Tr. at 96.
[148] Dixon Dep. Tr. at 96.
[149] Dixon Dep. Tr. at 96, 99, 101.
[150] Dixon Dep. Tr. at 55-56.

ate.[151] CORE annually reviewed every claim but did not give Champion the results.[152] The criteria for selecting people to re-evaluate were internal to Travelers and CORE.[153] Between 1996 and 1999 CORE decided whether to review claims and what types of claims to review.[154]

Ms. Dixon testified that CORE made plan policy. CORE decided how often a beneficiary would have to see a physician to be under the regular care and attendance of a physician for the purpose of the plan exclusion which says that benefits are not payable under the plan for any period during which the participant is not under the regular care and attendance of a physician.[155] Although the plan provides in another exclusion that benefits are not payable during any period that a physician selected by the plan supervisor determines that the beneficiary is not totally disabled, Ms. Dixon testified that Mark Lehman, the plan supervisor, did not select a physician for that purpose - CORE did, and its choice of physicians was not subject to any

---

[151] Dixon Dep. Tr. at 56.
[152] Dixon Dep. Tr. at 80.
[153] Dixon Dep. Tr. at 56-57.
[154] Dixon Dep. Tr. at 57.
[155] Dixon Dep. Tr. at 68.

rules,[156] or approved by Champion.[157] CORE, not Champion, decided when the onset of a person's disease had to occur before they would be considered part of the plan.[158]

### Effect of the Deposition
### Testimony on This Discovery Dispute

CORE's arguments based on the plan contract terms improperly elevate form over substance.[159] The deposition testimony of Champion, by Mr. Lehman, and Ms. Dixon compels the conclusion that the plans let CORE maintain the administrative record and ceded to it all LTD benefit decisions. Champion personnel never had the full administrative record and never had enough information to state the basis of, let alone make, any particular benefits decision. Without testimony and documents from CORE the Plaintiffs will never get a full picture of what happened to

---

[156] Dixon Dep. Tr. at 71.

[157] Dixon Dep. Tr. at 69-70.

[158] Dixon Dep. Tr. at 187.

[159] See, e.g., Rosen v. TRW, Inc., 979 F.2d 191, 193 & n. 1 (11th Cir. 1992) (employer liable under ERISA as plan fiduciary because it managed plan even though plan document made committee responsible); Chao v. Merino, 98-CV-2041 (JS) (ARL), 2002 U.S. Dist. LEXIS 26695, *24 (E.D.N.Y. Mar. 29, 2002) ("Courts consistently disregard corporate form over substance when ERISA's remedial purposes might be otherwise compromised.") (copy attached as Ex. 4).

28

them. Plaintiffs are entitled to discovery from CORE based upon their theory of the case.[160]

### CONCLUSION

For all of the foregoing reasons Plaintiffs respectfully ask that CORE, Inc.'s motions to quash and for a protective order be denied and that Plaintiffs' motion to compel be granted.

---

[160] See Ladson v. Ulltra E. Parking Corp., 164 F.R.D. 376, 377-78 (S.D.N.Y. 1996) (defendant not allowed to determine what information necessary to produce to plaintiff); Bowman v. General Motors Corp., 64 F.R.D. 62, 68 (E.D. Pa. 1974) (defendant alone cannot determine what information is relevant).

29

THE PLAINTIFFS
HARRY L. SMITH, ET AL

BY: */s/ W. Barnes/*
WILLIAM B. BARNES, ESQ.
   (CT0268)
Rosenstein & Barnes
1100 Kings Hwy. East
P.O. Box 687
Fairfield, CT 06432
Tel (203) 367-7922
Fax (203) 367-8110
E-mail wbarnes@rosenbar.com

ROBERT M. ELLIOT, ESQ.
Elliot Pishko Morgan, P.A.
426 Old Salem Road
Winston-Salem, NC 27101
Tel (336) 724-2828
Fax (336) 724-3335
E-mail rmelliot@epmlaw.com

RICHARD B. HARPER, ESQ.
Harper Law Office
Post Office Box 395
Sylva, NC 28779
Tel (828) 586-3305
Fax (828) 586-4795
E-mail rbharper@dnet.net

**CERTIFICATION**

A copy of the foregoing was mailed first class mail, postage prepaid, on January 21, 2004, to the following counsel of record:

Bruce M. Steen, Esq.
McGuire Woods
3700 Bank of America Plaza
101 South Tryon St., Suite 3700
Charlotte, NC 28280-0008

Barry J. Waters, Esq.
Murtha Cullina, LLP
Whitney Grove Sq.,
Two Whitney Ave.,
P.O. Box 704
New Haven, CT 06503-0704

James T. Finnegan, Esq.
Rich May
176 Federal St.
Boston, MA 02110-2223

Anthony M. Fitzgerald, Esq.
Carmody & Torrance, LLP
195 Church St., 18th Floor
P.O. Box 1990
New Haven, CT 06509'

_____
WILLIAM B. BARNES, ESQ.