IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

HARRY L. SMITH, LOIS L. LYNN, DARRELL KEITH HILL, ELIZABETH CASE BOONE, WILEY H. HAYNES, ROSA LEE BROOKSHIRE, HARRISON YOUNG CLARK, FRANZISKA FINNEY, JUDITH CASE KIRKPATRICK, WILSON DANIEL McCLURE, CELIA DARLENE METCALF, CHARLES R. REECE, DOLPHUS LUTHER TREADWAY, JR., and MARTHA BURNETTE WHITLEY,

Plaintiffs,

v.

CHAMPION INTERNATIONAL CORPORATION, LONG TERM DISABLITY BENEFITS PLAN FOR SALARIED EMPLOYEES OF CHAMPION INTERNATIONAL CORPORATION #506, LONG TERM DISABILITY BENEFITS PLAN FOR CERTAIN HOURLY EMPLOYEES OF CHAMPION INTERNATIONAL CORPORATION #703; INTERNATIONAL PAPER COMPANY; and CORE, INC.

Defendants.

CIVIL ACTION NUMBER
302CV00212 (GLG)

February 9, 2004

**Defendants' Response to Plaintiffs' Supplemental Memorandum in Opposition to Motion of CORE, Inc. to Quash Deposition Subpoenas and/or for a Protective Order and in Support of Plaintiffs' Motion to Compel Discovery from CORE, Inc.**

Defendants Champion International Corporation ("Champion International"), Long Term Disability Benefits Plan for Salaried Employees of Champion International Corporation #506 ("LTD Plan #506"), Long Term Disability Plan for Certain Hourly Employees of

Champion International Corporation #703 ("LTD Plan #703")(collectively referred to as the "LTD Plans" or the "Champion LTD Plans"), and International Paper Company ("International Paper"), by counsel, respond as follows to plaintiffs' Supplemental Memorandum in Opposition to Motion of CORE, Inc., to Quash Deposition Subpoenas and/or for a Protective Order, and in Support of Plaintiffs' Motion to Compel Discovery from CORE, Inc. ("Plaintiffs' Supplemental Memorandum"):

**Summary of Argument**

On November 18, 2003, defendants filed a consolidated response to the discovery motions filed by plaintiffs and third-party CORE, Inc. ("CORE"). Defendants did so in order to protect from disclosure documents, information or testimony regarding LTD claimants other than plaintiffs in this action.[1] On January 22, 2004, plaintiffs filed their Supplemental Memorandum in response to, *inter alia*, "the memorandum of Defendants Champion International Corp., *et al.*, in opposition to Plaintiffs' motion to compel filed November 18, 2003." See Plaintiffs' Supplemental Memorandum, p. 2.

Plaintiffs contend in their Supplemental Memorandum that, based on recent depositions of present and former Champion International employees, discovery of CORE will support their allegations that:

[1]To the extent such documents may exist, defendants did not object to the production of reports, documents or information showing the number of claims pursuant to the LTD Plans on which CORE may have assisted. However, reports, documents and information regarding and/or identifying claimants other than plaintiffs are beyond the scope of permissible discovery in this matter. As discussed more fully below, see *infra* at 4-6, defendants also agree with CORE that the administrative record properly before the Court is that record considered by the LTD Plans' Claims Review Committee when it evaluated each of plaintiffs' claims for benefits. Defendants produced those administrative records to plaintiffs in January, 2003.

> "(1) Defendants abused their discretion by abandoning their duty under ERISA to CORE; (2) Defendants did not make the benefits determinations at issue with unbiased judgment and an adequate factual foundation; and (3) CORE's decisions, which were those of Defendants, were affected by financial conflict of interest."

See Plaintiffs' Supplemental Memorandum, p. 3. None of plaintiff's arguments, however, alter the fundamental point that they are not entitled to documents concerning LTD claimants other than plaintiffs in the instant case. Moreover, plaintiffs' arguments are based on distortions of the discovery record before the Court.

## Argument

Plaintiffs Fail to Establish that they are Entitled to Documents and Information Regarding Other LTD Claimants, and Otherwise Distort the Discovery Record Before the Court.

Citing to the deposition testimony of Mark Lehman and Mary Lee Dixon, plaintiffs assert in their Supplemental Memorandum that

> "Champion ceded its decisionmaking responsibility to CORE; Champion did not maintain the administrative record; and CORE told Champion the cost savings of each benefit decision."

See Plaintiffs' Supplemental Memorandum, p. 6. According to plaintiffs, "[d]etailed examination of the actual relationship between CORE and Champion shows that CORE and Champion did not tell the truth." See Plaintiffs' Supplemental Memorandum, p. 6. Plaintiff's contentions are without merit.

First, even if taken at face value, plaintiffs' arguments do not entitle them to documents and claims files for other LTD claimants. Indeed, in their Supplemental Memorandum, plaintiffs make no attempt to explain why the "recent depositions" or their supplemental arguments based on those depositions somehow entitle them to access to the confidential and

voluminous files of the hundreds of LTD claimants other than the fourteen plaintiffs involved in the instant case.[2]

Second, even if plaintiffs' arguments somehow did relate to documents regarding other LTD claimants, the "factual" bases for those arguments are based on distortions of the discovery record before the Court. Several examples illustrate the fallacy in plaintiffs' proffer.

A. Administrative Record & Final Decisionmaker

For example, plaintiffs contend that "Champion personnel never had the full administrative record and never had enough information to state the basis of, let alone make, any particular benefits decision." See Plaintiffs' Supplemental Memorandum, p. 28. Discussing at length the file materials which may have been available to Mary Lee Dixon, plaintiffs assert that "CORE maintained the administrative record" and that Champion International's claims files were not complete. Id. at 24-25. Plaintiffs' contentions are without merit.

As plaintiffs well know, Mary Lee Dixon was not the final arbiter of LTD claims pursuant to the Champion LTD Plans. Rather, as Ms. Dixon (and every other witness deposed by plaintiffs) testified, the LTD Plans' Claims Review Committee (not Ms. Dixon and not CORE) made the final determination regarding whether an LTD claimant met the Plans' disability definition and, therefore was entitled to benefits. For example, Mr. Lehman testified that Ms. Dixon was responsible for first level appeals pursuant to the LTD Plans and, if a

[2] Therefore, as the Court has done on two occasions in the past, defendants request that, in ruling on plaintiffs' and CORE's cross discovery motions, the Court protect from disclosure documents and information regarding LTD claimants other than plaintiffs in the instant case. Such information and documents are beyond the scope of permissible discovery in this matter.

participant was dissatisfied with the decision at the first level of appeal, the claim then would go to the Plans' Claims Review Committee.

> Q. And what is the Claims Review Committee supposed to do?
>
> A. The Claims Review Committee is supposed to understand the appeal, review the supporting documentation from the participant, any of the medical information, and make a final determination.
>
> . . .
>
> Q. If the participant is dissatisfied with that decision, what if anything can they do?
>
> A. That would have been the final appeal through the appeal process.

See Exhibit A (Lehman Deposition, p. 73-75).

The file before that Committee, therefore, defines the administrative record on which the benefits decisions were made in the instant case, and there can be no dispute that the Committee had the complete claims file before it when it decided to deny plaintiffs' claims for LTD benefits. John Lewis, a member of the Claims Review Committee, testified that the Committee members received "very thick" binders regarding each LTD claim to be reviewed by the Committee. Some of those binders were three and one-half inches thick, others "may have been five, six inches thick." See Exhibit B (Lewis Deposition, p. 22-25).

Mike Gorski, another member of the Claims Review Committee, testified that, approximately one week prior to each meeting, each member of the Committee received a large binder regarding the claims to be discussed at that meeting. He understood those binders to contain "every bit of information they had in the file." According to Mr. Gorski, those binders included, *inter alia*, a chronology of each claim, functional capacity evaluations, transferable skills analyses, vocational analyses, independent medical examination reports, forms filled out by the LTD claimants, medical records, notes and reports from the claimants'

physicians, and correspondence from and to the claimants. See Exhibit C (Gorski Deposition, p. 49-59).

As Mr. Lewis testified, the Committee members were instructed "to review that information, take and make notes as best we could, and come prepared to thoroughly discuss each one of those cases in detail." See Exhibit B (Lewis Deposition, p. 23). The purpose of the Committee meeting was "[t]o review claims on the part of individuals and to make a fair and accurate decision as to whether or not that claim should be upheld or denied." See Exhibit B (Lewis Deposition, p. 40-41).

Despite dozens of pages of deposition testimony from some of its members, plaintiffs do not even mention the Claims Review Committee, the Committee's undisputed role as the final decisionmaker, or the voluminous amount of information before the Committee when it made its claims decisions. In September, 2002, Judge Goettel ruled that discovery should be limited to the administrative record before the Plan Administrator – that is, the LTD Plans' Claims Review Committee – when it made the decisions denying plaintiffs' claims for LTD benefits. Defendants have produced those records to plaintiffs – which comprise more than 8,000 pages – and plaintiffs cannot bypass Judge Goettel's ruling by failing even to acknowledge the deposition testimony they elicited from the Committee's members.

B. "<u>Cost Savings of Each Benefit Decision</u>"

Plaintiffs also contend that "CORE told Champion the cost savings of each benefit decision." See Plaintiffs' Supplemental Memorandum, p. 6. According to plaintiffs, "CORE generated confidential service reports for Champion on employees receiving benefits" and "***<u>[e]ach</u>*** report contained a section estimating the savings to the plan as a result of CORE's

work on the employee discussed in the report." See Plaintiffs' Supplemental Memorandum, p. 13-14 (emphasis added). The undisputed record contradicts plaintiffs' representations.

For example, plaintiffs' counsel attached to his sworn affidavit "confidential service reports" from only three of the fourteen plaintiffs in this action. In contrast, defendants have attached hereto eighteen additional confidential service reports regarding those three and the other eleven plaintiffs. See Exhibit D.[3] Contrary to plaintiffs' counsel's representation that "each" such report identified "the savings to the plan as a result of CORE's work," ***none*** of the confidential service reports appended hereto as Exhibit D include any mention of benefits costs or savings.

Furthermore, notwithstanding the three confidential service reports they identify, plaintiffs ignore the undisputed testimony from every witness they deposed in this case, each of whom testified that the cost of benefits was never a consideration in the decision to grant or deny benefits. Mr. Lehman testified as follows:

> Q. Is there any way that the savings which Champion's plans might realize as a result of a denial or modification of benefits was part of its decision to grant or deny benefits?
>
> A. No.

See Exhibit A (Lehman Deposition, p. 246). Mr. Lehman also was present when CORE made a presentation to become the Plans' third-party claims administrator and he "do[es] not remember any financial benefits presentation." See Exhibit A (Lehman Deposition, p. 210).

---

[3]Defendants produced these reports to plaintiffs in January, 2003, and plaintiffs introduced most of them as exhibits in the "recent depositions" to which they refer in their Supplemental Memorandum.

According to Mr. Gorski, the "sole function" of the Committee "was to hear and make determinations on denial of claims" and cost of the benefits was not considered. See Exhibit C (Gorski Deposition, p. 85). He testified as follows:

> Q. In the course of its work, did the committee members – did the committee, in any way, consider the cost to the benefit plans and Champion of continuing the person on disability?
>
> A. I don't recall that. It was focused on the specific claim, not on – and whether or not they were eligible or not.
>
> Q. When you say I don't recall that, do you mean it didn't happen or do you mean that you don't remember?
>
> A. I don't think it happened. We were focused on the case.
>
> Q. Okay. When you were on the committee, do you recall any situation in which there was mention of the savings which might accrue to the plan – and Champion, or Champion – if the person was denied benefits?
>
> A. No, I don't.

See Exhibit C (Gorski Deposition, p. 82-83; 82-89).

Mr. Lewis agreed that cost played no role in the work of the Claims Review Committee. He testified as follows:

> Q. Do you recall seeing the cost savings that was projected by CORE in their review of the different disability claims?
>
> A. I don't recall seeing that. If I did, I didn't pay it very much attention.
>
> Q. Was CORE – was cost something that ya'll talked about at the Claims Review Committee?
>
> A. No, not that I remember.
>
> Q. Why would you not have talked about cost?
>
> A. I have no idea. We just never – to my memory, that was not a portion of that discussion.

See Exhibit B (Lewis Deposition, p. 32-33). Ms. Dixon also denied that the LTD Plans sought to obtain savings for the company by cutting claims. See Exhibit E (Dixon Deposition, p. 42-43 & 93-94).

C. Additional Distortions of the Discovery Record

1. Plaintiffs state that, before CORE was retained as a third-party claims administrator, "CORE gave Champion sample quarterly reports" and that "Mr. Lehman acknowledged that these reports would show cost savings from CORE's work." See Plaintiffs' Supplemental Memorandum, p. 13. Plaintiffs fail to inform the Court, however, that Mr. Lehman was "unaware if anybody at Champion received those reports." See Exhibit A (Lehman Deposition, p. 218). Mr. Lehman's testimony, therefore, does not support plaintiffs' leap of faith that any such reports must be in CORE's (or Champion International's) possession.

2. On a related note, plaintiffs' discussion of the CORE presentation notebook that contained these "sample" reports is another red herring. See Plaintiffs' Supplemental Memorandum, p. 12-13. In those same materials, CORE expressly states that its "workability" approach "Doesn't . . . Override plan language (deny benefits, truncate benefits, etc.)." See Exhibit F (emphasis in original). Contrary to plaintiffs' contention, this notebook, therefore, is not evidence that CORE and the LTD Plans set out to improperly deny benefits in order cut costs.

3. Plaintiffs also assert that "[u]nder the plan, Mr. Lehman said, the decision on disability of a physician chosen by the plan supervisor is conclusive . . . Under the language of the plan the decision of a CORE doctor was final." See Plaintiffs' Supplemental Memorandum, p. 11, citing p. 86-87 of Mr. Lehman's deposition testimony. Again, however,

plaintiffs fail to acknowledge the role of the Disability Claims Review Committee, which made the final claims decision based on a review of the totality of the record. See *supra* at 4-6. In addition, their contention also distorts Mr. Lehman's testimony. Contrary to plaintiffs' assertion that Mr. Lehman said that "the decision of a CORE doctor was final," Mr. Lehman actually testified as follows:

> Q. . . . If there is a difference of opinion as to whether a participant meets the requirements of total disability, the decision of the plan supervisor shall be final and conclusive; is that correct?
>
> A. Yes.
>
> Q. And what does that mean to you?
>
> A. It means that if there's a difference of what the participant's doctor is providing with regards to disability and what a plan doctor, *the decision in terms of interpreting that is final with the plan supervisor*."

See Exhibit A (Lehman Deposition, p. 86). Contrary to plaintiffs' assertion, the decision was made by the "plan supervisor," not the physician retained by CORE.

**Conclusion**

Based on the foregoing, defendants, by counsel, request the Court, in ruling on plaintiffs' and third party CORE's cross discovery motions, to continue to protect from disclosure information and documents regarding LTD claimants other than plaintiffs in the instant case.

This the 9th day of February, 2004.

DEFENDANTS – CHAMPION INTERNATIONAL CORPORATION, LONG TERM DISABLITY BENEFITS PLAN FOR SALARIED EMPLOYEES OF CHAMPION INTERNATIONAL CORPORATION #506, LONG TERM DISABILITY BENEFITS PLAN FOR CERTAIN HOURLY EMPLOYEES OF CHAMPION INTERNATIONAL CORPORATION #703; and INTERNATIONAL PAPER COMPANY

By:______________________________
Barry J. Waters – ct05520

MURTHA CULLINA LLP
Whitney Grove Square
Two Whitney Avenue
P.O. Box 704
New Haven, Connecticut 06503-0704
(203) 772-7700
(203) 772-7723 (facsimile)

Bruce M. Steen – ct23613
MCGUIREWOODS LLP
Bank of America Corporate Center
100 North Tryon Street, Suite 2900
Charlotte, North Carolina 28202
(704) 353-6244
(704) 353-6200 (facsimile)

Their Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was sent by first-class mail, postage prepaid, on February 9, 2004, to:

Robert M. Elliot, Esquire
ELLIOT, PISHKO, GELBIN & MORGAN, P.A.
426 Old Salem Road
Winston-Salem, North Carolina 27101,

William B. Barnes, Esquire
ROSENSTEIN & BARNES
1100 Kings Highway East
Suite 1C
Fairfield, Connecticut 06432

Richard B. Harper, Esquire
LAW OFFICES OF RICHARD B. HARPER
P.O. Box 395
Sylva, North Carolina 28779-0395

Anne D. Peterson, Esquire
CARMODY & TORRANCE, LLP
195 Church Street, 18th Floor
P.O. Box 1990
New Haven, Connecticut 06509

James T. Finnigan, Esquire
RICH MAY, P.C.
176 Federal Street
Boston, Massachusetts 02110

______________________________
Barry J. Waters – ct05520