IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| HARRY L. SMITH, LOIS L. LYNN, ) <br> DARRELL KEITH HILL, ELIZABETH ) <br> CASE BOONE, WILEY H. HAYNES, ) <br> ROSA LEE BROOKSHIRE, HARRISON ) <br> YOUNG CLARK, FRANZISKA FINNEY, ) <br> JUDITH CASE KIRKPATRICK, WILSON ) <br> DANIEL McCLURE, CELIA DARLENE ) <br> METCALF, CHARLES R. REECE, ) <br> DOLPHUS LUTHER TREADWAY, JR., and ) <br> MARTHA BURNETTE WHITLEY, ) <br> ) <br>       Plaintiffs, ) <br> ) <br>    v. ) <br> ) <br> CHAMPION INTERNATIONAL ) <br> CORPORATION; LONG TERM ) <br> DISABILITY BENEFITS PLAN FOR ) <br> SALARIED EMPLOYEES OF ) <br> CHAMPION INTERNATIONAL ) <br> CORPORATION #506; LONG TERM ) <br> DISABILITY BENEFITS PLAN FOR ) <br> CERTAIN HOURLY EMPLOYEES OF ) <br> CHAMPION INTERNATIONAL ) <br> CORPORATION #703; and INTERNATIONAL ) <br> PAPER COMPANY, ) <br> ) <br>       Defendants. ) <br> _____ ) | <br><br><br><br><br><br><br><br><br><br><br><br>**CIVIL ACTION NO.** <br>**302CV212 (GLG)** <br><br><br><br><br><br><br><br><br><br><br><br><br><br>**February 12, 2004** |

**BRIEF IN SUPPORT OF PLAINTIFFS' SECOND MOTION TO COMPEL DISCOVERY**

**Procedural Background**

Plaintiffs instituted this action on February 4, 2002. Defendants served their answer on May 13, 2002.

The parties have conducted substantial discovery in this action. Specifically, plaintiffs have served four sets of discovery (interrogatories and request for production of documents) on defendants. Defendants have responded providing some information and documents.[1] Defendants have served interrogatories on plaintiffs to which plaintiffs have responded.

In addition, plaintiffs have scheduled a number of depositions in this action. First, plaintiffs attempted to take depositions of CORE officials and employees. These depositions were finally scheduled for October 20-21, 2003, in Massachusetts and Maine, but have been delayed pending the Court's resolution of issues presented in CORE's motion to quash plaintiffs' deposition subpoenas and plaintiffs' motion to compel the production of documents requested of CORE.

When plaintiffs were unable to take CORE depositions, they proceeded to take depositions of the defendants pursuant to Rule 30(b)(6) and employees of defendants. These depositions were conducted over a three-day period from November 12-14, 2003 in Memphis, Tennessee.

Plaintiffs also conducted a deposition of defendants' plan administrator who was involved in the processing of most of the plaintiffs' claims——Mary Lee Dixon. Plaintiffs conducted Ms. Dixon's deposition on November 19, 2003, near Cincinnati, Ohio.

Finally, plaintiffs scheduled a Rule 30(b)(6) deposition of defendants concerning the "LTD Committee" and the internal audit department, which had been described in the previous depositions of defendants' employees. This deposition was scheduled for December 12, 2003. During the week prior to the depositions, at the request of defendants' counsel, the parties agreed to postpone the deposition until the Court had resolved the issues pending before it.[2]

On August 11, 2003 (following the hearing on July 23, 2003), the Court entered a Stipulation

---

[1] Many of the documents have been redacted to exclude information which has been directly requested by plaintiffs.

[2] Defendants' counsel stated that no employee of defendants could be identified "who has the requisite knowledge necessary to testify regarding those areas of inquiry" concerning the "LTD Committee" or "internal audit department" except Mark Lehman and Tom Rodriquez who had previously testified by deposition. It was Lehman's and Rodriquez's testimony that raised issues concerning the efforts to review the costs of LTD claims, but these witnesses had little specific information and no documentation to provide, leading plaintiffs to seek a Rule 30(b)(6) deposition on these facts.

and Order signed by all parties providing that discovery would proceed concerning the issues in the case, particularly concerning the appropriate standard of review. The order provided that discovery would end on December 31, 2003, "[s]ubject to . . . further discovery Orders of the Court." *See Exhibit 2, ¶ 1*.[3] The order also provided that at any time the parties could seek "additional guidance regarding the course of discovery." *Id., ¶ 4*.[4]

At the time of the hearing in July, 2003, the Court left unresolved the Plaintiffs' Motion to Compel Discovery concerning their first set of discovery requests to defendants. While the Court provided some input on how such issues should be reviewed, no decision or resolution was made at that time.

## Motions Presently Before The Court

Accordingly, the Court now has the following motions (and any responses) pending before it for resolution:

1. Plaintiffs' motions to compel discovery of defendants including,

    (a) Plaintiffs' Motion to Compel Discovery concerning defendants' failure to respond to plaintiffs' first set of discovery requests; and

    (b) Plaintiffs' Second Motion to Compel Discovery against defendants.

2. Motions regarding discovery of CORE, Inc., including:

    (a) Motion of CORE to quash plaintiffs' subpoenas to take depositions of CORE and its employees, or for a protective order; and

    (b) Plaintiffs' motion to compel production of documents against CORE.

## Statement of Facts

This action involves fourteen disabled former employees of Champion. Each of the plaintiffs became disabled from work due to physical disabilities; filed a long term disability claim with Champion; and was initially approved for benefits. Each was subsequently terminated from LTD

---

[3] Exhibits cited in this second memorandum refer to exhibits attached to Plaintiffs' Second Motion to Compel Discovery.

[4] Plaintiffs have requested, with the approval of defendants, a discovery conference with United States Magistrate Judge Garfinkel by separate motion.

benefits.

Champion[5] and CORE entered into an agreement, effective January 1, 1996, entitled "Services Agreement" under which CORE provided services to Champion in connection with Champion employees' long term disability claims.

Effective January 1, 1999, Champion and SCORE[6] entered into a service agreement under which SCORE (hereafter included in the reference to "CORE") provided services to Champion in connection with all of the Champion employees' long term disability claims.

From 1996 through 1999, CORE reviewed all of plaintiffs' claims, as well as other LTD claims of Champion employees. CORE, at the conclusion of its review, determined that each plaintiff's claim be denied, and that LTD benefits should be terminated.

The plans establish that an administrative review must be provided to claimants whose claims have been denied pursuant to ERISA. The details of the procedure were left to the administrator of the plans to determine. Until discovery in this action, it was not clear *what* role CORE was playing in the procedure. Now it is quite clear. CORE was the single most powerful voice and force in determining the disability claims of the plaintiffs and other claimants. *See plaintiffs' Supplemental Memorandum in Opposition to Motion of CORE, Inc., to Quash Deposition Subpoenas and/or for a Protective Order, and in Support of Plaintiffs' Motion to Compel Discovery from CORE, Inc., filed January 21, 2004 (with attached depositions excerpts) (hereafter "Plaintiffs' Suppl. Memo. re CORE").*

Specifically, both CORE and the defendants initially took the position that CORE only made a "recommendation" to Champion as to whether the claim should be denied or accepted. The evidence produced in discovery directly contradicts the positions of defendants and CORE regarding CORE's role in the decisionmaking process. Specifically, the evidence is uncontroverted that CORE made the initial decision concerning each plaintiffs' claim. Following the initial decision by CORE,

---

[5]Pursuant to a merger agreement, in June, 2000, Champion International became a subsidiary of International Paper. International Paper assumed sponsorship of Champion's LTD plans effective September 18, 2000.

[6]SCORE was a joint venture between Sedgewick James, which had handled all of Champions workers' compensation claims, and CORE, which had handled its LTD claims.

a claimant could appeal under the following procedure:

- in the event a plaintiff appealed to Champion, the appeal would be directed to the plan administrator, Mary Lee Dixon, a Champion employee;
- upon receiving an appeal, Mary Lee Dixon would send the claim along with any new documents back to CORE for reconsideration;
- subsequently, CORE would send a letter to Ms. Dixon, generally repeating its initial decision, which Ms. Dixon would adopt, without question, as her own decision;
- an appeal from Ms. Dixon's decision would be directed to the Champion Claims Review Committee (CRC) for a final decision;
- no independent investigation was conducted by any Champion employee of any of plaintiffs' claims—i.e., if any facts were needed to support a final decision, CORE would be asked to investigate and resolve such issues and report back to Ms. Dixon or the CRC, as appropriate. *See Plaintiffs' Suppl. Memo. re CORE (and attached depostion excerpts)*.

In short, the deposition evidence has established conclusively that Champion relied totally on CORE's investigation of the facts, CORE's interpretation of the medical evidence, and CORE's interpretation of the plan provisions. In fact, the *only* level at which there was any semblance of independence on the part of Champion in the review of claims was at the final level of appeal before the Champion Claims Review Committee (CRC). Evidence concerning the CRC was much more vague than that concerning Ms. Dixon's "review." Plaintiffs conducted a Rule 30(b)(6) deposition of Champion in which questions were asked concerning this procedure. Mark Lehman testified on behalf of Champion that the CRC was the final level of review with Champion; that it generally received its information from CORE; that it had no access to medical or vocational expertise outside of CORE; that if it had questions, it would refer them to CORE for further investigation. *Id*. The CRC provided no independent review whatsoever, but simply read the record and upheld CORE's decision or sent the case back to CORE for further information. *Id*. Significantly, Champion employees have not provided any independent information as to the number of claims which they ultimately decided in favor of claimants in reversal of CORE's earlier decisions.

The lack of evidence concerning CRC's review is a void which raises serious questions

concerning the ultimate issues regarding Champion's conflict of interest and the appropriate standard of review. And it is on that basis that plaintiffs contend that defendants must be required to produce more information and documents concerning their pattern and practice in handling LTD claims.

**Attempts to Resolve Discovery Issues**

The parties have attempted to resolve the issues raised in plaintiffs' motions to compel discovery. Specifically, plaintiffs have discussed the discovery at issue on several occasions with defendants' counsel, and have written a letter specifically documenting and seeking clarification of those responses which plaintiffs deemed deficient. *See Exhibit 9 (to motion), Affidavit of Robert M. Elliot (Attachment A)*.

Defendants' counsel wrote a letter in response, qualifying and resolving some of the issues in dispute, and reiterating defendants' objections and position with respect to other issues. *Id. (Attachment B)*. Defendants' counsel have recently provided additional documents. *Id.*

Despite these efforts, the parties have been unable to reach agreement with respect to the discovery requests which are subject to the plaintiffs' motions to compel discovery.

**ARGUMENT**

**A.     Discovery Standards**

Generally, Rule 26 of the Federal Rules of Civil Procedures provides:

> that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, where it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party....The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Rule 26(b)(1). *Hickman v. Taylor*, 329 U.S. 495 (1947).

Since the rules of discovery were established years ago, the courts have stated time and again that the rules of discovery are "broad and liberal", and that "either party may compel the other to disgorge whatever facts he has in his possession." *Hickman*, 329 U.S. at 392.

While the issues subject to discovery in ERISA cases may be narrower, the standards of Rule 26 apply. First, discovery is clearly permissible in determining the facts relevant to the appropriate

standard of review, and whether there was a "full and fair review" under the appropriate standard of review. In *Nagele v. Electronic Data Systems Corp.*, 193 FRD 94 (WDNY 2000), the court discussed principles regarding discovery in ERISA cases:

> ERISA also mandates that every plan participant who is denied benefits receive a written notice of such denial "setting forth the specific reasons for such denial" and an opportunity for a 'full and fair review.' 29 U.S.C. § 1133(1), (2). "The basic requirements of 'full and fair review' include knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision."" [Citation omitted]. Although under either the *de novo* or arbitrary and capricious review standards a court is not permitted to consider evidence not presented to the plan administrator whose decision is subject to judicial review, [citations omitted], plan trustees have "an affirmative duty to seek expert advice when required" [citations omitted]. In a case where the plan administrator is shown to operate under a conflict of interest, . . . the conflict becomes a factor to be considered by the court under the arbitrary and capricious standard of review [citation omitted]. If the court finds the administrator's decision was in fact influenced by the conflict, the standard of review become *de novo* notwithstanding the apparent reasonableness of the decision. *Sullivan v. LTV Aerospace & Defense Co.*, 82 F.3d 51, 1259 (2nd Cir. 1996).

193 FRD at 101-102.

Even in the event that a deferential standard were ultimately deemed appropriate, plaintiffs would be entitled to discovery on the clearly-defined issues under that standard. As the court in *Nagele v. Electronic Data Systems Corp.*, 193 FRD 94 (WDNY 2000), stated:

> [R]eview under this deferential standard does not displace using pretrial discovery to determine the actual parameters of the administrative record and whether or not the fiduciary acted arbitrarily and capriciously with respect to a claim for benefits under a plan . . . .

193 FRD at 103.

The *Nagele* court listed a number of issues on which discovery should be permitted, including the following:

- issues indicating the lack of reasonableness of a decision;
- issues regarding "whether the administrative claim record before the court is accurate and complete and to explain, where necessary, its meaning;"
- issues regarding "whether information upon which the decision makers relied is accurately and completely reflected in the administrative record;" and
- discovery "to assure the completeness of the administrative record."

193 at FRD 107.

The *Nagele* court provided a well-reasoned application of the rules of discovery to ERISA cases:

> [A]s the arbitrary and capricious standard requires courts to scrutinize, although deferentially, decisions by plan fiduciaries for lack of reasonableness, including the absence of substantial evidence, such deficiencies in the administrative review function can be significantly eliminated through the reasonable exercise of standard discovery devices available in federal civil practice. As the facts developed in *Miller v. United Welfare Fund*, 72 F.3d 1066 (2nd Cir. 1995), through discovery revealed basic deficiencies in the quality of the information before the trustees and a concomitant lack of meaningful consideration, the mandate of ERISA that denials of claims by plan fiduciaries be reviewed by federal courts could not have been carried out effectively without benefit of such discovery. Indeed, as the *Miller* case demonstrates, in litigation involving denials of claims under ERISA covered plans, as with other matters, one can be harmed by what one does not know. Except for the discovery which took place in the case, it is doubtful that "the record" could have revealed fully such fiduciary default. [Citations with examples omitted].

193 FRD at 104.

The parties and the Court have recognized, in principle, plaintiffs' rights to discovery in this action with respect to specific issues. In the Stipulation and Order of Reference, the parties stipulated that discovery would be permitted on plaintiffs' first and second claims for denial of benefits, 29 U.S.C. § 1132(a)(1)(B):

> Discovery shall be permitted on issues raised by Plaintiffs' First and Second Claims for Relief only to the following extent: to determine the administrative record and all materials necessary to explain the

> record which was available to the plan administrators; to determine any conflict of interest in the review process and the potential impact of said conflicts upon the review process; and to determine the appropriate standards of review . . . .

*Stipulation & Order of Reference, filed November 6, 2002, ¶ 1.* The parties also agreed that "[d]iscovery also shall be permitted on issues raised by Plaintiffs' Third and Fourth Claims for Relief," under 29 U.S.C. § 1132(a)(3) for defendants' violations of 29 U.S.C. § 1133 (third claim), and breach of fiduciary duty (fourth claim). *Id., ¶ 2.*

The discovery at issue in this motion, as set forth below, is relevant or calculated to lead to evidence relevant to the above issues.

    **B.**    **Specific Discovery At Issue**

        **1.**    **Evidence concerning other claimants.**

While the parties have discussed alternative ways of protecting the confidentiality of other claimants, the defendants have apparently taken an inflexible position that they will provide no information whatsoever concerning the claims of other claimants. This evidence is at issue in the following discovery requests:

    (a)    Plaintiffs' discovery requests I, 1(c);

    (b)    Plaintiffs' discovery requests II, RPD 6-7, 14-15, 29, 31-32, 55-60, 67;

    (c)    Plaintiffs' discovery requests III, interrogatory 4, and RPD 18.; and

    (d)    Plaintiffs' discovery requests IV, RPD 1-3.

The above evidence is crucial to plaintiffs' claims for several reasons. First, plaintiffs contend that the evidence would support their position that Champion provided a *rubber-stamp* process which was based on a blatant conflict of interest of Champion and CORE. Specifically, Champion, as the self-funder of its plans, had an incentive, as plaintiffs have alleged, to terminate plaintiffs' and other claimants' benefits. CORE, based on its relationship with Champion, had the identical incentive. In other words, CORE succeeded when it terminated benefits and saved costs. While the scope of its benefit has not been determined since plaintiffs have been denied discovery of CORE, it is at least clear that CORE considered its "savings" for Champion as the predominant

measure of success.[7]

Second, the evidence is critical in establishing whether Champion had any independent review process, as required by ERISA. As stated above, the CRC did not investigate claims; it simply reviewed information provided by CORE. If the CRC ultimately agreed with CORE a high percentage of the time as to all claims or as to claims of a certain nature involving particular types disabilities; it certainly fuels plaintiffs' contention that there was no truly independent review process, as required by ERISA; it was simply a *rubber-stamp* process. If this inference is established, it supports *de novo* review. *Sullivan v. LTV Aerospace & Def. Co.*, 82 F.3d 1251 (2nd Cir. 1996;. *Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46 (2nd Cir. 1996); *Booth v. WalMart*, 201 F.3d 335 (4th Cir. 2000).

Along with defendants' refusal to respond to some of plaintiffs' discovery requests, defendants have redacted documents which they produced to exclude certain information. Defendants have also provided a log of the redactions. The redactions at issue in this motion involve information concerning other claimants.

Plaintiffs, through counsel, have offered to take measures to protect the privacy of other claimants by restricting the disclosure of such information to limited persons, or by using some numerical code in place of the other claimants' name to protect their anonymity. Defendants have been unwilling to consider any such protections, and have instead taken an apparently inflexible position that neither the claimants' names nor any information concerning their claim is discoverable in this action. For the reasons stated above, the plaintiffs are not only entitled to this information (under appropriate protections), but are in need of such information in order to provide additional evidence bearing on the standard of review to be applied by the Court.

The specific discovery requests at issue under this argument are provided, along with plaintiffs' contentions, in Attachments A-C.

### 2. Other Discovery Not Produced

---

[7]CORE's savings analyses have been provided in some of the plaintiffs' administrative files. It is unclear why the "savings" were relevant other than as a measure of performance, and perhaps, as a basis for additional compensation. Certainly, this inference arises from the evidence. *See, Plaintiffs' Suppl. Resp. re CORE, Exhibit 2B*.

Defendants have objected to a number of other requests, based on grounds that the information requested is not relevant to the issues presented in plaintiffs' claims, or that it would be unduly burdensome for defendants to respond. Plaintiffs have responded specifically to defendants' objections in the attachment to this memorandum. *See Attachments A-C.* In short, all of the information requested is relevant or calculated to lead to evidence relevant to the issues in this action; and defendants have not shown any undue burden which would justify their depriving plaintiffs of the information requested.

Accordingly, plaintiffs are entitled to the information and documents requested, as itemized in their motion and in Attachments A-C. *Naegele v. Electronic Data Systems Corp.*, 193 FRD 94 (WDNY 2000); *Zervos v. Verizon New York, Inc.,* 277 F.3d 635 (2nd Cir. 2002); *Miller v. United Welfare Fund*, 72 F.3d 1066, 1070 (2nd Cir. 1995). Defendants should be compelled to respond, and produce the information and documents requested.

## CONCLUSION

For the reasons set forth above, plaintiffs request that this Court compel defendants to supplement their responses to provide the above information and documents without delay. Plaintiffs further request that the Court order the payment of plaintiff's costs, including reasonable attorneys' fees, pursuant to Rule 37 of the Federal Rules of Civil Procedure.

This the 12th day of February, 2004.

                    THE PLAINTIFFS
                    HARRY L. SMITH, ET AL

BY:_____
     ROBERT M. ELLIOT, ESQ.
     Elliot Pishko Morgan, P.A.
     426 Old Salem Road
     Winston-Salem, NC 27101
     Tel (336) 724-2828
     Fax (336) 724-3335
     E-mail rmelliot@epmlaw.com


     WILLIAM B. BARNES, ESQ. (CT0268)
     Rosenstein & Barnes
     1100 Kings Hwy. East
     P.O. Box 687
     Fairfield, CT 06432
     Tel (203) 367-7922
     Fax (203) 367-8110
     E-mail wbarnes@rosenbar.com


     RICHARD B. HARPER, ESQ.
     Harper Law Office
     Post Office Box 395
     Sylva, NC 28779
     Tel (828) 586-3305
     Fax (828) 586-4795
     E-mail rbharper@dnet.net

## CERTIFICATE OF SERVICE

I certify that a copy of the Brief in Support of Plaintiffs' Second Motion to Compel Discovery was sent by first-class mail, postage prepaid, on February 12, 2004.

**ADDRESSEES:**

Bruce M. Steen, Esq.
McGuire Woods
Bank of America Corporate Center
100 North Tryon St., Suite 2900
Charlotte, NC 28202

Barry J. Waters, Esq.
Murtha Cullina, LLP
Whitney Grove Sq.,
Two Whitney Ave.,
P.O. Box 704
New Haven, CT 06503-0704

 

                                                                                                                                                                         _____

                                                                  ROBERT M. ELLIOT