IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HARRY L. SMITH, LOIS L. LYNN, | ) | |
| DARRELL KEITH HILL, ELIZABETH | ) | |
| CASE BOONE, WILEY H. HAYNES, | ) | |
| ROSA LEE BROOKSHIRE, HARRISON | ) | CIVIL ACTION NUMBER |
| YOUNG CLARK, FRANZISKA FINNEY, | ) | 302CV00212 (GLG) |
| JUDITH CASE KIRKPATRICK, WILSON | ) | |
| DANIEL McCLURE, CELIA DARLENE | ) | |
| METCALF, CHARLES R. REECE, | ) | |
| DOLPHUS LUTHER TREADWAY, JR., | ) | |
| and MARTHA BURNETTE WHITLEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHAMPION INTERNATIONAL | ) | |
| CORPORATION, LONG TERM | ) | |
| DISABLITY BENEFITS PLAN FOR | ) | |
| SALARIED EMPLOYEES OF | ) | |
| CHAMPION INTERNATIONAL | ) | |
| CORPORATION #506, LONG TERM | ) | |
| DISABILITY BENEFITS PLAN FOR | ) | |
| CERTAIN HOURLY EMPLOYEES OF | ) | |
| CHAMPION INTERNATIONAL | ) | |
| CORPORATION #703; INTERNATIONAL | ) | |
| PAPER COMPANY; and CORE, INC. | ) | |
| | ) | |
| Defendants. | ) | March 3, 2004 |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' SECOND MOTION TO COMPEL DISCOVERY**

Defendants Champion International Corporation ("Champion International"), Long

Term Disability Benefits Plan for Salaried Employees of Champion International Corporation

#506 ("LTD Plan #506"), Long Term Disability Plan for Certain Hourly Employees of

Champion International Corporation #703 ("LTD Plan #703")(collectively referred to as the "LTD Plans" or the "Champion LTD Plans"), and International Paper Company ("International Paper"), by counsel, state as follows in opposition to Plaintiffs' Second Motion to Compel Discovery (Dkt. Entry 70):

## Statement of the Case

Fourteen former Champion International employees from North Carolina seek disability benefits pursuant to the Champion LTD Plans; both of which are employee welfare benefit plans within the meaning of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§1001, et seq. ("ERISA").  See Complaint, ¶¶6-7 (Dkt. Entry 1) & Answer of Defendants Champion International, LTD Plan #506, LTD Plan #703 and International Paper (hereinafter "Answer"), ¶¶6-7 (Dkt. Entry 10).  The LTD Plans provide income benefits to eligible employees who are prevented from engaging in employment as a result of "Total Disability" as defined in the LTD Plans.  See Answer, ¶11 (Dkt Entry 10).

Plaintiffs allege that they received disability benefits pursuant to the LTD Plans at various times in the 1980s and 1990s, and that the LTD Plans improperly re-evaluated and terminated each of their disability benefits.  See, e.g., Complaint, ¶39 (Dkt. Entry 1).  Plaintiffs contend that Champion International and CORE, Inc. (a third-party vendor retained by Champion International to assist in claim administration) "instituted a re-examination of all disabled participants who were receiving LTD benefits for the purpose of denying and terminating their rights to benefits."  See Complaint, ¶19 (Dkt. Entry 1).  Plaintiffs assert that defendants were operating under a conflict of interest in the administration of long term disability claims.  See Complaint, ¶27 (Dkt. Entry 1).

Plaintiffs now seek judicial review of the Plan Administrator's decisions denying their claims for disability benefits.  Plaintiffs demand, inter alia, "LTD benefits pursuant to the [LTD Plans] for the period of his or her disability, and continuing thereafter."  See Complaint, ¶253 & ¶¶252-57 (Dkt. Entry 1).

## Argument

I.     The Discovery Rules on Which Plaintiffs Rely Confirm that the Discovery They Now Demand Exceeds the Scope of Permissible Discovery in an ERISA Benefits Action.

Plaintiffs correctly acknowledge that, regardless of the applicable standard of review, "a court is not permitted to consider evidence not presented to the plan administrator whose decision is subject to judicial review . . . ."  See Brief in Support of Plaintiffs' Second Motion to Compel Discovery, p. 7 (Dkt. Entry 71), citing, Nagele v. Electronic Data Systems Corp., 193 F.R.D. 94, 101-02 (W.D.N.Y. 2000).  Plaintiffs correctly note that discovery in an ERISA benefits action generally "is permissible in determining the facts relevant to the appropriate standard of review, and whether there was a 'full and fair review' under the appropriate standard of review."  Id. at 6, citing, Nagele, 193 F.R.D. at 94.  Plaintiffs are correct that, as a result, plaintiffs in an ERISA benefits action are entitled to discover the evidence on which the decisionmaker relied, and to review whether there exist "basic deficiencies in the quality of the information before the trustees and a concomitant lack of meaningful consideration . . . ."  See Nagele, 193 F.R.D. at 101-02 & 104.

However, none of the discovery plaintiffs now seek – in particular the claims files from the many hundreds of LTD claimants not party to this action – has any relevance to any of the foregoing issues.  None of plaintiffs' discovery requests will help define the administrative record; none of plaintiffs' discovery requests will assist the Court in determining whether the

LTD Plans conducted a "full and fair" or otherwise meaningful review of any of plaintiffs' individual claims; and, as demonstrated below, none of the information plaintiffs seek in their discovery requests would support plaintiffs' assertion that the LTD Plans were motivated to improperly deny LTD benefits or operated pursuant to a conflict of interest; particularly when weighed against the undue burden plaintiffs seek to impose on defendants and the many hundreds of LTD claimants not party to this action.

Indeed, to state these general rules of discovery in an ERISA benefits action underscores why plaintiffs are not entitled to the additional discovery they now seek. Defendants have produced more than 8,000 pages of documents comprising the fourteen administrative records at issue here. Defendants have produced thousands of pages of documents comprising the deliberations of the LTD Plans' Claims Review Committee; the LTD Plans' final decisionmaker. Defendants have produced voluminous documents regarding the LTD Plans' relationship with CORE. Plaintiffs have deposed several members of the Claims Review Committee. Plaintiffs have deposed two of the Champion International employees principally responsible for interacting with CORE during CORE's tenure as the LTD Plans' third-party claims administrator. Plaintiffs have conducted a thorough and lengthy Fed. R. Civ. P. 30(b)(6) deposition of Champion International.[1] In short, plaintiffs already have conducted an extraordinary amount of discovery in a case that plaintiffs acknowledge

---

[1]Contrary to plaintiffs' assertion, Champion International is not a subsidiary of International Paper Company. See Brief in Support of Plaintiffs' Second Motion to Compel Discovery, p. 4 & n.5 (Dkt. Entry 71). Champion International was acquired by and merged into International Paper Company in December, 2000, and thereafter ceased to exist. See Answer, ¶5 (Dkt. Entry 10).

must be decided on the existing administrative record.  They cannot justify the additional discovery they now seek.

II.     <u>Plaintiffs are not Entitled to Evidence Regarding Other LTD Claimants</u>.

The large majority of the contested discovery requests at issue in plaintiffs' Second Motion to Compel relate to plaintiffs' repeated demands for information regarding the many hundreds of LTD claimants other than the fourteen plaintiffs in this action.  According to plaintiffs, evidence regarding other claimants "is crucial to plaintiffs' claims for several reasons."  See Brief in Support of Plaintiffs' Second Motion to Compel Discovery, p. 9 (Dkt. Entry 71).  However, as defendants demonstrated in response to plaintiffs' first Motion to Compel, information, files and documents regarding LTD claimants other than the fourteen plaintiffs at issue here are beyond the scope of permissible discovery, and to gather, review and produce those materials would impose an undue burden on defendants.  See Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel, p. 4-10 (Dkt. Entry 46).  The arguments plaintiffs now advance in support of their Second Motion to Compel are similarly unavailing.

A.     <u>Alleged *Rubber Stamp* & Conflict of Interest</u>

Plaintiffs contend that they are entitled to evidence regarding other claimants because it would somehow establish

> "that Champion provided a *rubber-stamp* process which was based on a blatant conflict of interest of Champion and CORE.  Specifically, Champion, as the self-funder of its plans, had an incentive, as plaintiffs have alleged, to terminate plaintiffs' and other claimants' benefits.  CORE, based on its relationship with Champion, had the identical incentive.  In other words, CORE succeeded when it terminated benefits and saved costs."

See Brief in Support of Plaintiffs' Second Motion to Compel Discovery, p. 9 (Dkt. Entry 71).

Plaintiffs' contentions are without merit.

As an initial matter, plaintiffs' argument that they are entitled to other claimants' files does not logically follow from their asserted premises. Even if, as plaintiffs assert, the present record did reveal that Champion merely provided a "rubber-stamp process" based on CORE's review of LTD claims, discovery of other claimants' files neither bolsters nor dilutes that argument and, therefore, has no probative value. Even if plaintiffs are correct, the "evidence" they seek would be merely cumulative of the existing discovery record, and the "need" for this cumulative evidence is outweighed by the privacy concerns of the many hundreds of other claimants and the undue burden plaintiffs' discovery requests would impose on defendants. See Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel, p. 9-10 (Dkt. Entry 46).

But, the Court need not take plaintiffs' arguments at face value for they are based on faulty premises. For example, in asserting "that Champion provided a *rubber-stamp* process," plaintiffs ignore the voluminous deposition testimony and other evidence regarding the role of the LTD Plans' Claims Review Committee. Contrary to plaintiffs' assertion, the evidence concerning the role and activities of the Claims Review Committee is not "vague" and there is no "void" in the record regarding the role of the Claims Review Committee. See Brief in Support of Plaintiffs' Second Motion to Compel Discovery, p. 5 (Dkt. Entry 71).

Rather, the record illustrates in some detail that the Claims Review Committee, not CORE, made the final determination regarding whether an LTD claimant met the Plans' disability definition and, therefore, was entitled to benefits. The members of that Committee

met on a regular basis to discuss LTD claims and to make claims determinations.  Each member of the Committee received and reviewed "very thick" binders regarding each LTD claim to be reviewed.  As one of the individuals responsible for putting these notebooks together testified, CORE sent the "entire file" to the Committee for its review of LTD claims.  See Exhibit A (Rodriquez Deposition, p. 67-71).  See generally Defendants' Response to Plaintiffs' Supplemental Memorandum in Opposition to Motion of CORE, Inc., etc., p. 4-6 (Dkt. Entry 68).

The Committee members were instructed "to review that information, take and make notes as best we could, and come prepared to thoroughly discuss each one of those cases in detail."  See Exhibit B (Lewis Deposition, p. 23).  The purpose of the Committee meeting was "[t]o review claims on the part of individuals and to make a fair and accurate decision as to whether or not that claim should be upheld or denied," see Exhibit B (Lewis Deposition, p. 40-41); and, it was not unusual for the Claims Review Committee to reject CORE's recommendation and overturn an initial claims denial.  See *infra* at 13-14 & n.6.[2]

Plaintiffs' unsupported assertion that "CORE succeeded when it terminated benefits and saved costs," see Brief in Support of Plaintiffs' Second Motion to Compel Discovery, p. 9 (Dkt. Entry 71), is similarly flawed.  ***Every*** witness plaintiffs have deposed in this case testified that the cost of benefits was ***never*** a consideration in the decision to grant or deny a long term disability claim.  See Defendants' Response to Plaintiffs' Supplemental Memorandum in Opposition to Motion of CORE, Inc., etc., p. 7-8 (Dkt. Entry 68).

---

[2]For a more complete description of the activities of the Claims Review Committee, see Defendants' Response to Plaintiffs' Supplemental Memorandum in Opposition to Motion of CORE, Inc., etc, p. 4-6 (Dkt. Entry 68).

Champion's Director of Benefits Administration and Integrated Personnel Systems testified that CORE was compensated based on performance standards which were unrelated to the granting or denial of benefits. See Exhibit C (Lehman Deposition, p. 204-06 & Exhibit 5 thereto).[3] Therefore, plaintiffs' assertion that "CORE succeeded when it terminated benefits and saved costs" finds no support in the record and does not support their demand for additional discovery.

Finally, plaintiffs' argument that a conflict of interest exists because CORE tracked "savings" as its "predominant measure of success," see Brief in Support of Plaintiffs' Second Motion to Compel Discovery, p. 9 (Dkt. Entry 71), is not supported by the record and does not justify plaintiffs' demand for additional discovery. First, defendants already have documented plaintiffs' exaggeration of the frequency and significance of these alleged "savings." See Defendants' Response to Plaintiffs' Supplemental Memorandum in Opposition to Motion of CORE, Inc., etc., p. 9 (Dkt. Entry 68). Second, plaintiffs' argument is a non-sequitur. Even if plaintiffs are correct that defendants had a conflict of interest because the LTD Plans are self-funded, whether CORE tracked "savings" is irrelevant. The issue remains whether a potential conflict of interest "affected the reasonableness of the [Plan's] decision" in any particular case. See Whitney v. Empire Blue Cross and Blue Shield, 106 F.3d 475, 477 (2nd Cir. 1997). This

---

[3]As plaintiffs learned in discovery, CORE charged fees "on a time and materials or per case basis." See Exhibit C (Exhibit 5 to the Lehman Deposition). CORE was eligible to receive "performance incentives," but, contrary to plaintiffs' assertion, CORE's incentive payments were not based on cost savings arising from benefits denials. Rather, CORE's incentive payments were based on service measures such as the "time it takes [CORE] to initiate cases, how long it takes [CORE] to make a determination" and "how long it takes them to follow up on calls and timely reporting." See Exhibit C (Lehman Deposition, p. 205 discussing Exhibit 5 thereto).

inquiry focuses on the claims in question, id., not the claims of the many hundreds of claimants not party to this action.

B.     "Independent" Review Process

Plaintiffs also assert that evidence regarding other claimants "is critical in establishing whether Champion had any *independent* review process, as required by ERISA."  According to plaintiffs, the Claims Review Committee

> "did not investigate claims; it simply reviewed information provided by CORE.  If the [Claims Review Committee] ultimately agreed with CORE a high percentage of the time as to all claims or as to claims of a certain nature involving certain types of disabilities; it certainly fuels plaintiffs' contention that there was no truly independent review process, as required by ERISA; it was simply a *rubber-stamp* process."

See Brief in Support of Plaintiffs' Second Motion to Compel Discovery, p. 10 (Dkt. Entry 71). This argument, however, would make the proverbial red herring blush.

First, nothing in ERISA requires an "independent" review process as defined by plaintiffs.  Rather, ERISA requires a benefits plan to conduct a "full and fair" review of a participant's claim for benefits, see 29 U.S.C. §1133(2), and it is beyond peradventure that an ERISA benefits plan is permitted to hire a third-party administrator such as CORE to assist in that process.  See Miller v. United Welfare Fund, 72 F.3d 1066 (2nd Cir. 1995).  Indeed, an ERISA benefits plan has "an affirmative duty to seek expert advice when required."  Id. at 1073, citing, Donovan v. Bierwirth, 680 F.2d 263, 272-73 (2nd Cir. 1982).  Therefore, contrary to plaintiffs' view, an ERISA benefits plan is entitled to rely on the medical records and claim information gathered on the plans' behalf by the third party administrator, and the plan is entitled to rely on the opinions of the internal and outside medical and vocational experts who provide opinions to the claims administrator and thus the LTD Plans.  See Billinger v. Bell

Atlantic, 240 F. Supp. 2d 274 (S.D.N.Y. 2003); Hall v. Bell Atlantic Corp., 152 F. Supp. 2d 543 (D. Del. 2001).

On plaintiffs' logic, the Claims Review Committee was not entitled to rely on the voluminous medical information and opinions gathered on the LTD Plans' behalf by CORE; the Committee somehow was required to retain additional experts and conduct some "independent" investigation of each participant's claim.[4]  Plaintiffs offer no judicial or logical support for this novel view of the ERISA claims administration process.

Second, plaintiffs again misstate the record when they assert that "Champion employees have not provided any independent information as to the number of claims which they ultimately decided in favor of claimants in reversal of CORE's earlier decisions."  See Brief in Support of Plaintiffs' Second Motion to Compel Discovery, p. 5 (Dkt. Entry 71).  As discussed more fully below, defendants have produced minutes from the Claims Review Committee and Pension and Employee Benefits Committee which illustrate that it was not unusual for the Claims Review Committee to reject CORE's recommendation and overturn an initial claims denial.  See *infra* at 13-14 & n. 6.

As demonstrated by the foregoing, plaintiffs' arguments that they are entitled to information regarding other LTD claimants do not logically flow from their asserted premises. In addition, plaintiffs never address the undue burden which their demand for information

---

[4]For example plaintiffs apparently were astonished to learn that the LTD Plans and the Claims Review Committee "generally received its information from CORE" and that the Committee "had no access to medical or vocational expertise" outside of the information provided by the participants, CORE, and the internal and outside physicians and health care and vocational practitioners who provided opinions to CORE and thus the LTD Plans.  See Brief in Support of Plaintiffs' Second Motion to Compel Discovery, p. 5 (Dkt. Entry 71).  This

regarding other claimants would impose on defendants.  Plaintiffs' "offer[] to take measures to

protect the privacy of other claimants," therefore, is irrelevant.[5]  Defendants respectfully

submit that plaintiffs' demand for information regarding the many hundreds of LTD claimants

not party to this action should be denied.

III.     Plaintiffs' Arguments Regarding their Individual Discovery Requests are Without

Merit.

        A.     Plaintiffs' Second Set of Interrogatories & Requests for Production

Document Requests 4 & 5

**Plaintiffs' Discovery Requests:**

    4.     Documents sufficient to show the funds paid out each month by the

Company between Jan. 1, 1995 and the present under the LTD Plan for Salaried

Employees.

    5.     Documents sufficient to show the funds paid out each month by The

Company between Jan. 1, 1995 and the present under the LTD Plan for Hourly

Employees.

**Defendants' Response:**  Defendants do not have in their possession any documents or

databases which show in any readily accessible form the funds paid out each month by the

LTD Plans.  See Exhibit D (Bleck Affidavit, ¶6).  Plaintiffs assert that "[d]efendants should

---

is precisely how the ERISA plan/third party administrator relationship is designed to work.
See Billinger, 240 F. Supp. 2d at 274.
    [5]Moreover, defendants are justifiably skeptical of plaintiffs' offer to protect the privacy
of the many hundreds of LTD claimants not party to this action.  Since October 24, 2003,
plaintiffs' counsel have been promising to sign and return to defendants' counsel a sketch
Consent Protective Order protecting certain documents produced by defendants.  To date,

have some documentation showing amounts paid on claims for the years in question."  See

Brief in Support of Plaintiffs' Motion to Compel Discovery, Attachment A, p. i (Dkt. Entry

71).  Plaintiffs fail to acknowledge, however, that defendants already have produced to them

actuarial valuations for calendar years 1995, 1996, 1997, 1998 and 1999 which identify the

number of LTD claimants and the anticipated cost of LTD benefit payments during the

respective reporting periods.  See Exhibit E (Lehman Affidavit, ¶¶5-6).

      Defendants acknowledge that they have archive data sets which ***may*** contain

information regarding monthly LTD payments.  But, to create documents as requested by

plaintiffs would cost approximately $10,000, see Exhibit D (Bleck Affidavit, ¶¶7-9), and

plaintiffs have failed to offer any persuasive reason why defendants should be compelled to

incur such a cost.

      Plaintiffs contend that defendants should be ordered to produce such documents

because they "would tend to prove plaintiffs' allegations that defendants Champion and its

Plans were motivated to terminate benefits of long-time disabled employees of Champion in

order to reduce their disability costs."  See Brief in Support of Plaintiffs' Second Motion to

Compel Discovery, Attachment A, p. i (Dkt. Entry 71).  Plaintiffs, however, fail to offer any

explanation regarding why the documents they have requested would tend to show any such

motivation or conflict of interest; and certainly have not offered any explanation sufficient to

overcome the undue burden which their requests would impose on defendants.  This is

particularly true given the fact that defendants already have produced information regarding

---

however, despite multiple reminders by defendants' counsel, plaintiffs' counsel have failed to
do so.

the number of LTD claimants and the annual benefit costs during the time period in question.

See Exhibit E (Lehman Affidavit, ¶¶5-6).

<u>Document Requests 6 & 7</u>

**Plaintiffs' Discovery Requests:**

       6.      Documents sufficient to provide the following information about every person who between Jan. 1, 1995 and the present applied for benefits under the LTD Plan for Salaried Employees: (a) full name; (b) title while at Champion; (c) last known home address; (d) last known work address; (e) date of birth; (f) Social Security number; (g) date claim was made; (h) nature of disability claimed; (i) initial disposition of claim by Champion Plan Supervisor; (j) disposition of review, if requested; and (k) amounts paid to said person from January 1, 1995 to the present.

       7.      Documents sufficient to provide the following information about every person who between Jan. 1, 1995 and the present applied for benefits under the LTD Plan for Hourly Employees: (a) full name; (b) title while at Champion; (c) last known home address; (d) last known work address; (e) date of birth; (f) Social Security number; (g) date claim was made; (h) nature of disability claimed; (i) disposition of claim by Champion Plan Supervisor; (j) benefits received, if any; (k) dates, inclusive, when such benefits were received; (l) disposition of review of decision of Plan Supervisor, if requested; and (m) amounts paid to said person from January 1, 1995 to the present.

**Defendants' Response:**  Plaintiffs seek in these discovery requests documents and claims files regarding the many hundreds of LTD claimants other than plaintiffs in this action.

These claims files, however, are beyond the scope of permissible discovery. See *supra* at 4-10 & Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel, p. 4-10 (Dkt. Entry 46). Plaintiffs have offered no explanation regarding why the documents they have requested would tend to show that the LTD Plans were motivated to improperly deny LTD benefits or operated pursuant to a conflict of interest; and certainly have not offered any explanation sufficient to overcome the privacy interests of the hundreds of LTD claimants at issue or the undue burden which their requests would impose on defendants. Id.

Document Requests 14 & 15

**Plaintiffs' Discovery Requests:**

14.     All documents comprising or concerning the minutes of meetings between Jan. 1, 1995 and Jan. 1, 2001 of the Pension Employee Benefits Committee, as that term appears in the LTD Plan for Hourly Employees of the Company, including without limitation draft minutes, final approved minutes, resolutions, correspondence made part of the minutes, and the like.

15.     All documents comprising or concerning the minutes of meetings between Jan. 1, 1995 and Jan. 1, 2001 of the Pension Employee Benefits Committee of the Company, as that term appears in the LTD Plan for Salaried Employees, including without limitation draft minutes, final approved minutes, resolutions, correspondence made part of the minutes, and the like.

**Defendants' Response:** In response to these discovery requests, defendants have produced nine notebooks and 2,802 pages of minutes and related documents from the Pension and Employee Benefits Committee ("PEBC") and six notebooks and 2,943 pages of minutes

14

and related documents from the Claims Review Committee ("CRC").  Defendants have

redacted from those minutes the names of other plan participants; defendants produced,

however, the information regarding the Committees' deliberations regarding those participants'

benefits claims.

Plaintiffs have made no proffer to support their assertion that the production of those

claimants' names somehow "would tend to prove defendants' pattern and practice of

terminating claims of disabled employees pursuant to improper motives . . . ."  See Brief in

Support of Plaintiffs' Second Motion to Compel Discovery, Attachment A, p. iii (Dkt. Entry

71).  Indeed, the 5,700 pages of committee minutes and related documents produced by

defendants illustrate that it was not unusual at all for the Claims Review Committee to

disagree with CORE's recommendation and overturn a claims denial.  See Exhibit F.[6]

<u>Document Requests 20, 21 & 22</u>

**Plaintiffs' Discovery Requests:**

20.     All documents concerning reports, reviews, analyses and the like

generated by Champion employees between Jan. 1, 1995 and Jan. 1, 2001, concerning

the actual and/or anticipated cost to Champion of present and/or former Champion

employees out on disability.

---

[6]Minutes of the Pension and Employee Benefits Committee and the Claims Review
Committee are collectively appended hereto as Exhibit F (PEBC – 0274R (CRC overturned
the initial claims denial in 3 of 3 cases); PEBC – 0418R & 0419R (CRC overturned the initial
claims denial in 3 of 6 cases); PEBC 1949R through 1952R (CRC overturned the initial claims
denial in 2 of 10 cases, and tabled its decision in a third claim pending the receipt of additional
information); PEBC – 2297R through 2300R (CRC overturned the initial claims denial in 5 of
21 cases); PEBC – 2402R through 2408R (CRC overturned the initial claims denial in 3 of 31
cases)).

21.     All documents concerning reports, reviews, analyses and the like generated by third parties, including but not limited to consultants, between Jan. 1, 1995 and Jan. 1, 2001, concerning the actual and/or anticipated cost to Champion of present and/or former Champion employees out on disability.

22.     All documents concerning reports, reviews, analyses and the like generated by CORE, between Jan. 1, 1995 and Jan. 1, 2001, concerning the actual and/or anticipated cost to Champion of present and/or former Champion employees out on disability.

**Defendants' Response:**  With one exception, defendants have produced to plaintiffs all documents in their possession which are responsive to these document requests.  More specifically, defendants have produced to plaintiffs valuations which were prepared by Champion International's actuary, Hewitt Associates.  Those valuations identify the number of LTD claimants and the anticipated cost of LTD benefit payments for calendar years 1995, 1996, 1997, 1998 and 1999.  See Exhibit E (Lehman Affidavit, ¶¶5-6).  Ironically, rather than some conspiracy by Champion and CORE to reduce LTD benefits, these documents illustrate that the number of participants receiving LTD benefits and the total cost of benefits actually increased during this five year period.

Plaintiffs are correct that defendants have not produced a table they received from Hewitt Associates which contains the data Hewitt used to calculate the 1999 valuation.  This table contains the names, social security numbers and monthly benefit payments of the 604 participants receiving LTD benefits at that time, and is the only data set in the possession of either Hewitt or defendants.  See Exhibit E (Lehman Affidavit, ¶7).  Plaintiffs have failed to

proffer any argument as to why the data on this table is probative of any issue in dispute in this matter, particularly given the fact that defendants have produced annual data for the five-year period requested by plaintiffs.

Document Requests 23, 24, 25, 26, 27, 28, 29, 31, 32, 50 & 51

**Plaintiffs' Discovery Requests:**

       23.     All documents concerning reports, reviews, analyses and the like generated by Champion employees between Jan. 1, 1995 and Jan. 1, 2001, concerning the savings and other benefits to Champion which could be realized by review of the status of present and/or former Champion employees out on disability.

       24.     All documents concerning reports, reviews, analyses and the like generated by third parties, including but not limited to consultants, between Jan. 1, 1995 and Jan. 1, 2001, concerning the savings and other benefits to Champion which could be realized by review of the status of present and/or former Champion employees out on disability.

       25.     All documents concerning reports, reviews, analyses and the like generated by CORE, between Jan. 1, 1995 and Jan. 1, 2001, concerning the savings and other benefits to Champion which could be realized by review of the status of present and/or former Champion employees out on disability.

       26.     All documents concerning reports, reviews, analyses and the like generated by Champion employees between Jan. 1, 1995 and Jan. 1, 2001, concerning the savings and other benefits to Champion which were in fact realized by review of the status of present and/or former Champion employees out on disability.

17

27.    All documents concerning reports, reviews, analyses and the like generated by third parties, including but not limited to consultants, between Jan. 1, 1995 and Jan. 1, 2001, concerning the savings and other benefits to Champion which were in fact realized by review of the status of present and/or former Champion employees out on disability.

28.    All documents concerning reports, reviews, analyses and the like generated by CORE, between Jan. 1, 1995 and Jan. 1, 2001, concerning the savings and other benefits to Champion which were in fact realized by review of the status of present and/or former Champion employees out on disability.

29.    All documents concerning reports, reviews, analyses and the like generated by Champion employees between Jan. 1, 1995 and Jan. 1, 2001, concerning denials of disability status to present and/or former Champion employees out on disability.

31.    All documents concerning or comprising reports, reviews, analyses and the like generated by third parties, including but not limited to consultants,

between Jan. 1, 1995 and Jan. 1, 2001, concerning denials of disability status to present and/or former Champion employees out on disability.

32.    All documents concerning or comprising reports, reviews, analyses and the like generated by CORE, between Jan. 1, 1995 and Jan. 1, 2001, concerning denials of disability status of present and/or former Champion employees out on disability.

50.     All documents supplied to Champion and/or the Plans or either of them concerning the savings to Champion which had been, were being or could be realized as a result of CORE's work.

51.     All documents generated by Champion and/or the Plans or either of them concerning the savings to Champion which had been, were being or could be realized as a result of CORE's work.

**Defendants' Response:**  Plaintiffs seek in these discovery requests documents and claims files regarding the many hundreds of LTD claimants other than plaintiffs in this action. Defendants have not reviewed or produced those claims files.  Those documents are beyond the scope of permissible discovery and to review and produce those documents would impose an undue burden on defendants.  See Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel, p. 4-10 (Dkt. Entry 46).  With that caveat, defendants have informed plaintiffs that, other than the documents already produced by defendants, no other documents exist which are responsive to these document requests.

<u>Document Requests 55, 56, 57, 58, 59 & 60</u>

**Plaintiffs' Discovery Requests:**

55.     Documents sufficient to show the number of claims presented each month between Jan. 1, 1995 and Jan. 1, 2001, to the LTD Plan for Hourly Employees.

56.     Documents sufficient to show the number of claims accepted each month between Jan. 1, 1995 and Jan. 1, 2001, by the LTD Plan for Hourly Employees.

57.     Documents sufficient to show the number of claims denied each month between Jan. 1, 1995 and Jan. 1, 2001, by the LTD Plan for Hourly Employees.

58.     Documents sufficient to show the number of claims presented each month between Jan. 1, 1995 and Jan. 1, 2001, to the LTD Plan for Salaried Employees.

59.     Documents sufficient to show the number of claims accepted each month between Jan. 1, 1995 and Jan. 1, 2001, by the LTD Plan for Salaried Employees.

60.     Documents sufficient to show the number of claims denied each month between Jan. 1, 1995 and Jan. 1, 2001, by the LTD Plan for Salaried Employees.

**Defendants' Response:**  Plaintiffs seek in these discovery requests documents and claims files regarding the many hundreds of LTD claimants other than plaintiffs in this action. Defendants have not reviewed or produced those claims files.  Those documents are beyond the scope of permissible discovery and to review and produce those documents would impose an undue burden on defendants.  See Defendants' Memorandum in Opposition to Plaintiff's Motion to Compel, p. 4-10 (Dkt. Entry 46).  With that caveat, defendants have informed plaintiffs that, other than the documents already produced by defendants, no other documents exist which are responsive to these document requests.

Plaintiffs contend that the privacy concerns of the hundreds of LTD claimants and the undue burden they seek to impose on defendants both are overcome by their need to "determine the pattern and practice of the company in denying claims."  See Brief in Support of Plaintiffs' Second Motion to Compel Discovery, Attachment A, p. viii (Dkt. Entry 71). Contrary to their unsupported assertion, however, an examination of other claimants' files would not provide any information to plaintiffs to support their theory of conflict of interest or inconsistent plan interpretation.  By their very nature, long term disability claims are idiosyncratic and fact-specific inquiries, which are a function of the individual claimant's

unique medical condition, impairment and limitations.  See Billinger v. Bell Atlantic, 240 F. Supp. 2d 274, 278-80 (S.D.N.Y. 2003).  Resolution of an LTD claim typically requires an examination of the individual claimant's treating physician records and evaluative tools such as independent medical examinations and functional capacity evaluations.  Id. at 283-84.  Indeed, the diverse and myriad claims asserted by the fourteen plaintiffs in this action illustrate that each claim stands on its own and no conclusion can be drawn regarding one claim by examining the idiosyncratic facts and circumstances of another claim.  See Complaint, ¶¶29-251 (Dkt. Entry 1).  See also Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel, p. 4-9 (Dkt. Entry 46).

Document Request 61

**Plaintiffs' Discovery Requests:**

61.     All documents concerning analyses in Champion's possession, custody or control of the cost to it between Jan. 1, 1995 and Jan. 1, 2001, or any portion of that period, of providing benefits under the LTD Plan for Hourly Employees and/or the LTD Plan for Salaried Employees.

**Defendants' Response:**  See defendants' response to Document Requests 20 & 21, *supra* at 14-15.

Document Request 67

**Plaintiffs' Discovery Requests:**

67.     Documents sufficient to show the following information about each individual whose case was reviewed by CORE on behalf of Champion and/or one of the Plans: (a) name; (b) date of review by CORE; (c) name, title and business address

21

or agent or employee of CORE who did the review; and (d) results of the review (e.g., disability continued or discontinued).

**Defendants' Response:**  This discovery request is redundant of the discovery request at issue in plaintiffs' First Motion to Compel and, for the reasons defendants stated in opposition thereto, the information plaintiffs seek is beyond the scope of permissible discovery and would impose an undue burden on defendants.  See Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel, p. 4-9 (Dkt. Entry 46).

Plaintiffs now contend that the Court should effectively ignore the privacy concerns of hundreds of LTD claimants and the undue burden plaintiffs seek to impose on defendants because "such proof would clearly show a conflict of interest which may have infected CORE's and defendants' later consideration of plaintiffs' claims."  See Brief in Support of Plaintiffs' Second Motion to Compel Discovery, Attachment A, p. ix (Dkt. Entry 71).  Contrary to their unsupported assertion, however, an examination of other claimants' idiosyncratic and diverse claims files would not provide any information to plaintiffs to support their theory of conflict of interest or inconsistent plan interpretation.  See *supra* at 19-20.

      B.      <u>Plaintiffs' Third Set of Interrogatories & Requests for Production</u>

<u>Interrogatory 4</u>

**Plaintiffs' Discovery Requests:**

4.      Provide the following information concerning the "CORE Denial Committee" which was involved in the review and/or determination of one or more of the plaintiffs' claims between Jan. 1, 1995 and the present:

(a)    state the full name, last known home address, last known office

address, title, job description and date of birth and Social

Security number of every person who was a member of said

committee;

(b)    describe the purpose and mission of said committee;

(c)    identify the chairperson of said committee;

(d)    identify all of those claims of the plaintiffs said committee

reviewed or considered; and

(e)    identify any and all documents authored, generated, submitted or

maintained by said committee, including minutes, reports,

records, analyses, recommendations and evaluations.

**Defendants' Response:**  Notwithstanding plaintiffs' unsupported assertion, see Brief in

Support of Plaintiffs' Second Motion to Compel Discovery, Attachment B, p. i (Dkt. Entry 71),

there is nothing nefarious about the name or activities of the CORE Denial Committee.  The

purpose of the CORE Denial Committee was to review any denial recommendation before it

was forwarded by the CORE Case Manager to the Champion LTD Plans.  The Committee's

purpose was to ensure that, before it was communicated to Champion, any denial

recommendation made by the CORE Case Manager complied with the Plans' administrative

requirements.  The Committee did not review the claim if the Case Manager recommended

that the claim be granted.  Any other information regarding this CORE Committee is not in

defendants' custody or control.  To the extent plaintiffs seek access to documents or

information in other claimants' files, the request goes beyond the scope of permissible

discovery and would impose an undue burden on defendants.  See Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel, p. 4-9 (Dkt. Entry 46).

Document Request 18

**Plaintiffs' Discovery Requests:**

18.     Please produce all documents identified in your response to Interrogatory 4, above.

**Defendants' Response:**  See response to Interrogatory 4 of plaintiffs' Fourth Interrogatories and Requests for Production of Documents, *supra* at 21-22.

C.     Plaintiffs' Fourth Requests for Production of Documents

Document Request 1

**Plaintiffs' Discovery Requests:**

1.     Please produce all minutes, notices, agendas, reports, summaries, correspondence, and all other documents relevant or pertaining to the "LTD Committee," as described in the depositions of Mr. Rodriguez, Ms. Dixon, or any other committee established by the defendant Champion to investigate, audit, review, evaluate, assess or oversee LTD claims of Champion from 1992 to 2000.

**Defendants' Response:**  Contrary to plaintiffs' unsupported allegation, defendants have not "withheld other documents" responsive to this request.  See Brief in Support of Plaintiffs' Second Motion to Compel Discovery, Attachment C, p. i (Dkt. Entry 71).  The only documents defendants have been able to locate regarding the activities of the so-called LTD Committee are for the time period October, 1993 through March, 1995, and defendants have produced those documents to plaintiffs.

24

As plaintiffs note, however, defendants have redacted from those documents the names and social security numbers of LTD claimants identified or discussed in those documents who are not party to this action. Plaintiffs assert that they are entitled to the names and social security numbers redacted from the LTD Committee documents because the Committee's "mission is quite mysterious. Based on the vague testimony thus far, it would appear that the purpose of the committee was to plan or implement the reduction of LTD claims to reduce costs." See Brief in Support of Plaintiffs' Second Motion to Compel Discovery, Attachment C, p. i (Dkt. Entry 46). The record contradicts plaintiffs' assertion.

Mark Lehman, Champion International's Director of Benefits Administration and Integrated Personnel Systems, denied that the LTD Committee's purpose was to reduce LTD costs or decrease annual expenditures by the LTD Plans. See Exhibit E (Lehman Deposition, p. 224-26). Mary Lee Dixon, Champion International's LTD Administrator, also denied that the focus of the LTD Committee was to reduce costs. See Exhibit G (Dixon Deposition, p. 42-43). Tom Rodriguez, Champion International's Manager of Integrated Disability Systems, testified that the purpose of the LTD Committee was to investigate and discuss LTD claims for which there was reasonable suspicion that the claimant was not entitled to LTD benefits; usually based on a tip from another employee. One of the examples identified by Mr. Rodriguez was "hav[ing] someone totally disabled and a co-worker calls in and says so and so was roofing." See Exhibit A (Rodriguez Deposition, p. 78-79).

The LTD Committee minutes defendants produced to plaintiffs confirm that the Committee reviewed cases where it received information that claimants who professed to be totally disabled were observed working in a flower shop, lumber mill, tavern, dance studio,

travel agency and a sporting goods store.  See Exhibit H (LTD – 0003 through 0007, LTD –

0009 through 0020, LTD – 0021 through 0026, LTD – 0042 & LTD – 0088).  One "totally

disabled" claimant was observed riding in a rodeo.  See Exhibit H (LTD – 0003).  The LTD

Plans received a tip that plaintiff Martha Whitley owned and operated a beauty salon.  See

Exhibit H (LTD – 0017).  The Committee reviewed these claims to prevent "fraud" against the

LTD Plans.  See Exhibit H (LTD – 0042).[7]

Document Request 2

**Plaintiffs' Discovery Requests:**

2.      Please produce all minutes, notices, agendas, reports, summaries,

correspondence, and all other documents relevant or pertaining to the investigation,

audit, review, evaluation, assessment or oversight of LTD claims and the payment of

such claims by the Internal Audit Department (or other department of that description)

of the defendant Champion from 1992 to 2000.

**Defendants' Response:**  As defendants previously informed plaintiffs, defendants

have produced to plaintiffs the only documents responsive to this request – the so-called LTD

Committee minutes.  See Response to Document Request 1 of plaintiffs' Fourth Requests for

Production of Documents, *supra* at 23-24.

Document Request 3

**Plaintiffs' Discovery Requests:**

---

[7]A discussion by the LTD Committee also could be triggered by a claimant's lack of
visits to his or her physician.  See Exhibit H.  Presumably, an individual suffering from a
totally and permanently disabling impairment will require regular visits to his or her physician.

3.      Please produce all documents relevant or pertaining to the Long Term Disability Valuation of defendant Champion by the Hewitt Associates in or about 1996 and thereafter.

**Defendants' Response:**  See defendants' response to Document Requests 20, 21 & 22 of plaintiffs' Second Set of Interrogatories and Requests for Production of Documents, *supra* at 23-24.

## Conclusion

Based on the foregoing, defendants, by counsel, request the Court to enter an Order denying plaintiffs' Second Motion to Compel Discovery; awarding defendants their attorneys' fees and costs in seeking this relief; and granting such other relief as the Court deems just and proper.

This the 3rd day of March, 2004.

DEFENDANTS – CHAMPION INTERNATIONAL
CORPORATION, LONG TERM DISABLITY BENEFITS
PLAN FOR SALARIED EMPLOYEES OF CHAMPION
INTERNATIONAL CORPORATION #506, LONG TERM
DISABILITY BENEFITS PLAN FOR CERTAIN HOURLY
EMPLOYEES OF CHAMPION INTERNATIONAL
CORPORATION #703; and INTERNATIONAL PAPER
COMPANY


By:    _____
          Barry J. Waters – ct05520

MURTHA CULLINA LLP
Whitney Grove Square
Two Whitney Avenue
P.O. Box 704
New Haven, Connecticut  06503-0704
(203) 772-7700
(203) 772-7723 (facsimile)


Bruce M. Steen – ct23613
MCGUIREWOODS LLP
Bank of America Corporate Center
100 North Tryon Street, Suite 2900
Charlotte, North Carolina  28202
(704) 353-6244
(704) 353-6200 (facsimile)

Their Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was sent by facsimile

(without Exhibits A-H) and by UPS Next Day Air on this the 3rd day of March, 2004, to:

> William B. Barnes, Esquire
> ROSENSTEIN & BARNES
> 1100 Kings Highway East
> Suite 1C
> Fairfield, Connecticut  06432; and
>
> Howard Levine, Esquire
> CARMODY & TORRANCE, LLP
> 195 Church Street, 18th Floor
> P.O. Box 1990
> New Haven, Connecticut  06509;
>
> Robert M. Elliot, Esquire
> ELLIOT, PISHKO, GELBIN & MORGAN, P.A.
> 426 Old Salem Road
> Winston-Salem, North Carolina  27101;
>
> Richard B. Harper, Esquire
> LAW OFFICES OF RICHARD B. HARPER
> 1336 Savannah Drive
> Sylva, North Carolina  28779-0395; and
>
> James T. Finnigan, Esquire
> RICH MAY, P.C.
> 176 Federal Street
> Boston, Massachusetts  02110

_____
Barry J. Waters – ct05520