# Exhibit B

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| HARRY L. SMITH, LOIS L. LYNN, DARRELL KEITH HILL, ELIZABETH CASE BOONE, WILEY H. HAYNES, ROSA LEE BROOKSHIRE, HARRISON YOUNG CLARK, FRANZISKA FINNEY, JUDITH CASE KIRKPATRICK, WILSON DANIEL McCLURE, CELIA DARLENE METCALF, CHARLES R. REECE, DOLPHUS LUTHER TREADWAY, JR., and MARTHA BURNETTE WHITLEY, <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br>CHAMPION INTERNATIONAL CORPORATION; LONG TERM DISABILITY BENEFITS PLAN FOR SALARIED EMPLOYEES OF CHAMPION INTERNATIONAL CORPORATION #506; LONG TERM DISABILITY BENEFITS PLAN FOR CERTAIN HOURLY EMPLOYEES OF CHAMPION INTERNATIONAL CORPORATION #703; and INTERNATIONAL PAPER COMPANY, <br><br>　　　　Defendants. | CIVIL ACTION NUMBER 302CV212 (CFD) <br><br><br><br>PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND INTERROGATORIES <br><br><br><br>December 8, 2004 |

　　　　Plaintiffs' hereby respond to defendants' second interrogatories as follows:

　　　　1.　　Identify each person with knowledge or information regarding the allegations and each document regarding the allegations, and describe each fact supporting the allegations that defendants' decisions to terminate Plaintiffs' benefits were "made to reduce Champion's costs and expenses, and for other reasons unrelated to [Plaintiffs'] continuing total disability" as alleged in paragraphs 44, 60, 76, 92, 108, 124, 141, 157, 172, 188, 203, 219, 235 and 251 of Plaintiffs' Complaint. For each person so identified, include a description of that person's knowledge regarding those allegations.

**Answer:** Plaintiffs object to this interrogatory to the extent that it seeks information protected by the attorney/client privilege or work product rule. Subject to said objection, *see* Attachment A. In addition, plaintiffs provide the following information:

**Persons with knowledge/information:** With respect to each plaintiff, the plaintiff and his/her experts and other persons identified in the claims file and in additional records submitted by the plaintiff in support of his/her claim have knowledge or information in support of the fact that he/she was totally disabled from any employment at the time CORE reviewed his/her claim and Champion terminated his/her benefits, and that the decisions to terminate benefits were made "for other reasons unrelated" to plaintiff's disability; and in support of the specific facts provided in Attachment A regarding said plaintiff. In addition, each plaintiff is aware of facts indicating that Champion was attempting to reduce its costs and expenses in order to sell the company, as described in Attachment A. In addition, the following persons who were deposed by plaintiffs in this action provided knowledge and information in support of the facts described in Attachment A: Mary Lee Dixon, Mike Gorski, Mark Lehman, John Lewis, Thomas Rodriquez and Glenn Taylor. *See* depositions. *See also*, Plaintiffs' Response to Defendants' First Interrogatories. Plaintiffs reserve the right to supplement their responses with any additional information which they receive in further investigation pending trial.

**Documents:** *See* documents produced by plaintiffs in Plaintiffs' Response to Defendants' First Request for Production of Documents to Plaintiffs; documents produced by defendants in discovery; documents produced by CORE pursuant to the court's discovery order; documents provided by each plaintiff to defendants prior to litigation of this action to supplement his/her record; and depositions and exhibits in this action. Plaintiffs reserve the right to supplement this response with additional documents which they may obtain in further investigation pending trial.

2.  Identify each person with knowledge or information regarding the allegations and each document regarding the allegations, and describe each fact supporting the allegations that defendants made any of the benefits decisions at issue in Plaintiffs' Complaint for the purpose of saving money or cutting costs. For each person so identified, include a description of that person's knowledge regarding those allegations.

**Answer:** Plaintiffs object to this interrogatory to the extent that it seeks information protected by the attorney/client privilege or work product rule. Subject to said objection, *see* Attachment A. In addition, plaintiffs provide the following information:

**Persons with knowledge/information:** With respect to each plaintiff, the plaintiff and his/her experts and other persons identified in the claims file and in additional records submitted by the plaintiff in support of his/her claim have knowledge or information in support of the fact that he/she was totally disabled from any employment at the time CORE reviewed his/her claim and Champion terminated his/her benefits, and that the decisions to terminate benefits were made for other reasons unrelated to plaintiff's disability; and in support of the specific facts provided in Attachment A regarding said plaintiff. In addition, each plaintiff is aware of facts indicating that Champion was attempting to reduce its costs and expenses in order to sell the company, as described in Attachment A. In addition, the following persons who were deposed by plaintiffs in this action provided knowledge and information in support of the facts described in Attachment A: Mary Lee Dixon, Mike Gorski, Mark Lehman, John Lewis, Thomas Rodriquez and Glenn Taylor. *See* depositions. *See also,* Plaintiffs' Response to Defendants' First Interrogatories. Plaintiffs reserve the right to supplement their responses with any additional information which they receive in further investigation pending trial.

**Documents:** *See* documents produced by plaintiffs in Plaintiffs' Response to Defendants' First Request for Production of Documents to Plaintiffs; documents produced by defendants in discovery; documents produced by

CORE pursuant to the court's discovery order; documents provided by each plaintiff to defendants prior to litigation of this action to supplement his/her record; and depositions and exhibits in this action. Plaintiffs reserve the right to supplement this response with additional documents which they may obtain in further investigation pending trial.

3. Identify each person with knowledge or information regarding the allegation and each document regarding the allegation, and describe each fact supporting the allegation that defendants carried out or discharged their responsibilities under a conflict of interest. For each person so identified, include a description of that person's knowledge regarding those allegations.

**Answer:** Plaintiffs object to this interrogatory to the extent that it seeks information protected by the attorney/client privilege or work product rule. Subject to said objection, *see* Attachment A. In addition, plaintiffs provide the following information:

**Persons with knowledge/information:** With respect to each plaintiff, the plaintiff and his/her experts and other persons identified in the claims file and in additional records submitted by the plaintiff in support of his/her claim have knowledge or information in support of the fact that he/she was totally disabled from any employment at the time CORE reviewed his/her claim and Champion terminated his/her benefits, and that the decisions to terminate benefits were made for other reasons unrelated to plaintiff's disability; and in support of the specific facts provided in Attachment A regarding said plaintiff. In addition, each plaintiff is aware of facts indicating that Champion was attempting to reduce its costs and expenses in order to sell the company, as described in Attachment A. In addition, the following persons who were deposed by plaintiffs in this action provided knowledge and information in support of the facts described in Attachment A: Mary Lee Dixon, Mike Gorski, Mark Lehman, John Lewis, Thomas Rodriquez and Glenn Taylor. Specifically, defendants' agents testified that defendants were responsible for paying any benefits out of their general funds; and Champion's agreements with CORE provide for incentive

payments to CORE to the extent CORE met the expectations of Champion. *See* depositions. *See also,* Plaintiffs' Response to Defendants' First Interrogatories. Plaintiffs reserve the right to supplement their responses with any additional information which they receive in further investigation pending trial.

**Documents:** *See* documents produced by plaintiffs in Plaintiffs' Response to Defendants' First Request for Production of Documents to Plaintiffs; documents produced by defendants in discovery; documents produced by CORE pursuant to the court's discovery order; documents provided by each plaintiff to defendants prior to litigation of this action to supplement his/her record; and depositions and exhibits in this action. Plaintiffs reserve the right to supplement this response with additional documents which they may obtain in further investigation pending trial.

4. Identify each person with knowledge or information regarding the allegations and each document regarding the allegations, and describe each fact supporting the allegations in paragraph 260(a) through (i) of Plaintiffs' Complaint that defendants "violated their duties under ERISA." For each person so identified, include a description of that person's knowledge regarding those allegations.

**Answer:** Plaintiffs object to this interrogatory to the extent that it seeks information protected by the attorney/client privilege or work product rule. Subject to said objection, *see* Attachment A. In addition, plaintiffs provide the following information:

**Persons with knowledge/information:** With respect to each plaintiff, the plaintiff and his/her experts and other persons identified in the claims file and in additional records submitted by the plaintiff in support of his/her claim have knowledge or information in support of the fact that he/she was totally disabled from any employment at the time CORE reviewed his/her claim and Champion terminated his/her benefits; that CORE was aggressive, and sometimes deceptive in its actions towards plaintiff; that defendants failed to adhere to their procedures, instead relying on CORE to

>make decisions concerning plaintiff's disability; and that the decisions to terminate benefits were made for other reasons unrelated to plaintiff's disability; and in support of the specific facts provided in Attachment A regarding said plaintiff. In addition, each plaintiff is aware of facts indicating that Champion was attempting to reduce its costs and expenses in order to sell the company, as described in Attachment A. In addition, the following persons who were deposed by plaintiffs in this action provided knowledge and information in support of the facts described in Attachment A: Mary Lee Dixon, Mike Gorski, Mark Lehman, John Lewis, Thomas Rodriquez and Glenn Taylor. *See* depositions. *See also*, Plaintiffs' Response to Defendants' First Interrogatories. Plaintiffs reserve the right to supplement their responses with any additional information which they receive in further investigation pending trial.
>
>**Documents:** *See* documents produced by plaintiffs in Plaintiffs' Response to Defendants' First Request for Production of Documents to Plaintiffs; documents produced by defendants in discovery; documents produced by CORE pursuant to the court's discovery order; documents provided by each plaintiff to defendants prior to litigation of this action to supplement his/her record; and depositions and exhibits in this action. Plaintiffs reserve the right to supplement this response with additional documents which they may obtain in further investigation pending trial.

5. Identify each person with knowledge or information regarding the allegation and each document regarding the allegation, and describe each fact supporting the allegation in paragraph 265 of Plaintiffs' Complaint that defendants "breached their fiduciary duties with respect to each plaintiff." For each person so identified, include a description of that person's knowledge regarding those allegations.

>**Answer:**  Plaintiffs object to this interrogatory to the extent that it seeks information protected by the attorney/client privilege or work product rule. Subject to said objection, *see* Attachment A. In addition, plaintiffs provide the following information:

**Persons with knowledge/information:** With respect to each plaintiff, the plaintiff and his/her experts and other persons identified in the claims file and in additional records submitted by the plaintiff in support of his/her claim have knowledge or information in support of the fact that he/she was totally disabled from any employment at the time CORE reviewed his/her claim and Champion terminated his/her benefits; that CORE, with the consent of defendants, was aggressive, and sometimes deceptive in its actions towards plaintiff; that defendants failed to adhere to their procedures, instead relying on CORE to make decisions concerning plaintiff's disability; and that the decisions to terminate benefits were made for other reasons unrelated and that the decisions to terminate benefits were made for other reasons unrelated to plaintiff's disability; and in support of the specific facts provided in Attachment A regarding said plaintiff. In addition, each plaintiff is aware of facts indicating that Champion was attempting to reduce its costs and expenses in order to sell the company, as described in Attachment A. In addition, the following persons who were deposed by plaintiffs in this action provided knowledge and information in support of the facts described in Attachment A: Mary Lee Dixon, Mike Gorski, Mark Lehman, John Lewis, Thomas Rodriquez and Glenn Taylor. *See* depositions. *See also*, Plaintiffs' Response to Defendants' First Interrogatories. Plaintiffs reserve the right to supplement their responses with any additional information which they receive in further investigation pending trial.

**Documents:** *See* documents produced by plaintiffs in Plaintiffs' Response to Defendants' First Request for Production of Documents to Plaintiffs; documents produced by defendants in discovery; documents produced by CORE pursuant to the court's discovery order; documents provided by each plaintiff to defendants prior to litigation of this action to supplement his/her record; and depositions and exhibits in this action. Plaintiffs reserve the right to supplement this response with additional documents which they

may obtain in further investigation pending trial.

6. Identify all of defendants' former and/or current employees with whom Plaintiffs, or someone acting on behalf of Plaintiffs, has discussed the facts, circumstances and/or occurrences giving rise to this litigation, and/or the allegations described in Plaintiffs' Complaint.

**Answer:** Plaintiffs object to this interrogatory to the extent that it seeks information protected by the attorney/client privilege or work product rule. Subject to said objection, other than the plaintiffs, plaintiffs have discussed the facts of this action with the following deponents: Mary Lee Dixon, Mike Gorski, Mark Lehman, John Lewis, Thomas Rodriquez and Glenn Taylor. *See* depositions.

This the 8th day of December, 2004.

_____
Robert M. Elliot
Attorney for Plaintiffs

OF COUNSEL:
Elliot Pishko Morgan, P.A.
426 Old Salem Road
Winston-Salem, NC 27101
Tel (336) 724-2828
Fax (336) 724-3335
E-mail     rmelliot@epmlaw.com

## CERTIFICATE OF SERVICE BY FIRST CLASS MAIL

A copy of the foregoing Plaintiffs' Response to Defendants' Second Interrogatories was mailed this date, postage prepaid, to the following counsel of record to the addresses provided below:

**ADDRESSEES:**

Bruce M. Steen, Esq.
McGuire Woods
Bank of America Corporate Center
100 North Tryon Street, Suite 2900
Charlotte NC 28202-4011

Barry J. Waters, Esq.
Murtha Cullina, LLP
Whitney Grove Square
Two Whitney Avenue
P.O. Box 704
New Haven, CT 06503-0704

This the 8th day of December, 2004.

BY: _____
ROBERT M. ELLIOT
Elliot Pishko Morgan, P.A.
426 Old Salem Road
Winston-Salem, NC 27101
Tel (336) 724-2828
Fax (336) 724-3335
E-mail       rmelliot@epmlaw.com

## ATTACHMENT A

### FACTS CONCERNING CHAMPION AND CORE

1. Champion was initially established in July, 1941, in North Carolina. Champion engaged in the business of paper manufacturing.

2. Over the years, Champion grew. By the mid-1990's, Champion operated plants in North Carolina and other states, and employed thousands of employees.

3. From approximately 1997 to 1999, Champion officials explored ways of reducing their costs throughout the company.

4. During the same time period, Champion determined that its implementation of the Champion LTD Plans had become too costly as a result of the number of participants who had become disabled.

5. In order to reduce its costs, Champion officials instituted a re-examination of all disabled participants who were receiving LTD benefits for the purpose of denying and terminating their rights to benefits.

6. To carry out this effort, Champion contracted with CORE. Upon information and belief, in 1996, CORE and Champion entered into an agreement pursuant to which CORE assisted Champion in the investigation and determination of LTD claims under the Champion LTD Plans, including claims of plaintiffs. In 1998, CORE performed its contractual duties in this regard through a joint venture with another company, Sedgwick James, known as SCORE. CORE, directly and indirectly, promoted its expertise in reducing and eliminating disability costs by obtaining evidence and information to use in the denial or termination of LTD benefits of disabled participants.

7. Pursuant to its contract and instructions from Champion, CORE instituted a re-examination of disabled participants, without cause, for the purpose of establishing a pretext for the denial or termination of benefits of such participants, including those who had been consistently found totally disabled by their treating physicians and others.

8. After the merger, International, as the administrator of the Champion LTD Plans, continued efforts to deny or terminate LTD benefits to disabled participants with the assistance of CORE.

1

9. Defendants, primarily through the efforts of CORE, carried out and achieved their above purposes through various improper means calculated and designed to overcome the consistent evidence of total disability of the plaintiffs, and to provide a pretext on which to terminate and deny continuing LTD benefits, including the following:

a. By unfairly targeting plaintiffs for termination of benefits for reasons unrelated to their disabling conditions;

b. By selecting and hiring physicians who were biased and predisposed toward rendering opinions supporting the denial or termination of benefits to re-examine disabled participants;

c. By providing false and deceptive information to selected physicians to influence them to provide opinions supporting the termination or denial of benefits of plaintiffs and other disabled participants;

d. By providing false and deceptive information to treating physicians of plaintiffs in an effort to convince them to modify their prior determinations of total disability and to support the denial and termination of benefits;

e. By failing to provide complete medical information to the physicians selected to re-examine plaintiffs and other disabled participants;

f. By ignoring evidence from treating physicians which supported the continuing total disability status of the plaintiffs;

g. By refusing to consider other evidence and information which supported the continuing total disability status of the plaintiffs;

h. By failing to obtain independent vocational information to determine the actual work capacity of the plaintiffs and the availability of jobs in the local economy to accommodate plaintiffs' various disabilities;

i. By failing to obtain additional information from the plaintiffs necessary to conduct full and fair reviews of the plaintiffs' claims;

j. By failing to require evidence of a change in each plaintiff's condition as a prerequisite to any modification of the initial determination of the plaintiff's total disability;

k.  By otherwise acting in a manner inconsistent with the interests of the plaintiffs and other participants of the Plans.

At all times pertinent to this action, upon information and belief, CORE had and/or exercised discretionary authority, control and responsibilities with respect to the management and administration of the Champion LTD Plans.

10.  As a result of these efforts, defendants wrongfully terminated LTD benefits of plaintiffs and other totally disabled participants who met the eligibility requirements of the Champion LTD Plans.

11.  CORE maintained records of the "savings" it netted for Champion and International by assisting in the termination of LTD benefits to disabled participants.

12.  As a result of Champion's and CORE's efforts, Champion's costs were reduced.

13.  Defendants carried out their responsibilities under a conflict between their own interests in reducing company costs and the interests of plaintiffs and other participants in a fair and objective determination of their continuing total disability and their rights under the Plans. CORE carried out its responsibilities under a conflict between its own interests in maximizing its compensation under its agreements with Champion and its marketing potential, and its duties to plaintiffs and other participants. As a result of these conflicts, defendants wrongfully denied and terminated the LTD benefits of each plaintiff.

14.  Each plaintiff has exhausted all review procedures and remedies provided by defendants or was relieved of exhaustion by defendants' actions.

### FACTS CONCERNING INDIVIDUAL PLAINTIFFS

*Plaintiff Harry L. Smith*

15.  Plaintiff Harry L. Smith (hereafter "Smith") was born on February 26, 1946, and is presently 55 years of age.

16.  On January 10, 1969, Smith was initially employed by Champion in the transfer pool. From 1969 to 1993, Smith was continuously employed with Champion. After a series of promotions, Smith was promoted to the position of supervisor in or about 1990. Smith remained in that position until his disability, as described below.

17. On or about May 19, 1993, Smith became totally disabled from his employment with Champion. Smith has remained totally disabled from his occupation or any other gainful employment activity since that time because he suffers from a severe and incapacitating back impairment resulting in multiple spinal surgeries, including fusion; chronic pain, requiring implantation of a morphine pump; and other disabling conditions.

18. In approximately November, 1993, Smith applied for LTD benefits in accordance with the Plan. Champion determined that Smith was totally disabled and awarded benefits. Champion's determination was based on the independent opinions and evaluations of Smith's condition by his physicians, as well as other evidence of his totally disabling conditions provided to Champion.

19. Following the approval for LTD benefits, Smith began receiving monthly payments.

20. In or about April, 1994, based on the substantial medical and vocational evidence, the Social Security Administration determined that Smith was totally and permanently disabled from all substantial and gainful employment activity as of May, 1993, and granted Social Security disability benefits pursuant to Title II of the Social Security Act, 42 U.S.C § 401, *et seq*.

21. From the date of the initial determination of Smith's total disability by Champion to 1998, Smith's condition worsened.

22. Nevertheless, in or about October, 1997, Champion, through CORE, notified Smith that the company was re-evaluating his condition and his right to continuing LTD benefits, although there had been no improvement in Smith's condition. CORE required Smith to undergo further evaluation by medical providers hired and selected by CORE (hereafter "CORE's selected provider(s)" or "CORE's selected physician(s)").

23. In compliance with CORE's instructions, Smith was evaluated by CORE's selected providers, who were biased and influenced by CORE to support the termination of Smith's LTD benefits.

24. On October 29, 1997, CORE, ignoring the overwhelming evidence confirming Smith's continuing total disability, sent Smith a letter stating that, in its view, Smith was not disabled under the Plan. On November 24, 1997, Champion notified Smith that his LTD benefits were terminated, effective November 30, 1997.