IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HARRY L. SMITH, LOIS L. LYNN, DARRELL KEITH HILL, ELIZABETH CASE BOONE, WILEY H. HAYNES, ROSA LEE BROOKSHIRE, HARRISON YOUNG CLARK, FRANZISKA FINNEY, JUDITH CASE KIRKPATRICK, WILSON DANIEL McCLURE, CELIA DARLENE METCALF, CHARLES R. REECE, DOLPHUS LUTHER TREADWAY, JR., and MARTHA BURNETTE WHITLEY, | ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION NUMBER 3:02cv00212 (CFD) |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| CHAMPION INTERNATIONAL CORPORATION, LONG TERM DISABILITY BENEFITS PLAN FOR SALARIED EMPLOYEES OF CHAMPION INTERNATIONAL CORPORATION #506, LONG TERM DISABILITY BENEFITS PLAN FOR CERTAIN HOURLY EMPLOYEES OF CHAMPION INTERNATIONAL CORPORATION #703; INTERNATIONAL PAPER COMPANY; and CORE, INC. | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | April 28, 2008 |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Defendants Champion International Corporation ("Champion International"),

Long Term Disability Benefits Plan for Salaried Employees of Champion International

Corporation #506 ("Salaried LTD Plan"), Long Term Disability Plan for Certain Hourly

Employees of Champion International Corporation #703 ("Hourly LTD Plan")

(collectively referred to as "LTD Plans" or "Plans"), and International Paper Company ("International Paper"), by counsel, state as follows in further support of their motion for summary judgment and in opposition to plaintiffs' motion for summary judgment:

## Statement of the Case

On April 4, 2005, the parties filed cross motions for summary judgment and memoranda in support thereof. See Dkt. Entries 91-96. On April 10, 2007, the parties appeared for oral argument on their dispositive motions. See Dkt. Entry 109. At the conclusions of the hearing, the Court offered the parties the opportunity to supplement their initial briefing to address matters raised at the hearing.

Based on defendants' motion for summary judgment and memoranda in support thereof, their memorandum in opposition to plaintiffs' motion for summary judgment, and related filings, see Dkt. Entries 91-93, 102, 103, and 106, which are incorporated herein by reference, plaintiffs cannot demonstrate that the LTD Plans' decisions to terminate and deny plaintiffs' claims for benefits were arbitrary and capricious, and defendants are entitled to judgment as a matter of law.

## Argument

I.    Contrary to Plaintiffs' Assertion, the Court Reviews the Benefit Decisions Based on the Arbitrary and Capricious Standard of Review Unaltered by any Alleged Conflict of Interest, and the Court's Review is Limited to the Materials in the Administrative Record at the Time the Benefit Decisions were Made.

A.    Plaintiffs' Specious Conflict of Interest Argument.

In a further attempt to support their ever evolving conflict of interest argument, plaintiffs contended at the motion hearing:  (1) that Champion International denied their claims in order to reduce its costs and better position itself for sale; and (2) that members

of the Claims Review Committee ("CRC") had a financial incentive to deny their claims.[1]
The record evidence contradicts both assertions.

First, there is no evidence that the LTD Plans denied plaintiffs' claims in order to
make Champion International a more attractive acquisition target. In fact, the evidence is
to the contrary. For example, Mike Gorski, a voting member of the CRC, see Gorski
Deposition, p. 44-45, 46-47 (NB 75), testified that there was never any discussion of a
need to reduce Champion International's costs because the company was being sold, or
for any other reason. He testified as follows:

> Q:    Was there---do you recall a point which there was a discussion of
> the need to reduce Champion's costs because the company was either being sold
> or selling parts of itself?
>
> A:    No, I don't.

See Gorksi Deposition, p. 26-27 (NB 75). Similarly, Thomas Rodriquez, Champion
International's former Manager of Integrated Disability Systems, see Rodriquez
Deposition, p. 6 (NB 75), expressly denied that cost cutting, whether related to the sale of
Champion International or otherwise, had anything to do with the LTD Plans' benefit
decisions. Id. at p. 39-41. He testified that he "never" felt pressure to reduce costs;
according to Mr. Rodriquez, the Plans' charter "was to go out there and to ensure the
proper thing was being done." Id. at 40.

Second, contrary to plaintiffs' unsubstantiated assertion, it is undisputed that the
members of the CRC did not receive any additional or incentive compensation to serve

---

[1]International Paper bought Champion International in 1999 for $75 per share, or
$7.3 billion. See *International Paper in Deal for Purchase of Champion*, N.Y. Times,
May 13, 2000, at C4. At the time of the sale, the total reserves for the LTD claims were
$27,406,392, see Champion 0200 (NB 68), hardly material to a sale of that magnitude.

on the Committee and review claims.  John Lewis, another voting member of the CRC,
testified as follows:

> Q:    Were you compensated for serving on that committee?
>
> A:    No.
>
> Q:    So it was just one of the duties assigned to you?
>
> A:    It was a voluntary assignment.
>
> Q:    And you received no additional compensation?
>
> A:    No.
>
> Q:    Were there any incentives associated with what the work of the committee was?
>
> A:    No.

See Lewis Deposition, p. 21 (NB 75).  In sum, cost had nothing to do with the LTD
Plans' claim decisions and plaintiffs have failed to carry their burden of establishing the
existence of a conflict of interest necessary to justify a departure from the arbitrary and
capricious standard of review.  See Sullivan v. LTV Aerospace and Defense Co., 82 F.3d
1251 (2nd Cir. 1996).

The Second Circuit's decision in Sullivan, 82 F.3d at 1251, is not to the contrary.
In Sullivan, the court stated that a question of fact existed regarding whether a conflict of
interest existed in this case based on the denial of severance benefits, id. at 1257, but
central to that finding was the fact that the self-funded severance plan was sponsored by a
company in Chapter 11 bankruptcy and the "financial conditions . . . *were so severe* at
that time that the [benefit decision-makers] were aware that costs had to be cut in any
way possible, and that significant downsizing was likely." Id. at 1257 (emphasis added).

In stark contrast, no such evidence exists in the instant case. There is no evidence that Champion International was having any financial difficulties or that reducing LTD benefits was of any concern during the sale to International Paper. None of the claim decision-makers in the instant case were influenced by, or had any need or desire to cut costs. *Every* witness has testified that the cost of benefits was *never* a consideration in the decision to grant or deny a long term disability claim. See Lehman Deposition, p. 246 (NB 75), Gorski Deposition, p. 82-83, 82-89 (NB 75), Lewis Deposition, p. 32-33 (NB 75), Dixon Deposition, p. 42-43 & 93-94 (NB 75), Taylor Deposition, p. 233-34 (NB 75).

Plaintiffs' continued reliance on an alleged "structural" conflict of interest arising from the fact that Champion International was responsible for paying the benefits and Champion International employees were responsible for evaluating a participant's claim for benefits also is misplaced. No such presumption of a conflict of interest exists merely because the benefits are self-funded. See Pulvers v. First UNUM Life Ins. Co., 210 F.3d 89, 92 (2nd Cir. 2000). This is based on "the simple and commonplace fact that a plan's administrator is also its funder is not enough to support a finding of a conflict of interest that would cause an adjustment to our deference." See Colucci v. Agfa Corp. Severance Plan, 431 F.3d 170, 179 (4th Cir. 2005). ERISA does not require an employer to establish employee benefit plans; "[n]or does ERISA mandate what kind of benefits employers must provide" if they choose to have such a plan. See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 833, 123 S. Ct. 1965, 1971 (2003). In Colucci, the Fourth Circuit "question[ed] how a company that creates, funds and administers a plan for its own employees' benefit can, from those facts alone, be presumed to have a financial conflict in

administering that plan when the company remains free to end the plan altogether." See Colucci, 431 F.3d at 179. Simply put, if Champion International or International Paper were inclined to arbitrarily or capriciously deny benefits in order to save itself money, Champion International would not have voluntarily established the Plans in the first instance or would have terminated them if they became "too expensive." See also Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan, 144 F.3d 1014 (7th Cir. 1998), cert. denied, 525 U.S. 947 (1998).[2]

In sum, plaintiffs have failed to establish a conflict of interest necessary to modify the arbitrary and capricious standard of review or justify *de novo* review of plaintiffs' claims for LTD benefits. See Tsagari v. Pitney Bowes, Inc., 473 F. Supp.2d 334, 340 (D. Conn. 2007)("conclusory allegations about a conflict of interest were insufficient to warrant a de novo standard of review")(citations omitted).

B.     The Court's Review is Limited to the Administrative Record.

Plaintiffs also argued at the April 10 motions hearing that the Court should consider the "supplementary" materials they proffered to the LTD Plans well after their claims for benefits had been denied. Plaintiffs' contention is without merit.

In accord with six other circuit courts, the Second Circuit has held that a district court's review under the arbitrary and capricious standard of review and the *de novo* standard of review is limited to the administrative record before the plan administrator

_____

[2]Because they are self-funded, the Champion International LTD Plans are distinguished from ERISA plans that are both insured and administered by insurance companies, which have lead some courts in this Circuit to more carefully scrutinize the so-called "structural" conflict of interest. See, e.g., Merrill v. Hartford Life & Accident Ins. Co., 503 F. Supp.2d 531 (D. Conn. 2007). As the Colucci court recognized, there may be a material difference between an insurance company whose profits primarily derive their business profits from insuring benefit plans "and a corporation that collaterally manages a plan through which it chooses to provide its employees with benefits." See Colucci, 431 F.3d at 179.

when the challenged benefit decision was made. See Miller v. United Welfare Fund, 72

F.3d 1066, 1071-72 (2nd Cir. 1995)(discussing the arbitrary and capricious standard of

review and citing cases from the Third, Sixth, Eighth, Ninth, Tenth & Eleventh Circuits);

DeFelice v. American Int'l Life Assurance Co., 112 F.3d 61, 67 (2nd Cir. 1997)(holding

that presumption is that judicial review "is limited to the record in front of the claims

administrator unless the district court finds good cause to consider additional evidence").

See also Piscottano v. Metropolitan Life Ins. Co., 118 F. Supp.2d 200, 210 (D. Conn.

2000); Parisi v. UnumProvident Corp., 2007 U.S. Dist. Lexis 93472, *24-26 (D. Conn.

2007).[3]

The policy reasons underlying this rule are compelling. ERISA's claim

regulations include time limits to encourage the timely and efficient processing of benefit

claims. See Gayle v. United Parcel Service, Inc., 401 F.3d 222, 228-29 (4th Cir. 2005).

Courts enforce these deadlines, which are designed in part to "develop a proper

administrative record," id. at 229, because to do otherwise would increase the cost of the

process, would increase the probability of inconsistent results where some participants

are held to these time limits while others (like the fourteen plaintiffs request here) are not,

and would be contrary to congressional intent that the ERISA claim procedure be fair and

efficient. Id. at 228-29. Plaintiffs, therefore, may not rely on any materials outside the

---

[3]According to the Second Circuit, "good cause" to expand the administrative
record does not exist where, as here, the plan administrator gave the plaintiff ample time
to submit additional materials and the plaintiff failed to do so in a timely manner. See
Muller v. First UNUM Life Insurance Company, 341 F.3d 119, 125-26 (2nd Cir. 2003).
Moreover, this Court already has concluded that plaintiffs are bound by the
administrative record in the instant case. See September 10, 2002, Endorsement Order
granting defendants' Motion to Limit Discovery to the Administrative Record.

administrative record as it existed when the LTD Plans made the final claim decisions.

See Parisi, 2007 U.S. Dist. Lexis 93472, *24-26.

II.    Contrary to their Contentions, Plaintiffs Cannot Establish that the Plans' Claim
       Decisions were Arbitrary or Capricious, or Otherwise an Abuse of Discretion.

       A.    The Plans Properly Evaluated Plaintiffs' Subjective Complaints of Pain
             and did not Err in Requiring Some Objective Evidence of Disability.

At the April 10 motion hearing, plaintiffs again argued that the Plans' claim

decisions were arbitrary and capricious because they failed to consider plaintiffs'

subjective complaints of pain.  Plaintiffs also appear to believe that the Plans are not

permitted to require at least some objective evidence of disability.  Plaintiffs' view is

wrong on the law and the facts.

Contrary to plaintiffs' apparent belief, the LTD Plans were not required to defer to

their subjective complaints of pain.  Rather, as the Second Circuit has held consistently,

subjective complaints of pain are but one factor to be considered by an ERISA plan when

evaluating a claim for disability benefits.  See Connors v. Connecticut General Life Ins.

Co., 272 F.3d 127, 136-37 (2nd Cir. 2001).  And, while subjective complaints of pain

certainly are relevant and should be considered, "it is hardly unreasonable for the

administrator to require an objective component to such proof."  See Maniatty v.

UnumProvident Corp., 218 F. Supp.2d 500, 504 (S.D.N.Y. 2002), aff'd, 62 Fed. Appx.

413 (2nd Cir. 2003).  See also Couture v. UnumProvident Corp., 315 F. Supp.2d 418, 431-

32 (S.D.N.Y. 2004).

Moreover, the record evidence is undisputed that the Plans did consider plaintiffs'

subjective complaints of pain during the claim review process.  See Defendants' Local

Rule 56(a)(2) Response to Plaintiffs' Local Rule 56(a)(1) Statement, ¶¶173(c), 313(d),

8

512(d), 650(c), 757(d)(Dkt. Entry 103).  <u>See also</u> Boone 0161 (NB 1); CRC 0705 (NB 2);

Brookshire 0092, 0084 (NB 3).  Contrary to plaintiffs' apparent view, however, those

subjective complaints were not dispositive or entitled to any greater weight than any

other piece of information in the administrative record.  <u>See</u> <u>Connors</u>, 272 F.3d at 136-37.

As other courts in this Circuit have recognized, "it is not unreasonable – especially in

light of available objective medical evidence [in the administrative record] – for [the

plan] to seek additional objective data rather than rely on subjective complaints."  <u>See</u>

<u>Couture</u>, 315 F. Supp.2d at 431.  Indeed, as this Court recognized in <u>Parisi</u>, "[o]n

arbitrary and capricious review, the consideration of such complaints, including

credibility determinations, is within the discretion of the administrator."  2007 U.S. Dist.

Lexis 93472, *40-41.

      This Court's decision in <u>Merrill</u> v. <u>Hartford Life & Accident Ins. Co.</u>, 503 F.

Supp.2d 531 (D. Conn. 2007), is not to the contrary.  In <u>Merrill</u>, the plan administrator

denied the claim for disability benefits based on an equivocal record review in which the

reviewer failed to address the claimant's complaints of severe pain.  <u>Id</u>. at 536.  In stark

contrast, the claim reviews in the instant case were based on, among other things,

independent medical examinations, conversations with plaintiffs' treating physicians,

functional capacity evaluations, peer review analyses, reviews of plaintiffs' treating

physician records, and transferable skills analyses; and, when relevant, plaintiffs'

subjective complaints of pain also were considered.  These are precisely the types of

claim analyses contemplated by ERISA.  <u>See</u> <u>Parisi</u>, 2007 U.S. Dist. Lexis 93472.

      Plaintiffs also misapprehend the role of objective and subjective evidence in the

claim process.  Contrary to plaintiffs' view, an ERISA plan administrator does not err by

requesting objective evidence related to the ***claimant's ability to work***. As this Court has recognized, "the very concept of proof connotes objectivity," see Parisi, 2007 U.S. Dist. Lexis 93472, *28-29, citing, Maniatty, 218 F. Supp.2d 500, 503 (S.D.N.Y. 2002), and it is "not necessarily unreasonable for [the plan] to request that [the claimant] submit some objective evidence with regard to his claim." Id. at 29.  As many courts have recognized, illness or an impairment "is not to be equated with total disability," see Fitzpatrick v. Bayer Corp., 2008 U.S. Dist. Lexis 3532, *34 (S.D.N.Y. 2008), and, while an underlying medical condition may not always lend itself to objective measure, "the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis" and an ERISA plan does not err by requiring such objective proof. Id. at 37, citing, Boardman v. Prudential Ins. Co., 337 F.3d 9, 17 n.5 (1st Cir. 2003).

        This is precisely what occurred in the instant case.  For example, during his review of the independent medical examination of Mr. Smith, Dr. Beavers discussed Mr. Smith's complaints of pain, but noted that "there is no objective substantiation that this is disabling." See Smith 0248 (NB 20).  This is the same inquiry validated by this Court in Parisi, 2007 U.S. Dist. Lexis 93472, *38 (noting that the claim review "has concluded that there is no objective data that would support [the claimant] being unable to conduct [his] own occupation as a full-time supervisor"). See also Solass v. Delta Family-Care Disability & Survivorship Plan, 2005 U.S. Dist. Lexis 5269, *11 (S.D.N.Y. 2005)(holding that "[t]he question of whether the Plaintiff can return to her former job is separate from the presence or severity of her [chronic fatigue syndrome]," and the decision to deny benefits is not arbitrary and capricious where "Plaintiff's medical evidence is predominantly subjective rather than objective – her symptoms include

unverifiable conditions including exhaustion, muscle fatigue, dizziness, lightheadedness, headaches and sleep disturbances" and plaintiff fails to "address objectively her ability to perform her former job in the future").

      B.    The Court Should Reject Plaintiffs' Demand to Read into the LTD Plans' Disability Definition Age and "Jobs in the Local Economy."

As they have throughout these proceedings, plaintiffs contended again at the motion hearing that the LTD Plans erred by not considering their age, see, e.g., Brief in Support of Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Memorandum"), p. 30 (referring to Ms. Brookshire's "advanced age")(Dkt. Entry 95), and/or whether suitable employment was available to them in "the local economy." Id., p. 69 (musing regarding whether alternative employment was available in "rural North Carolina"). Plaintiffs' arguments are misguided.

The LTD Plans' disability definition is very specific. A claimant must establish that he is unable "to engage in any occupation or business for wage or profit for which he is or may become reasonably qualified by training, education or experience." See Plan 0060-0061 (NB 66). A participant's age and whether there are employers in the local economy willing to hire plaintiffs are not elements of the LTD Plans' disability definition. Id.

This is in sharp contrast to those ERISA plans which require the plan administrator to consider a participant's age because it is an element of the plan's disability definition, see, e.g., Armstrong v. Liberty Mutual Assurance Co., 273 F. Supp.2d 395, 404-05 (S.D.N.Y. 2003)(defining disability by reference to "training, education, *age* and physical and mental capacity")(emphasis added), or to require the plan administrator to determine whether actual jobs are available to the claimant because

the plan's disability definition includes an income replacement component. See

Piscottano, 118 F. Supp.2d at 202 (interpreting an ERISA plan which provides benefits if

"the only jobs for which [the claimant] could become qualified would pay less than half

the income [the claimant] had previously earned"). As the Supreme Court has stated,

ERISA plans have "great leeway" to define their benefit programs, Black & Decker

Disability Plan, 538 U.S. at 833, 123 S. Ct. at 1971; plans know how to include age and

an income component when they want to, Armstrong, 273 F. Supp.2d at 404-05;

Piscottano, 118 F. Supp.2d at 202; and it would be improper to read these provisions into

the LTD Plans at issue here as plaintiffs demand.[4]

The Second Circuit's decision in Demirovic v. Building Service 32 B-J Pension

Fund, 467 F.3d 208 (2nd Cir. 2006), is not to the contrary. First, the Court in Demirovic

did not require an ERISA plan administrator to consider any particular type of vocational

evidence – including age, or whether actual jobs existed in the local economy. The

Demirovic court held that, "[w]here, as here, the plan is silent on the issue of non-medical

vocational characteristics, the nature of this consideration will be within the plan

administrators' broad discretion, and may vary from case to case." Id. at 215.

Second, the transferable skills analyses ("TSAs") and other vocational evidence

on which the LTD plans relied in the instant case would more than satisfy the Demirovic

standard. In the TSAs which the LTD Plans considered, the evaluator considered the

plaintiffs' work history, medical restrictions, "transferable skills, education, functioning

level and interests." See e.g., Reece 0143-0149 (NB 18). See also Facts, ¶¶57, 58, 102,

---

[4]The disability definition in the Champion International LTD Plans also contrasts
sharply with the Social Security Administration's regulations which *expressly* define age
and the existence of actual jobs in the local or national economy as vocational factors
which must be considered while evaluating a claim for Social Security disability income
benefits. See 20 C.F.R. §404.1563; 20 C.F.R. §404.1566.

12

140, 220, 253, 279, 313-14, 378-79, 424, 437, 483 (Dkt. Entry 93).  Based on these reviews, the TSA evaluators identified several positions plaintiffs could perform given their qualifications, medical restrictions and transferable skills.  Id.  See also McClure 0016, 0304-0305 (NB 17); Finney 0262-0263 (NB 7); Haynes 0087, 0133 (NB 8).  These TSAs and other vocational evidence were but part of the record on which the LTD Plans determined that plaintiffs were not disabled from "any occupation" pursuant to the terms of the LTD Plans, and more than satisfy the Demirovic standard.  See Demirovic, 467 F.3d at 214.  See also Roberts v. Dominion Resources, Inc., 2008 U.S. Dist. Lexis 31183, *12-13 (D. Conn. 2008)(decision supported by substantial evidence where the plan relied upon the opinion of a qualified independent physician, whose report reflected an assessment of the entire record including treating physician reports and plaintiff's job description).

     Third, to the extent the Demirovic court even focused on the existence of actual jobs in the local or national economy, it did so because the disability definition in the ERISA plan at issue included a "gainful employment" component.  Demirovic, 467 F.3d at 209-10, 213-15.  If the disability definition expressly requires an examination of whether "gainful employment" -- that is, "something reasonably substantial" -- exists for the claimant, the actual jobs available to the claimant in the local economy and their rate of pay may be more relevant to the disability analysis.  Id. at 214.  The LTD Plans at issue here do not contain any employment component, not to mention gainful employment component.

C.    Contrary to Plaintiffs' Contention, Dr. Beavers did not Exert any Undue or
      Improper Influence Over the Claim Review Process.

As they did in their prior briefing, plaintiffs again cast aspersions on the role

played by Dr. Beavers during the claim review process. They criticize the LTD Plans for

involving Dr. Beavers and they accuse Dr. Beavers of manipulating and distorting the

opinions of their treating physicians. Plaintiffs' criticism of Dr. Beavers is unwarranted.

First, plaintiffs are mistaken to criticize the LTD Plans from seeking guidance

from medical professionals such as Dr. Beavers. As the Second Circuit has noted, plan

administrators "have an affirmative duty to seek expert advice." See Miller, 72 F.3d at

1073. Second, as the Supreme Court has stated, "if a consultant engaged by a plan may

have an 'incentive' to make a finding of 'not disabled,' so a treating physician, in a close

case, may favor a finding of 'disabled.'" See Black & Decker Disability Plan, 538 U.S. at

832, 123 S. Ct. at 1971. Third, this Court has expressly condoned, and indeed expressly

encouraged physicians and other health care providers retained or commissioned by an

ERISA plan to review a benefit claim to consult with a claimant's treating physician; the

Court has suggested that such consultation in the proper case may make the claim process

"more meaningful." See Merrill, 503 F. Supp.2d at 536.

Fourth, plaintiffs' allegations that Dr. Beavers acted improperly during the claim

process is without factual foundation. For example, plaintiffs essentially accuse Dr.

Beavers of lying when he noted in Ms. Boone's claim file that her treating physician was

"uncertain" regarding whether Ms. Boone was disabled. Plaintiffs ignore the fact,

however, that Ms. Boone's treating physician informed Dr. Beavers during a telephone

conversation that she was not sure if Ms. Boone was disabled. See Boone 0217 (NB 1).

Plaintiffs accuse Dr. Beavers of distorting the opinions of Mr. Clark's treating physician. Plaintiffs ignore the fact, however, that Mr. Clark's treating physician wrote in his own office notes that he had spoken with Dr Beavers and "cannot certify [Mr. Clark] totally and completely disabled from all work activity." See Clark 0202 (NB5).

Plaintiffs allege that Dr. Beavers manipulated or distorted the opinion of Dr. Mulholland, Ms. Brookshire's treating physician. Again, however, plaintiffs' contention is without merit. It is undisputed that Dr. Mulholland reported to Dr. Beavers that he inherited Ms. Brookshire as a patient, that he "never disabled her himself" and that "she is probably capable of sedentary work." See Brookshire 0118 (NB 3). Dr. Mulholland thereafter refused to fill out a Modification Checklist and otherwise cooperate with the Plan regarding Ms. Brookshire's claim for benefits. See Brookshire 0114, 0078-0079 (NB 3).

III.     If the Court Decides to Remand any of Plaintiffs' Claims for Further Review by the Plan Administrator, those Reviews Must be Limited to the Administrative Records Which Existed at the Time of the Final Claim Decision.

If the Court determines that the LTD Plans erred in denying any of plaintiffs' claims, the proper remedy would be to remand the claim to the LTD Plans for further review. See Merrill, 503 F. Supp.2d at 537-38 (remanding plaintiff's claim after finding that the claim decision to deny plaintiff's claim was unreasonable based upon the current record); Macleod v. The Procter & Gamble Disability Benefit Plan, 460 F. Supp.2d 340 (D. Conn. 2006) (remanding a plan's decision to deny disability benefits for further review). The review on remand, however, should be limited to the administrative record submitted to the Plan during the claim review process. See Parisi, 2007 U.S. Dist. Lexis 93472, *24-26. The untimely supplemental materials proffered by plaintiffs well after

the final claim decision, <u>see</u> Notebooks 25-38, and any other materials they may wish to submit now, cannot be considered. <u>Id</u>.

**Conclusion**

As defendants previously stated in support of their motion for summary judgment, in approximately 200 pages of briefing to date, plaintiffs ask the Court to ignore the language of two private, self-funded disability plans, and the judicial standards that apply to interpreting those plans, and instead treat private disability benefits as government entitlements. It would be error to do so. Plaintiffs' legal team rests its argument on two pillars of salt.

First, they repeatedly state that Champion International had a "self-evident conflict of interest" because it was financially responsible for disability awards and therefore would "lose money" when benefits were paid. <u>See</u> Plaintiffs' Memorandum, p. 1 (Dkt. Entry 95). Of course, this truism – that the sponsor of a self-funded plan "loses money" when benefits are paid – was self-evident when Champion International established the disability programs at issue. Had there been no disability plans, Champion International could not "lose money" paying benefits. This truism remained self-evident when these particular plaintiffs were first awarded benefits. This truism remained self-evident even after these particular plaintiffs, through an exhaustive process, were later disqualified, as Champion International "lost money" paying out benefits to the hundreds of other claimants still receiving LTD benefits. <u>See</u> Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment, p. 14-15 (Dkt. Entry 102). As defendants have established, there is no factual or legal basis for plaintiffs' conflict of interest argument. <u>Id</u>. at 6-15.

16

Second, whatever standard of review applies, plaintiffs contend without factual support that everything "changed in 1996" when Champion hired CORE. See Plaintiffs' Memorandum, p. 1 (Dkt. Entry 95). This "conspiracy" theory is the twin of plaintiffs' specious conflict of interest theory, equally unsupported in the factual record. In addition to the fact that, during CORE's involvement with the LTD Plans from 1996 through 2000, the number of claimants actually increased from 533 to more than 600, eleven of the fourteen plaintiffs continued to receive LTD benefits based on CORE's recommendation well after 1996. Indeed, according to plaintiffs' counsel's own analysis and affidavit, eleven percent (11%) of the time, the Plans' Claims Review Committee ("CRC") disagreed with the prior claim decision.

Having failed to establish any basis for a contractual or statutory violation in any of the fourteen claims here, plaintiffs' legal team seeks to divert the Court's attention from the actual administrative record, urging this Court to conduct its review based on "supplementary evidence" submitted years after the records closed. In doing so, plaintiffs' legal team casts aspersions on, *inter alia*, the Champion International employees charged with administering the LTD Plans, and the voluminous independent medical examinations, functional capacity evaluations, transferable skills analyses and peer review analyses on which the LTD Plans based their claims decisions, and, instead, would have this Court rely entirely on the opinions of plaintiffs' treating physicians. This, too, is a distortion of ERISA standards. See Black & Decker Disability Plan, 538 U.S. at 834, 123 S. Ct. at 1972.

In sum, in enacting ERISA, Congress did not contemplate federal judges serving as fact-finders in *de novo* trials on the merits in private disability cases. On plaintiffs'

counsel's theory, the federal courts would be overwhelmed with disability cases.

Applying the standards set out in ERISA, as interpreted by the Second Circuit, and upon

review of the separate administrative records in each of these fourteen distinct cases,

defendants are entitled to summary judgment.  See Defendants' Local Rule 56(a)(1)

Statement of Facts, ¶¶22-495 (Dkt. Entry 93); Defendants' Memorandum in Support of

their Motion for Summary Judgment, p. 11-50 (Dkt. Entry 92); Defendants' Reply to

Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment, p. 32-49

(Dkt. Entry 106).

Based on the foregoing, defendants, by counsel, request the Court to enter an

Order granting defendants' Motion for Summary Judgment; denying plaintiffs' Motion for

Summary Judgment; dismissing plaintiffs' Complaint, with prejudice; awarding

defendants attorneys' fees and costs they incurred in the defense of this action; and

providing such other relief as the Court deems just and proper.

This the 28th day of April 2008.

> DEFENDANTS – CHAMPION INTERNATIONAL
> CORPORATION, LONG TERM DISABILITY
> BENEFITS PLAN FOR SALARIED EMPLOYEES OF
> CHAMPION INTERNATIONAL CORPORATION #506,
> LONG TERM DISABILITY BENEFITS PLAN FOR
> CERTAIN HOURLY EMPLOYEES OF CHAMPION
> INTERNATIONAL CORPORATION #703; and
> INTERNATIONAL PAPER COMPANY
>
> By:  s/ Susan P. Dion
>      Susan P. Dion – phv02551

Bruce M. Steen – ct23613
Susan P. Dion – phv02551
MCGUIREWOODS LLP
Bank of America Corporate Center
100 North Tryon Street, Suite 2900
Charlotte, North Carolina  28202
704.353.6244
704.353.6200 (facsimile)
bsteen@mcguirewoods.com
sdion@mcguirewoods.com

Barry J. Waters – ct05520
MURTHA CULLINA LLP
Whitney Grove Square
Two Whitney Avenue
P.O. Box 704
New Haven, Connecticut  06503-0704
203.772.7700
203.772.7723 (facsimile)
bwaters@murthalaw.com

Their Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2008, a copy of the foregoing Defendants'

Supplemental Memorandum In Support Of Their Motion For Summary Judgment And

Opposition To Plaintiffs' Motion for Summary Judgment was filed electronically and

served by mail on anyone unable to accept electronic filing.  Notice of this filing will be

sent by e-mail to all parties by operation of the Court's electronic filing system or by mail

to anyone unable to accept electronic filing as indicated on the Notice of Electronic

Filing.  Parties may access this filing through the Court's CM/ECF System.

> Robert M. Elliot, Esq.
> Elliot, Pishko, Gelbin & Morgan, P.A.
> 426 Old Salem Road
> Winston-Salem, North Carolina 27101
> Telephone:  336.724.2828
> Facsimile:  336.714.4499
> rmelliot@epmlaw.com
>
> J. Griffin Morgan, Esq.
> Elliot, Pishko, Gelbin & Morgan, P.A.
> 426 Old Salem Road
> Winston-Salem, North Carolina 27101
> Telephone:  336.724.2828
> Facsimile:  336.724.3335
> jgmorgan@epmlaw.com
>
> Richard Harper, Esq.
> 1336 Savannah Drive
> P.O. Box 395
> Sylva, NC 28779
> Telephone:  828.586.3305
> Facsimile:  828.586.4795
> rick@harperlaw.org

Shela K. Rosenstein, Esq.
William B. Barnes, Esq.
Rosenstein & Barnes
1100 Kings Hwy East, P.O. Box 687
Suite 1C
Fairfield, Connecticut  06430
Telephone:  203.367.7922
srosenstein@rosensteinatlaw.com
wbbarnes@optonline.net


                               s/ Susan P. Dion
                               Susan P. Dion – phv02551
                               McGuireWoods LLP
                               Bank of America Corporate Center
                               100 North Tryon Street, Suite 2900
                               Charlotte, North Carolina  28202
                               704.373.8951
                               704.353.6162 (facsimile)
                               sdion@mcguirewoods.com

                               Their Attorneys